*Exhibit 1*

12023

BOOK 669 PAGE 300

CONSERVATION EASEMENT
AND
DECLARATION OF RESTRICTIVE COVENANTS

THIS CONSERVATION EASEMENT AND DECLARATION OF RESTRICTIVE
COVENANTS (hereinafter called the "Declaration") made December 29 , 1995
BETWEEN LARRY YOUNG and JUDY YOUNG, husband and wife ("Grantor"), whose
address is DeBordieu Colony , and NORTH AMERICAN LAND
Georgetown, SC 29440
TRUST, a Pennsylvania non-profit corporation having an address of P.O. Box 134, Chadds
Ford, PA 19317 ("Grantee"),

WITNESSETH THAT:

WHEREAS, the Grantor is the owner in fee simple of certain real property
(hereinafter referred to as the "Property") locally known as "Weehaw Plantation" and more
particularly described by metes and bounds in Exhibit A attached hereto and depicted on the
plan attached hereto as Exhibit B; and

WHEREAS, Grantee is a non-profit corporation having tax-exempt status under
Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (hereinafter called the
"Code"), has been established as a public charity for the purpose of preserving and
conserving natural habitats, environmentally sensitive areas and open space and for other
charitable, scientific and educational purposes, and meets the requirements of a "qualified
organization" under Section 170(h)(3) of the Code; and

WHEREAS, the ecological significance of the Property has been established in the
reports, plans, accompanying photographs, documentation and exhibits, including the plans
prepared by Design Works dated December 27 , 1995 (collectively called the
"Baseline Documentation") which concludes that, among other things:

(a) The Property has been recognized as containing important rice fields;
and

(b) The Property provides an important, ecologically stable habitat for
flora and fauna, including particularly waterfowl, that are native to the "lowcountry" of South
Carolina; and

(c) The Property also contains the remnants of an 18th century formal
garden including ancient camellias and specimen live oak trees; and

(d) The Property consists of a unique, environmentally sensitive land area
because it is a portion of the estuaries of the Black River and Pee Dee River; and

(e) The Property consists of valuable scenic vistas that can be seen from

515478.4 12/26/95

COUNTY PARCEL # Various Parcels
RWD

Exhibit 1

BOOK 669 PAGE 301

the Intra Coastal Waterway, the Black River and the Pee Dee River and Highways 701 and S-22-325; and

WHEREAS, the Baseline Documentation establishes the Property to be a relatively natural habitat of fish, wildlife, plants, and similar ecosystems; and

WHEREAS, the Baseline Documentation further establishes that the Property is open space which, pursuant to clearly delineated Federal and state, governmental conservation policies, merits conservation in the manner intended by Grantor and Grantee and expressed in this document and such conservation and will yield a significant public benefit; and

WHEREAS, the Baseline Documentation also establishes that conservation of the Property in the manner intended Grantor and Grantee and expressed in this document will provide scenic enjoyment for the general public and such conservation will yield a significant public benefit; and

WHEREAS, Grantor and Grantee desire to perpetually conserve the natural, scientific, educational, open space, and scenic resources of the Property; and

WHEREAS, Grantor and Grantee intend to create with this document a "conservation easement" as defined in the Conservation Easement Act of 1991, as amended through the date hereof (the "Act"), Sections 27-8-10 *et seq.* of the South Carolina Code of Laws.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and with the intention of making an absolute and unconditional gift, by these presents Grantor freely grants and conveys unto the Grantee, its successors and assigns forever, a perpetual easement in gross over the Property according to the terms set forth in this Declaration, and agrees to subject the Property perpetually to covenants and restrictions as herein set forth.

**ARTICLE A.        GRANT OF ACCESS EASEMENT**

Grantor hereby grants and conveys unto Grantee, it successors and assigns, the easement and right of Grantee to enter upon and inspect the Property at any time and from time to time, provided that Grantor is first given notice of any such visit at least seven (7) days in advance.

**ARTICLE B.        GRANTOR'S DECLARATION OF COVENANTS AND RESTRICTIONS**

The Grantor, for itself, its successors and assigns, covenants and declares that the Property shall be, and hereby is, bound by and made subject to the following covenants and restrictions in perpetuity, subject to the Reserved Rights (hereinafter defined).

