IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| MST, LLC, | ) | Civil Action No.   2:22-cv-874-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT GEORGETOWN** |
| | ) | **MEMORIAL HOSPITAL'S** |
| North American Land Trust and Georgetown | ) | **MOTION TO DISMISS** |
| Memorial Hospital, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Georgetown Memorial Hospital ("GMH"), hereby moves this Court to dismiss Plaintiff's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff lacks standing to pursue the claim alleged.

## INTRODUCTION

This action arises out of a dispute involving a 1995 Conservation Easement placed on a tract of land known as Weehaw Plantation ("Weehaw") and the subsequent Amendment of that Conservation Easement that released 56.75 acres of land from the restrictions of the easement. That land released from the Conservation Easement was later sold to GMH, a 501(c)(3) not-for-profit community hospital.

This lawsuit, brought by MST, LLC ("MST" or "Plaintiff") seeks a declaratory judgment that the Amendment to the Conservation Easement is invalid and that the 56.75 acres of property purchased by GMH is still subject to, and fully encumbered by the Conservation Easement.  MST claims its purpose for bringing this action is to protect the environmental, conservation, and open space values reflected in the easement.  However, the real purpose of MST's suit is to thwart the

potential development of GMH's property and prevent the property from being used in a manner that MST and other neighboring landowners perceive will lower their own property values.

MST has known of GMH's plans to develop the property at issue in the case since MST purchased Weehaw in 2010. In 2008, before MST's purchase of Weehaw, the Amendment to the Conservation Easement was recorded and the GMH property was rezoned to allow the property to be developed as a hospital. However, since purchasing Weehaw Plantation in 2010, MST has idly sat by, without protest, apparently willing to allow GMH to pursue the development of a hospital campus on the property at issue. It was only when GMH decided not to build a hospital on the land and instead sell it to a developer to construct affordable housing that MST opposed the development and filed this lawsuit claiming the Amendment was invalid and that GMH's property was still encumbered by the Conservation Easement.

MST does not own the property on which it seeks to enforce the conservation easement—GMH does. Nor does MST fit any other category of persons that have standing to enforce a conservation easement under Section 40(A) of the South Carolina Conservation Easement Act. As such, MST lacks standing to pursue its declaratory judgment action against North American Land Trust ("NALT") and GMH, and this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1988, Larry and Judy Young acquired several hundred acres of land in Georgetown, South Carolina known as Weehaw Plantation. (Compl., Ex. 1 at p. 1). Several years later, on December 29, 1995, the Youngs granted NALT a conservation easement by way of an executed Conservation Easement and Declaration of Restrictive Covenants ("Conservation Easement") on approximately 788 of the 932.56 acres that made up Weehaw. (Compl. ¶ 7).

Beginning in 2008, an exhaustive study of possible sites for the new Georgetown public hospital was conducted. (*See* Compl., Ex. 3, at p. 2). Due to site selection criteria including wetland areas, elevation, and other infrastructure considerations, it was determined that a portion of Weehaw was the best site for a potential hospital development. (*Id.*). GMH subsequently approached the Youngs to inquire about purchasing approximately 65 acres of Weehaw Plantation to construct a new hospital campus. On November 10, 2008, while the Youngs and GMH were negotiating GMH's purchase of 65 acres of Weehaw Plantation, Georgetown County passed Ordinance No. 2008-65 which rezoned portions of Weehaw Plantation from residential and general commercial to the Georgetown Memorial Hospital Weehaw Campus Planned Development ("Planned Development"). (Compl. ¶ 20).

On December 19, 2008, the Youngs and NALT amended the Conservation Easement ("the Amendment") to release 56.75 acres of upland property from the restrictions contained in the easement in exchange for further encumbering approximately 35 acres of waterfront property in Weehaw by giving up the right to develop five homesites, which were originally permitted to be constructed under the 1995 Conservation Easement. (*See* Compl., Ex. 3, at p. 2; Compl. Ex. 1, at p. 5). Before executing the Amendment, NALT determined that amending the Conservation Easement in this manner would "have a greater ecological benefit and further advance and protect the Conservation Purposes of the Conservation Easement." (Compl., Ex. 3 at p. 2).

