UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MST, LLC, | ) | C/A No. 2:22-cv-00874-MBS |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS (ECF ENTRY NOS. 14 & 15)** |
| Versus | ) | |
| North American Land Trust and Georgetown Memorial Hospital, | ) | |
| Defendants. | ) | |

Plaintiff MST, LLC ("Plaintiff" or "MST"), by and through its undersigned counsel, submits this memorandum in opposition to the Motions to Dismiss filed by the Defendants, Georgetown Memorial Hospital ("GMH") and North American Land Trust ("NALT"), respectively, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (See ECF Entry No. 14 at 1 and ECF Entry No. 15 at 1). The sole ground of Defendants' Motions is their contention Plaintiff lacks standing. For the reasons explained herein, the Motions to Dismiss must be denied because MST has standing to bring this declaratory judgment action.[1]

---

[1] The Defendants' substantive argument for dismissal is contained in GMH's Motion to Dismiss (ECF Entry No. 14), in which NALT has joined without making further argument. (See ECF Entry No.15 at 1 (NALT ". . . hereby joins Defendant Georgetown Memorial Hospital (GMH")'s Motion to Dismiss [ECF ENTRY No. 14] . . . .")). Accordingly, while both Motion are opposed for the same reasons, this Memorandum addresses the arguments raised in GMH's Motion specifically.

## Preliminary Statement

Instead of sticking to the allegations of the Complaint and accompanying exhibits, GMH improperly laces its arguments in its Motion to Dismiss with unsubstantiated assertions regarding MST's motives for bringing this case. See, e.g., Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014) ("We generally do not consider extrinsic evidence when evaluating the sufficiency of a complaint."). These statements are an obvious effort by the Defendants to influence the Court on the standing issue by bringing up matters entirely unrelated to it; otherwise, there was no reason to do so. Defendants seek to distract the Court from the collusive actions of Defendants to defeat the purpose of the Conservation Easement through a per se violation of the federal tax laws governing qualified conservation donations as explained in more detail below.

MST is a conservation-minded owner that brings this case to uphold the integrity of the Conservation Easement and the law, just as alleged in its Complaint. Completely contrary to the Defendants' assertions in the Motions, MST seeks to restore the public benefit that was the purpose of the Conservation Easement and advance the policies of the federal and state laws governing conservation easements. It is the Defendants, not MST, who schemed to thwart the controlling laws and policies and, in so doing, have greatly affected MST, whose land is governed by the same perpetual Conservation Easement Defendants sought to shed.

## Background

The primary purpose of an open space conservation easement is to protect specific, identified land in perpetuity. Federal and state laws provide substantial tax advantages to an owner who grants a conservation easement on real property that has significant conservation value restricting that property in perpetuity. 26 U.S.C. § 170(h)(5)(A) ("A contribution shall not

be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity.") (emphasis added). Federal statutes and regulations are very specific about the requirements of a qualified conservation donation. See, e.g., 26 C.F.R. §1.170A-14. Treas. Reg. § 1.170A-14. Two of the core requirements are that the property encumbered by the conservation easement must be specifically identified and be encumbered by the easement in perpetuity. (ECF Entry No. 1 at ¶ 36); 16 U.S. §170(h).

The Fourth Circuit has specifically held that once subject to a conservation easement, the encumbered land may not be removed from the conservation easement without violation federal tax law. See Belk v. Comm'r, 774 F.3d 221, 225 (4th Cir. 2014) (affirming the tax court's finding that "'because the conservation easement agreement permits [the Belks] to change what property is subject to the conservation easement [by substituting property for the original property], the use restriction was not granted in perpetuity,' as required by § 170(h)(2)(C)"). The Eleventh Circuit recently reaffirmed this fundamental legal principle. Pine Mountain Preserve LLLP v Commissioner of Internal Revenue, 978 F.3d 1200, 1207 (11th Cir, 2020) (A conservation easement violates the perpetuity requirement of § 170(h)(2)(C) if the actual boundaries of the easement are altered or allowed to be altered). In this case, as alleged in the Complaint, the Defendants attempted to do just that for business and financial reasons by purporting to remove land that was permanently restricted by the Conservation Easement from the provisions of that Conservation Easement and purportedly substituting some other acreage, the specific actions found to violate federal tax law in Belk.

MST is the owner of a large property just outside of Georgetown known as "Weehaw," having purchased it in 2010.