      1.        The Property shall not be used for any industrial or commercial purpose

515478.4 12/26/95                                                    -2-

*Exhibit 1*

BOOK 669 PAGE 302

or purposes, including but not limited to: (1) manufacture or assembly of any products, goods, equipment, chemicals, materials or substances of any kind or nature whatsoever; (2) sale of any products, goods or services of any kind or nature whatsoever, except for the sale of agricultural products (including animals and animal products) grown or raised on the Property; (3) storage of any products or goods of any kind or nature, except for the storage of agricultural products (including animals and animal products) grown or raised on the Property; and (4) offices for persons involved in the sale, manufacture or assembly of goods or services or for the performance of services, other than for the sale of agricultural products (including animals and animal products) grown on the Property. There shall not be constructed, cut, created or placed on the Property any road, driveway, cartway, path or other means or right of passage across or upon the Property if the same is to be used, nor may any road, driveway, cartway, path or other means or right of passage located on the Property be used, in conjunction with any uses which are prohibited by the terms of this Declaration. Nothing herein is intended, nor shall be construed, to prohibit the cultivation, breeding or raising of agricultural products or livestock or standard equestrian uses.

　　　　　2.　　No structures of any kind shall be built, erected, installed, placed, affixed or assembled within or upon the Property or upon any trees or other natural features upon the Property, except to the extent necessary for:

　　　　　　　(a)　　Drainage and erosion control measures.

　　　　　　　(b)　　Conservation, nature education or security measures.

"Structure" shall mean any assembly of material forming a construction for occupancy or use for any purpose and erected upon or attached to the ground including, for example but not for limitation of the foregoing definition, the following: buildings, fences, platforms, sheds, bins, shelters, ponds, dikes, dams, groins, docks, bridges, piers, towers, antennae, tanks, and bulkheads.

　　　　　3.　　No cutting of timber or removal or destruction of trees shall be permitted within the Property except when conducted for the following purposes:

　　　　　　　(a)　　To clear and restore vegetative cover that has been damaged or disturbed by forces of nature or otherwise; and

　　　　　　　(b)　　To prune and selectively thin trees, but only if done in accordance with good forest management practices according to a plan approved by Grantee in advance.

　　　　　　　(c)　　To plant and harvest perennial grasses and plantation pine (if done in accordance with good forest management practices according to a plan approved by Grantee in advance).

513478.2 12/27/95                              -3-

*Exhibit 1*

BOOK 669 PAGE 303

4.    Without limitation of any other restrictions or covenants herein, no signs, billboards or outdoor advertising structures shall be placed, erected or maintained within the Property except a reasonable number of regulatory or directional signs including, for example but not for limitation of the foregoing definition, "no trespassing" signs, "no gunning" signs and "no hunting" signs, and one sign not exceeding four (4) square feet in area on each if two sides for any of the following purposes:

(a)    To state the name of the Property and/or the names and addresses of the occupants;

(b)    To advertise an activity permitted under the provisions of this Declaration;

(c)    To educate the public as to the ecology of the area; and

(d)    To identify the interest of Grantee in the Conservation Easement Area.

5.    There shall be no filling, excavating, dredging, surface mining, or drilling, nor removal of topsoil, sand, gravel, rock, peat, minerals, or other materials, nor any dumping of ashes, trash, garbage, or any other unsightly or offensive materials. There shall be no material change in the topography of the land in any manner. The foregoing shall not be construed to prohibit plowing or tilling of soil or agricultural Structures (to the extent included in the Reserved Rights) on the Property for agricultural purposes, so long as the requirements for such agricultural practices set forth in this Declaration are followed.

6.    There shall be no introduction of exotic plant or animal species except those traditionally and prevalently used as of, or prior to, the date hereof for wildlife food planting or for agricultural planting traditional to the area.

7.    There shall be no dredging, construction of ponds, groins, or dikes, nor any manipulation of natural water courses within any salt or brackish marsh. The foregoing shall not be construed to prohibit ponds as agricultural Structures on the Property provided that Grantor complies with the provisions pertaining to agricultural Structures in the Reserved Rights.

8.    All agricultural activity on the Property shall be conducted in accordance with the following requirements:

(a)    Good conservation practices shall be followed, in compliance with the then prevailing practices established by the United States Department of Agriculture Soil Conservation Service (the "Recommended Agricultural Practices").

(b)    Grantor shall not apply chemicals, insecticides or biocides and shall situate no manure or compost piles within 100 feet of any streams, creeks, rivers, ponds

515478.2 12/26/95                                    -4-

*Exhibit 1*

BOOK 669 PAGE 304

or other bodies of water.

(c) Livestock and agricultural activities shall be confined to fields and pastures maintained for such purposes under Recommended Agricultural Practices and, without limitation of the foregoing requirement, livestock shall not be permitted to roam freely in woodlands, ponds, other water impoundments or wetlands.

(d) Contour farming shall be practiced on all areas of the Property which are plowed or tilled. Plowing and tillage shall not be conducted on slopes exceeding 15% in grade or within 100 feet of streams or wetlands.

9. The parties recognize that this Declaration cannot address every circumstance that may arise in the future, and the parties agree that the purpose of this Declaration is to preserve the Property predominantly in its present condition, and to protect or enhance the Property's environmental systems. Any use or activity not reserved in Article C, below, which is inconsistent with the purpose to this Declaration or which materially threatens the purpose of this Declaration is prohibited.