On December 30, 2008, GMH purchased 65 acres of upland property from the Youngs ("Hospital Property"), 56.75 acres of which were released from the Conservation Easement as a result of the Amendment and 8.25 acres of which were never subject to the Conservation Easement. (*Id.* at ¶ 18-19). The Amendment was recorded with the Georgetown County Register of Deeds the same day that GMH purchased the Hospital Property. (Compl., Ex. 3). The

3

Amendment made clear that at the time GMH purchased the Hospital Property, it "need[ed] to relocate its Georgetown Memorial Hospital campus due to the inability to expand in its current location due to geographic restraints," and that GMH intended to build a new hospital campus on the Hospital Property. (*Id.*, at p. 3). However, neither the Amendment, nor any other instrument restricted GMH's use of the Hospital Property. GMH was free to use, develop, and/or sell the Hospital Property for any purpose, subject to the appropriate zoning.

On June 16, 2010, MST purchased approximately 687.20 acres of Weehaw Plantation from the Youngs as evidenced by the deed recorded June 21, 2010 in the Georgetown County Register of Deeds Book 1497 at Page 342. The deed transferring title of Weehaw from the Youngs to MST stated that MST purchased the property subject to the Conservation Easement and the Amendment. As such, when MST purchased Weehaw, it had notice of both the Conservation Easement and the Amendment, the latter of which removed 56.75 acres of the Hospital Property from the Conservation Easement and stated GMH's intent to develop the Hospital Property. For nearly eleven years, MST did not contest the potential development of the Hospital Property, despite it being clear that GMH intended to use the property as the site of a hospital campus or some other commercial use. (*See* Compl. ¶ 20, 25).

Due to a change in circumstances, including economic constraints and changes to the hospital system's overall strategic plan, GMH did not build a new hospital campus on the Hospital Property, but rather renovated and expanded its already existing Georgetown Memorial Hospital campus. No longer needing to develop the Hospital Property, GMH contracted to sell the Hospital Property to a developer who planned to use the property for affordable multifamily housing.[1] On

---

[1] It is well documented in the public record that the lack of affordable housing in Georgetown, South Carolina has hindered the town's economic growth and prevented the town and its businesses from expanding the workforce.

4

February 19, 2021, GMH applied to Georgetown County for an amendment to the Planned Development to allow for multifamily housing. (*See* Compl. ¶ 21). It was not until this occurred—approximately 11 years after MST purchased Weehaw with the knowledge that Hospital Property would be developed—that MST opposed GMH's rezoning of the Hospital Property on the grounds that it was still encumbered by the Conservation Easement and could not be developed. (*See id*.). Once MST realized that GMH did not intend to build a hospital on the Hospital Property, but that the property would be used for affordable housing, only then did MST try to declare the Amendment invalid.

After MST learned that GMH intended to sell the Hospital Property for use as affordable housing, it and other neighboring landowners wrote letters to Georgetown County protesting the proposed zoning amendment. (*See* Compl. ¶ 25). Because of these protests, the zoning amendment failed to pass during its third public reading at a Georgetown County Council Meeting on May 25, 2021 despite the Planning Commission previously recommending the amendment and the County Counsel unanimously approving the amendment during the amendment's first and second public readings. (*See* Compl. ¶ 28). As a result of the zoning amendment failing to pass, GMH's contract to sell the Hospital Property for affordable housing fell through.

On March 16, 2022—out of concern that the Hospital Property would be sold and/or developed in a manner that MST and other neighboring landowners deemed unfit or developed in a manner that would reduce their own property value—MST filed its declaratory judgment action, seeking a declaration from this Court that the Amendment to the Conservation Easement was invalid and that the Hospital Property remains subject to the restrictions contained in the Conservation Easement.