On December 29, 1995, Larry and Judy Young, the then-owners of Weehaw, entered a Conservation Easement and Declaration of Restrictive Covenants (the "Conservation Easement") with the Defendant, NALT. (See Conservation Easement, ECF Entry No. 1-1, at 1). By its express terms, the Conservation Easement encumbered the entirety of the Weehaw described as the "Property" and identified more fully and accurately in the extensive property description made a part of the Conservation Easement. (See Conservation Easement, ECF Entry No. 1-1, at 17-21).

The Conservation Easement and accompanying Baseline Documentation, (ECF Entry No. 1-2), detail the Property's significant environment, conservation and open space values that are the cornerstone of a valid conservation easement. (See ECF Entry No. 1 at ¶¶ 10-12). To preserve and protect the Property and to obtain significant federal and state tax deductions, Larry and Judy granted the Conservation Easement, thereby imposing covenants and restrictions protecting the conservation values of the Property "in perpetuity." Id. at ¶ 13. Consistent with this purpose and controlling federal law, the Conservation Easement recites that "… Grantor (the Youngs) and Grantee (NALT) desire to perpetually conserve the natural, scientific·, educational, open space, and scenic resources of the Property." (ECF Entry No. 1-1 at 2) (emphasis added).

The Baseline Report appended to the Conservation Easement documents the condition and valuable ecological and scenic features of the Property at the time of the Easement and identifies the public benefit from the Conservation Easement that is its foundation. (ECF Entry No. 1-2 at 7-10). Section III of the Baseline Report addresses the "Conservation Purposes" of the Conservation Easement. This extended statement of the Conservation Purposes singles out the portion of the Property adjacent to Highway 701 and Wedgefield Road that will be maintained in

its natural state and visible to the public from these rights of ways to fulfill the public benefit associated with the open space element of the Conservation Easement [2]:

> **III. Conservation Purposes**
>
> The IRS Tax Code Section 170 (h) has established specific "Conservation Purposes" that, if perpetually protected through the donation conservation easement, could render the donor eligible for tax relief. In particular, this easement addresses two conservation purposes:
>
> \*   \*   \*
>
> ***2.) The preservation of open space (including farmland and forest land) where such preservation is-***
>
> ***(a) For scenic enjoyment of the general public, or***
>
> • <u>A significant portion of the conservation area is visible to the general public who can enjoy the rich scenic character of its natural resources from</u> the Black River, Pee Dee River<u>, Highway 701 and Wedgefield Road</u>.

(ECF Entry No. 1-2 at 7-8) (emphasis added).

Later, Larry and Judy conveyed the Property to Kyle and Jacqueline Young. (See ECF Entry No. 1-3 at 1). In 2008, Kyle and Jacqueline decided to sell, and the Hospital decided to buy, 56.75 acres of the Property encumbered by the Conservation Easement that included almost all the acreage of the protected land along Highway 701 and Wedgefield Road that provided

---

[2] The controlling IRS regulation, 26 C.F.R. § 1.170A–14 (d)(4), provides, in part, as follows:
(4) Preservation of open space—(i) In general. The donation of a qualified real property interest to preserve open space (including farmland and forest land) will meet the conservation purposes test of this section if such preservation is— …

(B) For the scenic enjoyment of the general public and will yield a significant public benefit….

(B) Access. To satisfy the requirement of scenic enjoyment by the general public, visual (rather than physical) access to or across the property by the general public is sufficient. Under the terms of an open space easement on scenic property, the entire property need not be visible to the public for a donation to qualify under this section, although the public benefit from the donation may be insufficient to qualify for a deduction if only a small portion of the property is visible to the public.

5

most of the public view essential for an open space conservation easement to satisfy IRS regulations. See map at ECF Entry 1-3 p. 12. .

To accommodate their business deal, NALT agreed to amend the Conservation Easement to purportedly delete these critical 56.75 acres from the Property subject to the Conservation Easement, an action specifically prohibited under the IRS regulations as further confirmed by the Fourth and Eleventh Circuits. To this end, on December 19, 2008, Kyle and Jacqueline, as owners of the Property and grantors of the Conservation Easement, and NALT, as grantee of the Conservation Easement, executed an instrument titled Amendment to Conservation Easement and Declaration of Restrictive Covenants (the "Amendment"). (See Compl., ECF Entry No. 1, at ¶¶ 31-39; Amendment at ECF Entry No. 1-3).