## ARTICLE C.        RESERVED RIGHTS

Notwithstanding any provision to the contrary contained in this Declaration, the Grantor reserves for itself, its successors and assigns, the rights set forth in this Article (the "Reserved Rights"):

1. The right to erect, maintain, repair, and replace six single family dwellings (individually a "Dwelling" and collectively the "Dwellings"), along with private driveways serving the Dwellings. The Dwellings may each be used solely as a single family dwelling. Grantee shall also have the right to erect, maintain, repair, and replace structures accessory to and smaller than the Dwellings and that are typically considered accessory to a principal single family dwelling; provided that only one accessory structure for each of the Dwellings shall be constructed or used for human habitation (in addition to the Dwelling) and such accessory structure shall not exceed 50% of the square footage of the Dwelling to which it is associated. Such accessory structures may include, for example and not for limitation of the definition, a boat house, gazebo, or garage. The Grantee may also keep, maintain, repair, and replace the "Lodge" (as depicted in Exhibit B) as a building for occupancy and use as a single family dwelling (with all the attendant rights of a Dwelling hereunder) or as a common building for guest residence or community gatherings by the owners of the Dwellings and their guests. The Dwellings and all structures accessory to the Dwellings must each be located within one of the areas depicted as a "Restricted Building Envelope" on Exhibit B to this Declaration and the Lodge must be located within the Lodge Site as depicted on Exhibit B to this Declaration.

2. The right to erect, maintain, repair and replace a common recreational area not exceeding three acres in area (the "Recreation Area") within the Restricted Building

515478.2 12/27/95                                          -5-

*Exhibit 1*

BOOK669 PAGE 305

Envelope.

3.    The right to erect, maintain, repair, and replace buildings necessary to the performance of the agricultural and livestock uses allowed on the Property up to an aggregate of 5,000 square feet of floor area for all agricultural buildings on the entire Property.

4.    The right to erect, maintain, repair, and replace Structures (as defined above), other than buildings, necessary for the performance of the agricultural and livestock uses allowed on the Property, including but not limited to irrigation and structures necessary for the maintenance of the controlled and uncontrolled rice fields on the Property.

5.    The right to provide, to the extent typical of a country property, (1) utilities to the Dwellings, Recreation Area, Lodge, and other allowed Structures; and (2) roads and paths for ingress and egress to the Dwellings, the Lodge, the Recreation Area and other Structures and uses not prohibited hereunder. The right to provide normal, sanitary sewer and/or septic tank facilities, water or wells serving the Dwellings and the Lodge as would be typical of a country property. The right to provide, in any lawful manner and subject to all governmental regulations, any erosion control devices so as to protect the Property and its perimeters.

6.    Grantor may thin and remove invasive plants not native to the Property using good vegetation management practices in accordance with a plan approved in advance by Grantee.

7.    Without limiting the restrictions and covenants set forth above, Grantee agrees that the exercise of all Reserved Rights shall be in full accordance with all applicable local, state, and federal laws and regulations and the conservation purposes of this Declaration.

8.    Grantor shall notify Grantee in writing before exercising any Reserved Rights or taking any action which may affect any of the conservation purposes of this Declaration and shall, upon request of Grantee, provide Grantee with plans depicting in such detail as Grantee reasonably requests the construction or other activity, and location thereof, which Grantor intends to undertake.

### ARTICLE D.    GRANTEE'S COVENANTS

1.    Grantee shall use its best efforts to enforce both the rights granted to it and the restrictions imposed upon the Property under this Declaration.

2.    If at any time Grantee or any successor or assignee is unable to enforce this Declaration in full or fails to do so, or if Grantee or any successor or assignee ceases to exist or ceases to be a "qualified organization" (as defined in the Code) or a "holder" (as

*Exhibit 1*

BOOK 669 PAGE 306

defined in the Act) and if, within a reasonable period of time after the occurrence of any of these events, Grantee or any successor or assignee fails to assign all of its rights and responsibilities under this Declaration to a "qualified organization" and "holder", then the rights and responsibilities under this Declaration shall become vested in and fall upon another qualified organization in accordance with a cy pres proceeding in any court of competent jurisdiction.

3.   Notwithstanding the foregoing or anything else in this Declaration to the contrary, Grantee, its successors and assigns shall have the right to assign, either wholly or partially, its right, title and interest hereunder provided that the assignee is a "qualified organization" under the Code and a "Holder" under the Act and provided that the assignee shall hold the Conservation Easement exclusively for purposes herein set forth.  The term "Grantee" as used in this Declaration shall mean the above-named Grantee and any of its successors and assigns.