**LEGAL STANDARD**

A claim must be dismissed pursuant to Rule 12(b)(6) when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Rule 8(a) requires "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Advanced Pain Therapies LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 3:14-CV-00050-MGL, 2014 WL 4402800, at *1 (D.S.C. Sept. 3, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotation marks omitted). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks omitted). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). Furthermore, although the court must accept as true the complaint's well-pleaded factual allegations, *see Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), "conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that they plausibly give rise to an entitlement to relief." *Advanced Pain Therapies*, 2014 WL 4402800, at *1 (internal quotation marks omitted).

Generally, "a dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim." *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). "Statutory standing 'applies only to legislatively-created causes of action' and concerns 'whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action.'" *Id.* (quoting Radha A. Pathak, *Statutory Standing and the*

*Tyranny of Labels*, 62 Okla. L. Rev. 89, 91 (2009)).  The Fourth Circuit has "framed the statutory standing inquiry as whether the plaintiff 'is a member of the class given authority by a statute to bring suit.'" *Id.* (quoting *In re Mutual Funds Investment Litigation*, 529 F.3d 207, 216 (4th Cir. 2008)).

## ARGUMENT

**MST's claim should be dismissed because MST lacks standing to bring the claim alleged.**

South Carolina adopted the Uniform Conservation Easement Act ("UCEA") in 1991.  *See* S.C. Code Ann. § 27-8-10 *et seq.*  Section 27-8-40(A) of the UCEA expressly limits who may bring "[a]n action affecting a conservation easement" to the following:

   (1) an owner of an interest in the real property burdened by the easement;

   (2) a holder of the easement;

   (3) a person having a third-party right of enforcement; or

   (4) a person otherwise authorized by law."

This action is one that affects a conservation easement as the outcome determines whether the Conservation Easement exists on the Hospital Property.  Because MST does not fall under any of the four enumerated categories of persons that have standing to bring an action affecting a conservation easement, this suit cannot continue.

   **I.     MST is not an owner of an interest in the real property burdened by the easement.**

Under the UCEA, the first category of persons or entities that has standing to bring an action affecting a conservation easement is "an owner of an interest in the real property burdened by the easement."  S.C. Code Ann. § 27-8-40(A)(1).  MST does not fall under this category, and therefore does not having standing to bring this lawsuit under Section 27-8-40(A)(1).

**A. To have standing under Section 27-8-40(A)(1), one must own the property that is the subject of the enforcement action.**

South Carolina has no case law interpreting the standing provision contained in the UCEA, nor does it have any case law that otherwise defines which individuals or entities fall within the category of persons set forth in 27-8-40(A)(1). The only case that appears to have dealt with this issue directly is *Estate of Robbins v. Chebeague & Cumberland Land Trust,* 2017 ME 17, 154 A.3d 1185 (Me. 2017). Although the case was decided by the Supreme Court of Maine, the pertinent facts and the issues presented in *Estate of Robbins* are similar to those present in this case, and as such it should carry a significant weight of authority.

The conservation easement at issue in *Estate of Robbins* was created by deed in 1997. *Id.* at ¶ 2, 154 A.3d at 1187. Marion Payson was the grantor of the easement, and the grantee was Cumberland Mainland and Islands Trust, Inc. *Id.* The holder of the easement at the time of the lawsuit was Cumberland Mainland and Islands Trust, Inc.'s successor, Chebeague & Cumberland Land Trust (the "Land Trust"). The land restricted by the easement comprised roughly 100 acres of land on the coast of Cumberland, Maine. *Id.* The conservation easement's stated purpose was to retain the property "predominantly in its scenic, natural, and open space condition for conservation purposes and to prevent any use of the Property that will significantly impair or interfere with the conservation values of the Property and the Property's natural resources and associated ecosystems." *Id.* The deed also specifically noted that the easement holder's primary purpose was to "promot[e] for the benefit of the general public the preservation of natural resources in the Town of Cumberland and County of Cumberland, including land and water resources, the plant and animal life thereon, and unique scenic, natural, and historic sites." *Id.* at ¶ 3, 154 A.3d at 1188.