Generally, the Amendment is intended to do two things. First, it attempts to remove the 56.75 acres of the Property along Highway 701 and Wedgefield Road from the restrictions of the Conservation Easement. Id. Second, it purports to extinguish certain building rights on the remainder of the encumbered Property, i.e., the Weehaw tract now owned by MST. Id. After entering the Amendment, Kyle and Jacqueline sold the 56.75 acres (the "Hospital Easement Property") to GMH, the current owner. [3]

As the owner of the 658.56 acres that now comprise Weehaw, MST brings this declaratory judgment action seeking an adjudication of the legal invalidity of the Amendment and specifically that the entirety of the Property is encumbered in perpetuity by the Conservation

---

[3] In effort to cover up the private financial benefit driving the Amendment, it contained the following recital: "WHEREAS, it has been determined to the greatest degree of certainty possible, that neither the Grantor nor the Hospital nor Grantee will obtain any economic benefit from the accomplishment of the foregoing; …" ECF Entry No. 1-3, p.3. According to the records of the Register of Deeds for Georgetown County, in December 2008, the Youngs conveyed the Hospital Parcel to GMH for $3,301,513. No economic benefit indeed.

Easement including the 56.75 acres now owned by GMH as well as a determination of the effect of the Amendment on MST's property.

Joined by NALT, (ECF Entry No. 15), GMH moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Entry No. 14). GMH argues that MST lacks standing under the South Carolina Conservation Easement Act of 1991, S.C. Code § 27-8-10 et seq., because "[it] does not fall under any of the four enumerated categories of persons that have standing [under S.C. Code §27-8-40(A)] to bring an action affecting a conservation easement . . . ." (ECF Entry No. 14 at 7).

**Standard of Review**

To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. Twombly, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Id. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citation and quotation marks omitted).

**Law and Argument**

The Conservation Easement expressly creates "a 'conservation easement' as defined in the [South Carolina] Conservation Act of 1991, as amended through the date hereof (the 'Act'),

7

Sections 27-8-10 et seq. of the South Carolina Code of Laws." (ECF Entry No. 1 at ¶ 14). Section 27-8-40(A) of the Conservation Act identifies four categories of persons who may bring an "action affecting a conservation easement." Specifically, the statute states:

(A) An action affecting a conservation easement may be brought by:

(1) an owner of an interest in the real property burdened by the easement;

(2) a holder of the easement;

(3) a person having a third-party right of enforcement; or

(4) a person otherwise authorized by law.

S.C. Code Ann. § 27-8-40(A). Here, both subsection (A)(1) and (A)(4) of the above statute confer standing on MST to bring this declaratory judgment action. The 3-2 decision of the Supreme Court of Maine that is the entire basis for Defendants' Motions is neither controlling nor factually similar. MST respectfully submits the Motions should be denied.

**A. MST has standing to bring this action because it is an owner of an interest in the real property burdened by the Conservation Easement and the purported Amendment thereto**.

In its Motion to Dismiss, GMH argues that "South Carolina has no case law interpreting the standing provision contained in the [Conservation Easement Act], nor does it have any case law that otherwise defines which individuals or entities fall within the category of persons set forth in 27-8-40(A)(1)." (ECF Entry No. 14 at 8). This statement is correct as to reported appellate cases but incorrect as to the circuit court. Relatively recently, a South Carolina trial court interpreted subsection (A)(1) in a case on point. See Floyd v. Dross, No. 2019-CP-08-02334, 2020 WL 13304169 (S.C.Com.Pl. Sep. 11, 2020) (J. Young).

There, the owner of a 371-acre tract of land in Berkeley County granted a conservation easement over his property (the "Conservation Easement Property"). Id. at *1. Upon his death,

his two daughters, Betsy and Susan, each inherited one half of the Conservation Easement Property, which was subdivided into two parcels. Id. at *2. Access to the back parcel required crossing the front parcel. Id. Betsy, who inherited the front parcel, locked the entrance gate to the access road and refused to provide a key to her sister, Susan, who inherited the back parcel. Id. at *3. Susan sued her sister Betsy and sought a judicial declaration of her right of access under the Conservation Easement to cross over Betsy's front parcel. See id. at *1.

Opposing Susan's motion for partial summary judgment, Betsy argued that "Susan h[ad] no standing to seek a declaration of her rights under the Conservation Easement." Id. at *4. Specifically, Betsy cited Section 27-8-40 for the contention that "under the Conservation Easement Act of 1991 . . . Susan [was] not entitled to bring this action affecting the Conservation Easement." Id. at *5. The court disagreed. Id. Even though she did not own the front parcel, the court explained that "Susan owns half of the Conservation Easement Property" and "comes under the definition of 'Grantor.'" For that reason, the court reasoned that Susan met the requirements of subsection (A)(1), which provides that "'an owner of an interest in the real property burdened by the easement' may maintain an action." Id. (citing S.C. Code Ann. § 27-8-40(A)(1)).