ARTICLE   E.   REMEDIES AND ENFORCEMENT

1.   Grantee shall have the right to enforce by proceedings at law or in equity each and every one of the covenants and restrictions set forth in this Declaration.  The foregoing shall not limit any of the rights or remedies available to the Grantee at law or in equity.

2.   Without limitation of any other rights of the Grantee herein, Grantee's right of enforcement of this Declaration shall include the right to seek specific performance by Grantor of the restoration of the Property to its original condition as established in the Baseline Documentation and as otherwise may be required in this Agreement.

3.   If Grantor fails to pay taxes or other governmental assessments which may become a lien upon the Property Grantee may, but shall have no obligation to, pay such taxes or assessments or any part thereof upon ten (10) days prior written notice to Grantor, according to any bill, statement or estimate procured from the appropriate public office.  Payment made by Grantee shall become a lien on the Property in favor of Grantee after thirty (30) days' notice and demand for payment sent by Grantee to Grantor and shall bear interest until paid by Grantor at the rate of eighteen percent (18%) per annum.

4.   This Declaration may only be enforced by the parties hereto, and their respective successors and assigns, and no third party beneficiary rights, including but not limited to third party rights of enforcement, are created hereby.

5.   In the event that Grantee acts, after 30 days' notice to the Grantor, to enforce this Declaration or any obligation hereunder, all reasonable expenses incurred by Grantee shall be charged to and paid by the Grantor, including reasonable attorney's fees regardless of whether an action or proceeding is commenced.  All such expenses, together with costs of collection (including reasonable attorneys fees) if the Grantor is determined by a

Exhibit 1

BOOK 669 PAGE 307

court to have violated this Declaration), shall be recoverable by the Grantee and be liens upon the Property, and collection thereof may be enforced by foreclosure and sale of the Property, notwithstanding anything to the contrary, this Declaration shall not merge with any interest in the Property upon such sale and title shall be transferred subject hereto in accordance with the laws of the state in which the Property is located.

## ARTICLE F. GENERAL PROVISIONS

1. This Declaration gives rise to a property right and interest immediately vested in the Grantee. For purposes of this Declaration, the fair market value of Grantee's right and interest shall be equal to the difference, as of the date hereof, between the fair market value of the Property when subject to this Declaration and the fair market value of the Property if unencumbered by this Declaration.

2. The parties recognize the environmental, scenic and natural values of the Property and have the common purpose of preserving these values. Any general rule of construction to the contrary notwithstanding, this Declaration shall be liberally construed in favor of the grant to effect the purpose of this Declaration and the policy and purposes of the Grantee. If any provision in this instrument is found to be ambiguous, an interpretation consistent with the purpose of this Declaration that would render the provision valid should be favored over any interpretation that would render it invalid. The parties intend that this Declaration, which is by nature and character primarily prohibitive ( in that the Grantor has restricted and limited the rights inherent in ownership of the Property, shall be construed at all times and by all parties to effectuate its purposes.

3. Grantor covenants and agrees to indemnify, defend and hold harmless the Grantee from and against any loss, cost (including reasonable attorneys fees), liability, claim, penalty, fine, and damage, of any kind or nature whatsoever, which Grantee may suffer or incur or which is commenced or threatened against Grantee or any of its directors, officers or employees arising from violation of any law involving the Property, any breach of the covenants and restrictions herein by Grantor, taxes and assessments upon the Property, any death or injury to any person occurring on or about the Property or any loss or damage to any property occurring on or about the Property; provided, however, that Grantor shall have no obligation to indemnify Grantee against loss, cost, liability, claim, penalty, fine or damage which results from Grantee's own negligent acts. Without limitation of the foregoing, Grantor shall retain all responsibilities and shall bear all costs and liabilities of any kind related to the ownership, operations, upkeep, and maintenance of the Property, including the general liability insurance coverage.

4. Grantor shall defend, indemnify and hold harmless Grantee, its successors, assigns, employees, and agents from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature known or unknown, contingent or otherwise because of non-compliance with this Declaration or any law, regulation, ordinance or court order.

519022.2 12/27/95                                      -8-

BOOK 669 PAGE 308

5.  Grantor shall continue to pay all taxes, levies and assessments and other governmental or municipal charges which may become a lien on the Property, including any taxes or levies imposed to make those payments.