At the time of the lawsuit, and following several conveyances, Ms. Payson's estate ("the Estate") owned only a portion of the original 100 acres of land subject to the conservation easement. *Id.* at ¶ 4, 154 A.3d at 1188. The Town of Cumberland (the "Town") had purchased another part of the 100 acres subject to the easement, which it acquired after the easement was created. *Id.* The Town sought to use its part of the 100 acres for a public beach and planned to construct a parking lot, resurface the existing access road with reclaimed asphalt, relocate an existing bath house, and add portable toilets. *Id.* at ¶ 5, 154 A.3d at 1188. The Land Trust, as holder of the easement, informed the Town that its plans were permitted under the terms of the conservation easement. *Id.* at ¶ 6, 154 A.3d at 1188. The Estate, although not an owner of the land at issue, took the position that the Town's plan did not comply with the terms of the conservation easement and that the Land Trust was violating its obligations as holder of the easement. *Id.* at ¶ 7, 154 A.3d at 1188. The Estate filed suit in the Superior Court of Maine against the Land Trust and the Town seeking a declaratory judgment that the Town's plans violated the terms of the conservation easement, injunctive relief, damages, and costs. *Id.* After the Estate filed suit, the Town and Land Trust moved to dismiss the case on grounds that the Estate lacked standing to initiate an action to enforce the conservation easement as it relates to the Town's property. *Id.*

Like South Carolina, Maine also adopted the UCEA, and the language in Maine's statute is identical to the language in S.C. Code Ann. § 27-8-40(A)(1). *Compare* 33 M.R.S. § 478(1)(A) (2016) *with* S.C. Code Ann. § 27-8-40(A)(1) (both granting standing to "[a]n owner of an interest in the real property burdened by the easement"). The Superior Court of Maine "interpreted the statutorily provided grant of standing, which applies to an owner of an interest in the real property burdened by the easement, . . . and concluded ***that the statutory language does not include owners***

9

***of other unrelated property that happens to be burdened by the same easement.***" *Id.* at ¶ 8, 154 A.3d at 1188 (emphasis added). As such, the Estate did not have standing to enforce the conservation easement on the Town's property, even though both parcels were subject to the same conservation easement. *See id.*

The Supreme Court of Maine reviewed the Superior Court's decision *de novo*, and affirmed, holding that the provision did not confer standing to the Estate. *Id.* at ¶ 21, 154 A.3d at 1191. In doing so, the Supreme Court analyzed the legislative history of the statute at length and concluded that it was "not persuaded that the Legislature intended to hinder a competent conservation easement holder's ability to carry out its responsibilities by authorizing expensive and complicated enforcement lawsuits to be prosecuted by any party who happens to own land that is also subject to the conservation easement." *Id.* at ¶ 30, 154 A.3d at 1194. The Supreme Court of Maine also reasoned, that allowing owners of separate but neighboring land subject to the same conservation easement "could permit individuals to thwart the public purposes of a conservation tool and instead use that tool to advance their own private interests." *Id.* at ¶ 28 n.9, 154 A.3d at 1193 n.9 (noting that such a result "could allow neighbors to extract a private benefit (namely, the continuation of an easement arrangement that only serves the personal goals of neighbors), when the purpose of the easement, the overall conservation easement authorization, and the federal and state tax subsidies is to benefit the public").