Further, the court found, "S.C. Code Ann. § 27-8-40(A)(4) provides that an action affecting a conservation easement may be brought by 'a person otherwise authorized by law." Id. Because Susan had constitutional standing to bring her action, the court held that she also qualified under subsection (A)(4). Id. (citing ATC South, Inc. v. Charleston County, 380 S.C. 191, 195, 669 S.E.2d 337, 339 (2008) (discussing the grounds for standing and elements needed to establish constitutional standing)). Ultimately, the Court resoundingly rejected Betsy's lack of standing argument and granted Susan's motion for partial summary judgment. See id. at *6.

Here, similar to the Floyd case, where Susan qualified under subsection (A)(1) due to her owning real property burdened by the easement, MST, the adjoining property owner, owns substantially more than half of the Property encumbered by the Conservation Easement. Furthermore, the Amendment purports to modify the restrictions *on MST's property*, by reducing the number of dwellings permitted on the Weehaw parcel that it owns. (See ECF Entry No. 1-3 at ¶ 3). As such, MST qualifies under section (A)(1) as an owner of an interest in the real property that the Conservation Easement and Amendment both burden. MST has statutory standing under section (A)(1) of to bring this declaratory judgment action.

In its attempt to persuade this Court otherwise, GMH's entire Motion relies exclusively on a single decision of the Supreme Court of Maine. (See ECF Entry No. 14 at 8-12). The case, Estate of Robbins v. Chebeague & Cumberland Land Trust, 2017 ME 17 (Me. 2017), was a narrowly decided, 3-2 decision of the Supreme Judicial Court of Maine. It is readily distinguishable from this case, on both the facts and the law.

In Estate of Robbins, the estate, an owner of one of the tracts of land covered by a conservation easement, brought an action challenging the conservation entity grantee's interpretation of the terms of the conservation easement that would allow certain development on adjoining property, also encumbered by the conservation easement, that the estate did not want to proceed. The estate brought the suit to challenge the conservation easement grantee's discretionary interpretation of the terms of the conservation easement as applied to the neighbor's property.

Unlike In Estate of Robbins this case does not involve a fight over the discretionary interpretation of the terms of a conservation easement that all parties agreed applied to both properties. Here the dispute is whether the Defendants violated federal law in purporting to

remove the Hospital Property from the Conservation Easement. Far from a dispute over the subjective interpretation of the wording of a conservation easement, this case involves the fundamental question of whether the Hospital Property is subject to the Conservation Easement in the first instance. Further and of equal significance, the challenged activity in <u>Estate of Robbins</u> was to occur entirely on the neighbor's property, whereas here the Amendment purported to change the terms of the Conservation Easement on the property of MST as well.

In its Motion, GMH ironically and hypocritically makes the argument that recognizing MST's standing would allow a private party to extract a "private benefit" where the purpose of the Conservation Easement and "the federal and state tax subsidies is to benefit the public." GMH Motion at p. 10. In fact, it is precisely the opposite.

GMH, NALT, and the Youngs purported to amend the Conservation Easement to remove the Hospital Property from its terms so that the Youngs could reap a personal financial benefit and GMH could obtain a business benefit. [4] It is MST that is seeking to uphold the public benefit through open space conservation that is the purpose of the federal and state tax subsidies. The Defendants' actions eliminated all public benefit from the Conservation Easement on the Hospital Property. The <u>only</u> way the public benefit of the Conservation Easement will be protected is if federal law is enforced and Defendants' business agenda to remove the Hospital Property from the Conservation Easement is judicially declared invalid and ineffective.

With these critical factual differences in mind, MST address the specifics of the divided opinion of the Maine Supreme Court in <u>In Estate of Robbins</u>. There the trial court dismissed the lawsuit, holding that the Estate lacked standing under subsection (A)(1) of Maine's enabling

---

[4] Although the recitals and terms of the Amendment refer obliquely to how the public may benefit from a hospital, that alleged benefit is entirely different from the public benefit in

statute, "applies to '[a]n owner of an interest in the real property burdened the easement[.]'" 2017 ME 17, ¶ 8 (citing 33 M.R.S. §478(1)(A) (2016) (alterations added))." On appeal, the Estate argued "that it has standing to bring a claim to enforce the terms of the conservation easement as to the Town's land pursuant to the plain language of section 478(1) because the Estate owns an interest in real property that is also burdened by the easement, even if the dispute does not concern a use proposed on the Estate's property.[5] Id. at ¶ 9. The Supreme Court of Maine upheld the trail court's dismissal.