6.  When a change in conditions gives rise to the extinguishment of this Declaration or a material term or provision hereof by judicial proceeding, the Grantee, on any subsequent sale, exchange or involuntary conversion of the Property, shall be entitled to a portion of the proceeds of sale equal to the greater of: (a) the fair market value of the Easement or about the date of this Declaration; (b) Grantor's Proportionate Share of the proceeds of such sale, exchange or involuntary conversion, (c) the full proceeds from the sale, exchange or involuntary conversion, without regard to contrary terms of this Declaration, if state law provides that the donor is entitled to the full proceeds. "Fair market value of the Easement" shall mean the difference between the fair market value of the Property unencumbered by this Declaration and the fair market value of the Conservation Easement encumbered by this Declaration. "Grantor's Proportionate Share" shall mean the fraction derived from the fair market value of the Easement on or about the date hereof divided by the fair market value of the Property, if unencumbered by this Declaration, on or about the date hereof. "Proceeds of sale" shall mean the cash value of all money and property paid, transferred or contributed in consideration for, or as otherwise required as a condition, to the sale, exchange or involuntary conversion of the Property, minus the actual bona fide expenses of such transaction and an amount attributable to the residential improvements constructed upon the Property pursuant to the Reserved Rights hereunder, if any. All such proceeds received by Grantee shall be used in a manner consistent with the conservation purposes of this grant.

7.  Whenever all or part of the Property is taken by exercise of eminent domain by public, corporate or other authority so as to abrogate the restrictions imposed by this Declaration, the Grantor and Grantee shall join in appropriate actions at the time of such taking to recover the full value of the taking and all incidental or direct damages resulting from the taking. All expenses incurred by the Grantor and the Grantee, including reasonable attorney's fees, in any such action shall be paid out of the recovered proceeds. Grantee shall be entitled to Grantors Proportionate Share of the recovered proceeds and shall use such proceeds in a manner consistent with the conservation purposes of this grant. The respective rights of the Grantor and Grantee set forth in paragraph 8, above, and this paragraph 9 shall be in addition to and not in limitation of, any rights they may have in common law with respect to a modification or termination of this Declaration by reason of changed conditions or the exercise of powers of eminent domain as aforesaid.

8.  The failure of Grantee to exercise any of its rights under this Declaration on any occasion shall not be deemed a waiver of said rights and Grantee retains the right in perpetuity to require full compliance by Grantor of the covenants and restrictions in this Declaration.

9.  Grantor and Grantee recognize that circumstances could arise which

515022.2 12/27/95

*Exhibit 1*

BOOK 669 PAGE 309

this end, Grantee and Grantor shall mutually have the right, in their sole discretion, to agree to amendments to this Declaration which are not inconsistent with the basic purpose of the Declaration as stated in this document, provided, however, that Grantee shall have no right or power to agree to any amendments hereto that would result in this Declaration and Declaration failing to qualify as a valid conservation easement under the Act, as the same may be hereafter amended, or Section 170(h) of the Code as hereafter amended.

10.    This Declaration and all of the covenants, easements and restrictions herein set forth shall run with the land and be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, successors and assigns. The term "Grantor" used herein shall mean and include the above-named Grantor and any of its successors or assigns that are the legal owners of the Property or any part thereof. The term "Grantee" used herein shall mean and include the above-named Grantor and any of its successors or assigns, it being understood and agreed that any assignee of the rights of Grantee hereunder must be a "qualified organization" as defined in Section 170(h) of the Code, as amended, and shall carry out the obligations of the Grantee and the intent of this Declaration.

11.    Grantor shall be and remain liable for any breach or violation of this Declaration only if such breach or violation occurs during such time as Grantor is the legal owner of the Property or part thereof.

12.    Grantor agrees that all mortgages upon any or all of the Property entered into after the date of this Declaration will be subject to and subordinate to this Declaration.

13.    Grantor shall notify Grantee in writing of any sale, transfer, lease or other disposition of the Property or any part thereof, whether by operation of law or otherwise, at least 30 days after such disposition, such notice shall include a copy of the deed, lease, or other Declaration of transfer, the date of transfer, and the name or names and addresses for notices of the transferee.

14.    All notices required of Grantor under the terms of this Declaration, and all requests for the consent or approval of Grantee, shall be in writing and served personally or sent by certified mail, return receipt requested, addressed to Grantee at the address set

515022.2 12/26/95

-10-

*Exhibit 1*

BOOK 669 PAGE 310

forth below or such other address provided by Grantee for the purpose.

**GRANTEE:**

North American Land Trust
P.O. Box 134
Chadds Ford, PA 19317

**With Copy To:**

George Asimos, Jr.
Saul, Ewing, Remick & Saul
1055 Westlakes Drive, Suite 150
Berwyn, PA 19312

**GRANTOR:**

Lafayette Drive
DeBordieu Colony
Georgetown, SC 29440

**With Copy To:**

W. Bradley Blair, II
Legends Group
P.O. Box 2038
Myrtle Beach, SC 29578

15.    By signing this Declaration, Grantor certifies that:

(a)    Grantor has received and fully reviewed the Baseline
Documentation in its entirety.