    **B. The facts of this case are analogous to *Estate of Robbins*, and the same result should be reached here.**

The result reached here should be the same result that the Supreme Court of Maine reached in *Estate of Robbins*. Like the land at issue in *Estate of Robbins*, the land at issue here—the Hospital Property owned by GMH—was once part of a larger tract of land that was subject to a conservation easement (*i.e.* Weehaw). Like the Estate, MST owns a portion of the larger tract of

land on which the Conservation Easement was formed. Additionally, in *Estate of Robbins*, the Land Trust certified that the Town's plans were permitted under the conservation easement, similar to how NALT amended the Conservation Easement to remove the Hospital Property from the restrictions imposed by the same. Finally, and most importantly, just how the Estate tried to enforce the conservation easement on the land owned by the Town, MST is now attempting to enforce a conservation easement on land owned by GMH. The Supreme Court of Maine has made clear, that owners of unrelated property burdened by the same conservation easement, such as the Estate and MST, are not "owners of an interest in the real property burdened by the easement" for purposes of having standing to enforce a conservation easement under the UCEA.

**C. The policy considerations undergirding the Supreme Court of Maine's ruling in *Estate of Robbins* are supported by finding that MST does not have standing under Section 27-8-40(A)(1).**

If this Court were to depart from the holding in *Estate of Robbins*, and find that MST has standing to enforce the Conservation Easement on GMH's property as an owner of an interest in neighboring property burdened by the easement, it would permit MST to "thwart the public purposes of a conservation tool and instead use that tool to advance their own private interests," which is exactly what the Supreme Court of Maine intended to avoid in *Estate of Robbins*. *Id.* at ¶ 28 n.9, 154 A.3d at 1193 n.9. The Conservation Easement and Amendment were both recorded instruments in the Weehaw Plantation chain of title. As such, MST was aware of both the Conservation Easement and the Amendment releasing the Hospital Property from the restrictions of the easement when it purchased Weehaw in 2010. MST's own pleadings state that building a hospital on the Hospital Property would not have been permitted under the Conservation Easement. However, during the 11 years that MST owned Weehaw before this dispute, it took no action to prevent the development of a hospital, despite its own allegation that the Conservation Easement prohibits any commercial use of the Hospital Property including the development of

11

structures for medical office buildings, hospitals, and multifamily housing. (Compl. ¶ 22). It was not until 2021, when GMH had a contract to sell the Hospital Property for affordable multifamily housing, that MST cried foul, claimed that the Amendment was invalid, and claimed that the Hospital Property is still subject to the restrictions contained in the Conservation Easement.

MST claims it is seeking to declare the Amendment invalid and enforce the Conservation Easement for conservation purposes. However, it is clear from the exhibits attached to MST's complaint that the true purpose of MST now trying to enforce the Conservation Easement on the Hospital Property is that MST and other neighboring property owners are concerned that an affordable housing development will reduce the value of their own properties. In other words, MST is attempting to advance its own private interests and is using the Conservation Easement as a pretext to do so. This is exactly what the Supreme Court of Maine was trying to avoid when it affirmed the Superior Court's holding that owners of other unrelated property that is burdened by the same easement as the property against which enforcement is sought do not have standing to enforce the conservation easement. As such, this Court should likewise find that MST does not qualify as a person or entity who has standing under Section 27-8-40(A)(1).

**II.     MST is not a holder of the Conservation Easement.**

The second category of persons or entities that has standing to bring an action affecting a conservation easement under the UCEA is "a holder of the easement." S.C. Code Ann. § 27-8-40(A)(1). Section 27-8-20(2) of the South Carolina Conservation Easement Act defines "Holder" as "(a) a governmental body empowered to hold an interest in real property under the laws of this State or the United States; or (b) a charitable, not-for-profit or educational corporation, association, or trust the purposes or powers of which include one or more of the purposes listed in subsection

(1)." Here, the holder of the easement is NALT, not MST. MST therefore does not have standing under Section 27-8-40(A)(2).