In narrowly construing Maine's enabling statute, the majority in Estate of Robbins reasoned that its state's legislature had not intended "a broader group of private citizens to have standing to enforce conservation easements upon land they did not own . . . ." Id. at ¶ 28. Instead, the court explained that Maine's enabling statute, specifically its subpart (4), limits the circumstances where its state's attorney general can take action affecting a conservation easement. Id. at ¶ 22 ("[T]he [M]aine legislature ultimately adopted a statute that authorizes the Attorney General to enforce the terms of a conservation easement only in limited circumstances.") This, concluded the court, "manifest[s] an intention not to extensively expand the scope of standing to litigate over conservation easements." Id. at ¶ 22.

South Carolina's legislature did the exact opposite. As the last subsection to its enabling statute, this state's legislature included a broad catch-all category. See S.C. Code Ann. § 27-8-40(A)(4). It confers standing on "a person otherwise authorized by law." Id. This language actually manifests an intent by the legislature for South Carolina's enabling statute <u>not</u> to curtail standing principles recognized under state law.

---

conservation that is the express purpose of a conservation easement and the basis for the favorable state and federal tax treatment.

12

However, consideration of the legislative intent behind Section 27-8-40(A) of the South Carolina Code is neither necessary nor appropriate. Estate of Robbins, which was a 3-2 decision, includes a well-reasoned dissent that explains why the similar subsection (1) to Maine's enabling statute is not ambiguous. When read in the context of the full statute, the dissent notes that the first subsection reads, "[a]n action affecting a conservation easement may be brought or intervened in by . . . [a]n owner of an interest in the real property burdened by the easement." Estate of Robbins, 2017 ME 17 at ¶ 47 (quoting 33 M.R.S. § 478(1)(A)) (alteration in original) (internal quotations omitted). Accordingly, the dissent explains that "'the real property burdened by the easement' refers back to *all* of *the* real property so burdened, not just the property that may be used in violation of the easement." Id. at ¶ 47. The dissent continues,

> 'The' is a definite article and it points to a definite object. '[T]he real property burdened by the easement' is a specific reference, and it is a reference to the property described in a conservation easement that is being burdened by that conservation easement. To conclude that 'the real property burdened by the easement' refers only to the parcel being altered would require this Court to add to the language of 478(1)(A). Although the holder of the easement has certain duties that other property owners within the 'real property owned by the easement' may enforce, this does not limit the enforcement capacity given to any property owner who owns land within the overall conservation easement.

Id. at ¶ 49.

Here, subsection (A)(1) of South Carolina's enabling statute is also not ambiguous. In full, the statute reads, "[a]n action affecting a conservation easement may be brought by: (1) an owner of an interest in the real property burdened by the easement[.]" S.C. Code Ann. § 27-8-40(A)(1).  MST and GMH own the real property burdened by the Conservation Easement. MST also owns the real property burdened by the purported Amendment thereto. Thus, MST satisfies

---

[5] As stated earlier, unlike Estate of Robbins, this controversy <u>does</u> involve, in part, a dispute over uses on the MST property.

13

the plain language subsection (A)(1) of South Carolina's enabling statute, which confers standing on MST to bring this lawsuit.

Yet, GMH asks this Court to follow the majority in Estate of Robbins and, thereby, read language into subsection (A)(1). However, GMH apparently fails to appreciate that even if this Court were to do so, subsection (A)(1) would still confer standing on MST. This is because the Estate of Robbins court interpreted the phrase "the real property burdened by the easement" to mean "an owner of the real property, burdened by the easement, upon which an enforcement issue has arisen." See Estate of Robbins, 2017 ME 17 at ¶¶ 19, 48. Here, while enforcement is not the issue, the validity of the Amendment to the Conservation Easement is. That Amendment purports to change the restrictions imposed by the Conservation Easement on both MST's property and the Hospital Property. Accordingly, even applying the logic of the majority in Estate of Robbins, subsection (A)(1) still confers standing on MST to bring this lawsuit because the validity of the Amendment directly affects its property as well. The Motions to Dismiss must be denied on the grounds that MST has standing, under subsection (A)(1), to bring this action.

### B. MST is also "otherwise authorized by law" to bring this declaratory judgment action because it has constitutional standing.