(b)    The Baseline Documentation includes, among other things:

i)    The appropriate survey maps from the United States Geological
Survey, showing the property line and other contiguous or
nearby protected areas.

ii)    A map of the area drawn to scale showing all existing man-made
improvements or incursions (such as roads, buildings, fences, or
gravel pits), vegetation and identification of flora and fauna
(including, for example, rare species locations, animal breeding
and roosting areas, and migration routes), land use history
(including present uses and recent past disturbances), and
distinct natural features (such as large trees and aquatic areas).

iii)    An aerial photograph of the property at an appropriate scale
taken as close as possible to the date the donation is made.

iv)    On-site photographs taken at appropriate locations on the
property. The condition of particular natural resources to be
protected by this Declaration at or near the time of the gift is
established therein.

(c)    The Baseline Documentation, being an inventory of the resources of the
Property, including the maps and photographs therein, is an accurate

515478.3 12/26/95

-11-

BOOK 669 PAGE 311

representation of condition of the Conservation at the date hereof.

(d) Grantor has been represented by counsel of Grantor's selection, and fully understands that Grantor is permanently relinquishing property rights which would otherwise permit the Grantor to have the full use and enjoyment of the Property.

(e) Grantor hereby certifies that the Property is not encumbered by any mortgage, lien or other encumbrance, or that all such mortgages, liens or encumbrances, if any, have been subordinated to this Declaration by a duly executed instrument recorded in the Office of the County Clerk in which the Property is located.

(f) That the undersigned individual signing on behalf of the Grantor have all legal authority to enter into this Declaration and perform all of the obligations of the Grantor hereunder, as the binding act of the Grantor.

16.    Grantor hereby warrants and represents that the Grantor is seized of the Property in fee simple, and has good right to grant and convey this Declaration, that the Property if free and clear of any and all encumbrances, except matters of record, and that the Grantee and its successors and assigns shall have the use of and enjoy all of the benefits derived from and arising out of this Declaration, and that any mortgage rights are subordinate hereto.

17.    TO HAVE AND TO HOLD the easements and rights set forth in this Declaration unto Grantee, its successors and assigns, for its own use and benefit forever.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Grantor and Grantee have executed this Declaration as of the day and year first above written.

GRANTOR:

Witness _Michele D. Vick_                          _____ [SEAL]
_Angela Marshall_                          LARRY YOUNG

Witness _Michele D. Vick_                          _____ [SEAL]
_Angela Marshall_                          JUDY YOUNG

515478.3 12/26/95                          -12-

*Exhibit 1*

BOOK669PAGE 312

GRANTEE:

NORTH AMERICAN LAND TRUST

WITNESS: *Pamela S. Greene*

By: _____ [SEAL]
Name: John v.H. Halsey
Title: President

STATE OF NEW YORK :

COUNTY OF SUFFOLK :

On this, the 27 day of DECEMBER, 1995, before me, the undersigned officer, personally appeared JOHN VAN HEUSEN HALSEY who acknowledged himself to be the PRESIDENT of NORTH AMERICAN LAND TRUST, a corporation, and that he as such PRESIDENT, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as PRESIDENT.

In witness whereof, I hereunto set my hand and official seal.

*Melanie A. Tebbens*

~~Title of Officer~~

MELANIE A. TEBBENS
Notary Public, State of New York
No. 01TE5035908, Suffolk County
Commission Expires November 14, 1996

515478.3 12/26/95

-13-

*Exhibit 1*

BOOK **669** PAGE **313**

STATE OF SOUTH CAROLINA    )
                                  )                    PROBATE

COUNTY OF _Horry_         )

      PERSONALLY APPEARED before me the undersigned witness who, after being duly sworn, deposes and says that (s)he saw the within-named Larry Young and Judy Young, sign, seal and as their act and deed, deliver the within-written instrument and that (s)he with the other witness above witnessed the execution thereof.

                                  _Michelle O. Vick_

SWORN to before me this

29th day December, 1995.

_Laura S. Tyler_    (L.S.)
Notary Public for South Carolina

My Commission Expires: _11-9-2003_

36558.1-PM (SSJ) 900000-486

*Exhibit 1*

BOOK **669** PAGE **314**

STATE OF _NEW YORK_ )
                       )          PROBATE
COUNTY OF _SUFFOLK_ )

    **PERSONALLY APPEARED** before me the undersigned witness who, after being duly sworn, deposes and says that s/he saw the within-named North American Land Trust, a Pennsylvania corporation, by John v.H. Halsey, its President, sign, seal, and, as the act and deed of the corporation, deliver the within-written instrument and that s/he with the other witness above witnessed the execution thereof.

                                                    (Either witness signs here)

Sworn to before me this
**27** day of December, 1995

_Melanie A. Tebbens_ (L.S.)