### III.    MST is not a person having a third-party right of enforcement as it relates to the Conservation Easement.

The third category of persons or entities that has standing to bring an action affecting a conservation easement under the UCEA is "a person having a third-party right of enforcement." S.C. Code Ann. § 27-8-40(A)(3).  Section 27-8-20(4) of the South Carolina Conservation Easement Act defines "third-party right of enforcement" as "a right provided by the grantor of the conservation easement to enforce selected terms of the conservation easement which is granted to a governmental body, a charitable, not-for-profit, or educational corporation, association, or trust, which though not the holder of the easement, is eligible to be the holder of such easement."

MST is not a governmental body, charitable, not-for-profit, educational association or trust and therefore, is not eligible to receive a third-party right of enforcement.  More importantly, the language of the Conservation Easement expressly states that it does not create or convey any third-party right of enforcement.  (Compl, Ex. 1, at 7. ("no third party beneficiary rights, including but not limited to third party rights of enforcement, are created hereby.")).  Because MST is not eligible to receive a third-party right of enforcement, and because no third-party right of enforcement was granted by the Conservation Easement, MST does not have standing under Section 27-8-40(A)(3).

### IV.    MST is not a person otherwise authorized by law to enforce the Conservation Easement.

The fourth and final category of persons or entities that have standing to bring an action affecting a conservation easement under the UCEA is "a person otherwise authorized by law." S.C. Code Ann. § 27-8-40(A)(4). The Drafting Committee of the UCEA explicitly references the charitable trust doctrine's qualification as "other law." Unif. Conservation Easement Act § 3(a) cmt., 12 U.L.A. at 185 (2008) ("In addition to [the first] three categories of persons who derive

their standing from the explicit terms of the easement itself, the Act also recognizes that the state's other applicable law may create standing in other persons. For example, independently of the Act, the Attorney General could have standing in his capacity as supervisor of charitable trusts, either by statute or at common law.").

MST is not the Attorney General and South Carolina has not otherwise authorized private citizens with no ownership interest in a parcel of land to bring an action affecting a conservation easement on that land.  Thus, MST does not have standing under Section 27-8-40(A)(4).  *See Hicks v. Dowd*, 157 P.3d 914, 921 (Wyo. 2007) (dismissing the case because the plaintiff did not have standing to sue to enforce a charitable trust but inviting the Wyoming Attorney General, as supervisor of charitable trusts in Wyoming "to reassess his position" regarding the case).

Furthermore, the Conservation Easement itself, consistent with the South Carolina Conservation Easement Act, only contemplates NALT having a right to enforce the Conservation Easement.  (*See* Compl., Ex. 1 at p.12 ("the easements and rights set forth in this Declaration unto Grantee"); *id.* at p. 8 ("This Declaration gives rise to a property right and interest immediately vested in the Grantee."); *id.* at p. 7 ("Grantee shall have the right to enforce by proceedings at law or in equity each and every one of the covenants and restrictions set forth in this Declaration."); *id.* at p. 1 (defining "Grantee" as "North American Land Trust.")).  As such, MST does not fall under the category of persons or entities permitted to bring an action affecting a conservation easement under Section 27-8-40(A)(4).

## **CONCLUSION**

For the reasons stated above, MST does not have standing to bring its lawsuit which seeks to declare the Amendment invalid and enforce the restrictions of the Conservation Easement on the Hospital Property.  As such, GMH requests the Court dismiss MST's lawsuit in its entirety,

14

that GMH be awarded its expenses incurred in connection with this action, including its reasonable attorneys' fees, and for such other relief as this Court deems proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/*Wesley T. Moran*
    Wesley T. Moran
    Federal Bar No. 12797
    E-Mail: wes.moran@nelsonmullins.com
    3751 Robert M. Grissom Parkway / Suite 300
    Post Office Box 3939 (29578-3939)
    Myrtle Beach, SC 29577-6412
    (843) 448-3500

***Attorney for Defendant Georgetown Memorial Hospital***

Myrtle Beach, South Carolina
June 6, 2022