Additionally, MST has standing under Section 27-8-40(A)(4) of the South Carolina Code. Subsection (A)(4) confers standing to bring an action affecting a conservation easement on "a person otherwise authorized by law." As the Court held in Floyd v. Dross, discussed supra at 5-7, subsection (A)(4) includes those who have constitutional standing. 2020 WL 13304169 at *5 (citing ATC South, Inc. v. Charleston County, 380 S.C. 191, 195, 669 S.E.2d 337, 339 (2008)). There are three ways to acquire standing: "(1) by statute; (2) through the rubric of 'constitutional standing;' [and] (3) under the 'public importance' exception." ATC South, Inc.,

14

380 S.C. at 195. As to constitutional standing, it is "an essential and unchanging part of the case-or-controversy requirement of Article III." Id. at 195 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The test for determining whether constitutional standing is present is three-pronged:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

ATC South, Inc., 380 S.C. at 195 (quoting Lujan, 504 U.S. at 560-661).

To have constitutional standing, MST does not have to wait for trees to be cut down on the Hospital Easement Property to bring this lawsuit. Similar arguments were used in the case Sierra Club, Inc. v. St. Johns River Water Management District to challenge standing. 2015 WL 6814566 (M.D. Fla. Nov. 6, 2015). In that case, the Sierra Club brought an action challenging, among other things, *a release of land* (not owned by the Sierra Club) *from a conservation easement* that was within the Farmington Mitigation Bank ("FMB"), the largest federal mitigation bank in the country. Id. at *2. The Sierra Club argued that the release and other actions were taken "in furtherance of a plan to develop FMB land" and that "[a]s a result of the averred development . . . at least eight Sierra Club members who live in close proximity to the FMB and recreate in public conservation land abutting the FMB . . . will be injured by the construction . . . destroying the rural quality [of the land]." Id. at *2 (internal quotation marks omitted).

The court held that the Sierra Club had standing to bring the lawsuit. Id. at *5. It explained that "Sierra Club's averments of habitat degradation in areas where its members

15

regularly recreate are prototypical environmental injuries and are thus acceptable for purposes of Article III." Id. at *5. Further, the court reasoned that it was "of [no] moment that Sierra Club members do not recreate on FMB land or the land removed from the FMB. It is enough to aver that the land Sierrans use is connected and adjacent to the land subject to development . . ." Id. at *6. As such, it concluded that "Sierra Club's claimed injury meets each of Article III's constitutional standing requirement." Id. at *6.

Here, MST has constitutional standing to bring its declaratory judgment action. Its land is connected to and adjacent to GMH's property; in fact, Weehaw is accessed by crossing the Hospital Easement Property. A plan to develop the Hospital has been set in motion, as evinced by its rezoning and, more recently, attempted second rezoning. The Amendment is part of this development plan. It purports to change the terms of the Conservation Easement that encumbers both MST's and GMH's land. Further, development of the latter invades MST's legally protected interest in how it uses and enjoys its property. These are concrete and particularized injuries caused to MST by the Amendment. They can be redressed by a declaration by this Court that the Amendment is invalid, which will restore the Conservation Easement. Accordingly, MST has constitutional standing and, therefore, is "otherwise authorized by law" to bring this action affecting the Conservation Easement and Amendment. The Motions to Dismiss must be denied, as a result.

## **Conclusion**

As set forth above, MST has standing for two independent reasons. First, Section 27-8-40(A)(1) permits MST to bring this action affecting the Conservation Easement and Amendment because it is an owner of an interest in the real property burdened by both. Second, Section 27-8-40(A)(4) permits MST to bring this action because it has constitutional standing and, therefore, is

otherwise authorized by law to do so. Accordingly, MST respectfully requests that this Court deny the Motions to Dismiss (ECF Entry Nos. 14 and 15) by Defendants GMH and NALT.

        s/ G. Trenholm Walker
**G. Trenholm Walker (Fed ID# 4487)**
Direct: (843) 727-2208
Email: Walker@WGLFIRM.com
**John P. Linton, Jr. (Fed ID# 11089)**
Direct: (843) 727-2252
Email: Linton@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct: (843) 727-2224
Email: Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
Mail: P.O. Drawer 22167, Charleston, SC 29413
Office: 66 Hasell Street, Charleston, SC 29401
Phone: (843) 727-2200

***ATTORNEYS FOR THE PLAINTIFF
MST, LLC***

July 5, 2022
Charleston, South Carolina