Notary Public for _____

My Commission Expires: _____

      **MELANIE A. TEBBENS**
    Notary Public, State of New York
    No. 01TE5035908, Suffolk County
  Commission Expires November 14, 1996

Exhibit 1

BOOK 669 PAGE 315

As used in this document, all references to "Bank" "NationsBank" "NationsBank of North Carolina, N.A." "NationsBank of South Carolina, N.A." or "NationsBank, N.A. (Carolinas)" shall mean NationsBank, N.A.

## JOINDER AND CONSENT OF MORTGAGEE

_____NATIONSBANK, N.A._____ ("Mortgagee"), the holder of the mortgage encumbering the Property in the amount of $19,400,000.00 recorded at Book _652_, Page _1_ in the _R.M.C._ _____ of _Georgetown_ County, ___South Carolina___ (the "Mortgage") hereby consents to the terms of this Declaration and agrees that the lien of the Mortgage shall be fully subordinate to the rights, title and interest of Grantee under this Declaration and the rights of the Grantee to enforce this Declaration. Without limitation of the foregoing, Mortgagee agrees that, in the event of foreclosure of the Mortgage or a judgment obtained under the Mortgage or any promissory note secured thereby, the Property described in this Declaration shall remain under and subject to the covenants and restrictions set forth in this Declaration, as fully as if the Mortgage was executed, delivered and recorded after the dates of execution, delivery and recording of this Declaration. This Joinder and Consent of Mortgagee shall be binding upon Mortgagee's successors and assignees as holders of the Mortgage and any amendment thereof.

Mortgagee:

Witness

Witness

NATIONSBANK, N.A.

By: _____
Name: Dale C. Zeglin
Title: Senior Vice President

State of South Carolina )
                        )
County of HORRY         )

Personally appeared before me the undersigned witness, who, being duly sworn states that s/he saw the within named ___NATIONSBANK, N.A.___ by ___Dale C. Zeglin___, its ___Senior Vice President___, sign, seal and as its act and deed deliver the within written Joinder and Consent of Mortgagee, and that s/he with the other witness witnessed the execution thereof.

Sworn to before me this
28th day of December, 1995.

_____ (SEAL)
Notary Public for South Carolina
My Commission Expires: 1-5-98

515478.3 12/27/95                                    -14-

*Exhibit 1*

BOOK**669**PAGE **316**

EXHIBIT A
LEGAL DESCRIPTION

TRACT I

All that piece, parcel or tract of land situate, lying and being in the County of Georgetown, State of South Carolina, shown and designated as Tract B on that certain plat entitled "Map of WeeHaw Plantation Containing 1231.3 Acres in Tax District No. 2, and 266.7 Acres in Tax District No. 3, Total Area 1498 Acres dated November 21, 1978 prepared by Samuel M. Harper, RLS, reference to said plat being hereby made.

Saving and excepting therefrom Tract B 144.1 acre (Old Rice Fields) and Tract B 64.9 acres (Old Rice Fields) as shown on above referenced plat.

Saving and excepting therefrom Tracts 1, 2 and 3 as shown on a "Map of 166.34 Acres of Land in Tax District No. 2, Georgetown County, South Carolina Being a Part of WeeHaw Plantation surveyed for Margaret Barnwell Harvin", prepared by Samuel M. Harper, RLS, dated April 29, 1988. Said plat being recorded in Book 9, Page 467 in the Office of the Clerk of Court for Georgetown County on May 3, 1988.

Also saving and excepting therefrom a certain 5 acre tract as shown on a sketch prepared by Wendell Powers, RLS, dated April 24, 1995 and recorded at Slide 169, Page 5A; said sketch also attached to deed recorded in Deed Book 627, at Page 83 in the Office of the Clerk of Court for Georgetown County.

The said easement area being granted herein butting and bounding, measuring and containing as follows: Beginning at the point of the intersection of U.S. Highway 701 and South Carolina Highway 22-325, Being the Point of Beginning, thence turning and running along a line North 69°57' East for a distance of 3,108 feet to a point; thence turning and running along a line North 14°12' West for a distance of 1,401 feet to a point; thence turning and running along a line North 57°41' West for a distance of 2,122.2 feet to a point; thence turning and running along a line North 11°35' West for a distance of 257.8 feet to a point; thence turning and running along a line South 35°25' East for a distance of 411 feet to a point; thence turning and running along a line South 35°06' West for a distance of 200 feet to a point; thence turning and running along a line South 35°22' West for a distance of 56.06 feet to a point; thence turning and running along a line South 84°01' West for a distance of 116.5 feet; thence turning and running along a line North 36°34' West for a distance of 187 feet to a point; thence turning and running along a line North 24°30' West for a distance of 1,630.5 feet to a point; thence turning and running along a line North 73°18' West for a distance of 444.2 feet to a point; thence turning and running along a line North 76°18' West for a distance of 200 feet to a point; thence turning and running along a line North 29°18' West for a distance of 64.4 feet; thence turning and running along a line North 75°55' West for a distance of 296 feet; thence turning and running along a line South 73°41' West for a distance of 117.4 feet to a point; thence turning and running along a line South 62°19' West for a distance of 90 feet to a point; thence turning and running along a line South 87°03' West for a distance of 167.4 feet; thence turning and running along a line North 64°19' West for a distance of 183 feet to a point; thence turning and running along a line North 21°19' West for a distance of 89.5 feet; thence turning and running

36548.1-EX (SSJ) 900000-486

BOOK 669 PAGE 317

along a line North 61°11' West for a distance of 166.5 feet; thence turning and running along a line South 56°58' West for a distance of 41 feet; thence turning and running along a line North 69°00' West for a distance of 748 feet; thence turning and running along a line North 77°28' West for a distance of 103 feet; thence turning and running along a line North 67°43' West for a distance of 563 feet to a point at the centerline of the Black River; thence meandering along the centerline of the river bed of the Black River in a Southerly direction to the intersection of the centerline of the Pee Dee River; thence meandering along the centerline of the Pee Dee River in a Westerly direction; thence turning and running along a line which is projected into the Pee Dee River South 40°00' East for a distance of 2,650± feet to a point; thence turning and running along a line North 44°00' East for a distance of 900± feet to a point; thence turning and running along a line South 70°00' East for a distance of 1,850± feet; thence turning and running along a line South 35°00' East for a distance of 200± feet; thence turning and running along a line South 70°10' East for a distance of 359 feet to a point; thence turning and running along a line South 46°47' East for a distance of 335.5 feet to a point; thence turning and running along a line North 40°48' East for a distance of 560.4 feet; thence turning and running along a line South 49°12' East for a distance of 25 feet; thence turning and running along a line North 40°48' East for a distance of 375 feet; thence turning and running along a line South 56°42' East for a distance of 162 feet; thence turning and running along a line South 56°48' East for a distance of 4,732.05 feet to a point; thence turning and running along a line South 19°58'35" West for a distance of 300 feet; thence turning and running along a line South 56°54'40" East for a distance of 745.45 feet to a point; thence turning and running along a line South 80°00' East for a distance of 32 feet; thence turning and running along a line North 20°00' East for a distance of 897.7 feet to a point; thence turning and running North 44°59' East for a distance of 15.7 feet to the point of beginning.

2

24544.1-EX (SSZ) 900000-416

*Exhibit 1*

BOOK 669 PAGE 318

### ALSO
### TRACT II

#### Parcel 3-489-11
All those certain pieces, parcels or tracts of land constituting rice fields situate on the Eastern side of Black River, now or formerly known as Taylor's Island, designated as property of Grantors, Alston, and Cain Patch and creek and Point Field, in deed from Frank G. Tarbox to D.V. Richardson dated June 15, 1925, and recorded in the Office of the clerk of Court for Georgetown County in Deed Book Z-1 at Page 586. Said fields taken together measure and contain eighty-eight (88) acres, more or less, and But and bound as follows: Northeast on lands of Vanderbilt and Pyatt; Southeast on lands of Baruch and Vanderbilt; Southwest on lands of Vanderbilt; and Northwest on Black River.

#### AND

#### Parcel 3-489-2
All that certain piece, parcel or tract of land situate, lying and being in Township No. 7, Georgetown County, South Carolina, being more particularly shown on a plat made by White & Gourdin, Surveyors, recorded in the Office of the Clerk of Court for Georgetown County in Plat Book B at Page 74, as Fields Numbered Sixteen (16) and Seventeen (17), said fields butting and bounding, according to said plat, as follows: West by highwater mark of Black River; North and East by lands, now or formerly, of Dr. F.S. Parker and lands of Alderly Plantation; and South by Tract Numbers 18 and 19, as shown on said plat. The said lands contain in the aggregate fifty-five and seven-tenths (55.7) acres, more or less, and were among the lands conveyed by Martha A. Pyatt, et. al, to Isaac E. Emerson by deed dated January 30, 1909, recorded in the Office of the Clerk of Court for Georgetown County in Deed Book M at Page 374.

3

36546.1-BX (SS) 900000-486

*Exhibit 1*

BOOK **669** PAGE **319**          EXHIBIT B



BOOK 669 PAGE 320

North American Land Trust

to

Larry Young
Judy S. Young

conveying certain tracts
1931.3 ac TD-A
264.7ac
88 ac + 55.7ac
TD 3

recorded this ___ day of
January A.D. 19.26
in Book ___ Page ___
Auditor, Georgetown Co. S.C.

FILED
BETTY L. WILLIAMS
CLERK OF COURT
95 DEC 29 PM 2:38