IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| MST, LLC, | ) | Civil Action No. 2:22-cv-874-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT GEORGETOWN** |
| | ) | **MEMORIAL HOSPITAL'S** |
| North American Land Trust and Georgetown | ) | **REPLY TO PLAINTIFF'S** |
| Memorial Hospital, | ) | **OPPOSITION** |
| | ) | |
| Defendants. | ) | |

Defendant Georgetown Memorial Hospital ("GMH"), submits this reply to Plaintiff's Opposition to GMH's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**ARGUMENT**

Plaintiff MST, LLC ("Plaintiff" or "MST") argues that it has standing to bring this action based on two provisions of the South Carolina Uniform Conservation Easement Act. First, MST contends that it is an owner of an interest in the real property burdened by the 1995 Conservation Easement and Declaration of Restriction Covenant ("Conservation Easement") and the 2008 Amendment thereto ("Amendment"). Second, Plaintiff argues it is "otherwise authorized by law" to bring this declaratory judgment action because it has standing pursuant to Article III of the United States Constitution. These arguments fail for the reasons stated herein.

## I. MST IS NOT AN OWNER OF AN INTEREST IN THE REAL PROPERTY BURDENED BY THE EASEMENT.

To convince this Court that it has standing, MST relies on an unpublished South Carolina state court order and the dissenting opinion in *Estate of Robbins v. Chebeague & Cumberland Land Trust*. Neither opinion is binding on this Court nor instructive as to the issues presented here.

### A. *Floyd v. Dross* is distinguishable from this case.

The state court order in *Floyd v. Dross* is both factually and legally distinct from this case.[1] There, the plaintiff—an easement holder—brought an action to enforce the terms of a conservation easement concerning the holder's right to access the property at issue. Benjamin Knott owned 371 acres in Berkeley County, South Carolina. No. 2019-CP-08-02334, 2020 WL 13304169, at *1 (S.C. Com. Pl. Sep. 11, 2020). Mr. Knott granted a conservation easement on this property which, among other things, gave the owner of the property "[t]he right to use roads for all activities permitted under this Easement." *Id.* at *3. Mr. Knott devised by will the property to his two daughters Betsy and Susan. *Id.* at *2. Betsy received the front half of the property bordering Cainhoy Road and Susan received the back half of the property, which bordered no roads. *Id.*

After Mr. Knott's death, Betsy maintained a locked gate at the only entrance to both hers and Susan's properties and claimed that Susan did not have a right to access Susan's half of property by using the interior roads that passed through Betsy's half of the property. *Id.* at *3-*4. Without access to the interior roads on Betsy's parcel, Susan could not access her parcel. Susan thus brought an action to enforce the conservation easement which permitted her to "use roads for all activities permitted under this Easement." *Id.* at *3. Upon Susan's motion for partial summary

---

[1] In addition to the below, *Floyd v. Dross* is under appeal and one of the bases for the appeal is the circuit court's construction of the Conservation Easement Act of 1991 as it relates to statutory standing. Initial Brief of Appellant at 25-27, *Floyd v. Dross*, No. 2020-001354 (S.C. Ct. App. Jan. 4, 2021)

2

judgment Betsy argued that Susan lacked standing to enforce the conservation easement. *Id.* at *4-*5. The circuit court ultimately granted Betsy's motion for partial summary judgment, but the court failed to provide any detailed analysis of the standing issue and the standing issue presented in *Floyd* is distinguished from the standing issue presented here. As such the circuit court's decision in *Floyd* is not instructive as to how this Court should rule on GMH's Motion to Dismiss.

*Floyd* is a right-to-access case dealing with two adjoining landowners, both of which have rights of access to each other's properties pursuant to the terms of the conservation easement itself. The Uniform Conservation Easement Act ("UCEA")—which was adopted by the South Carolina General Assembly when it passed the South Carolina Uniform Conservation Easement Act— expressly contemplates this scenario. A leading treatise on property law explains that the first category of plaintiffs in the UCEA[2] applies when there are multiple owners of interest in the real property burdened by the easement, upon which the enforcement issue has been raised. *See Estate of Robbins v. Land Trust*, 2017 ME 17, ¶ 19 n.6, 154 A.3d 1185, 1191 n.6 (2017) (quoting 4 Powell on Real Property § 34A.03[4] (2015) ("While an owner might be motivated to terminate or modify the restrictions, in most circumstances enforcement would be against the fee owner's interests. An exception might be the possibility of litigation between tenants in common if one disapproved of activities by another which violated the conservation easement. Similarly, there might be a dispute between the owner of the fee and a tenant, or between a life tenant and the holder of a remainder.")). The key for having standing is that both parties possess an interest in *the property where the enforcement issue has been raised*, and the enforcement issue relates to the interest possessed (i.e. the right of access).

---

[2] Those plaintiffs who are "owner[s] of an interest in real property burdened by the easement" pursuant to S.C. Code Ann. § 27-8-40(A)(1).

3

In *Floyd*, both Susan and Betsy possessed a right to access each other's parcels pursuant to the terms of the conservation easement. Susan owned her parcel outright but also had a right to use the roads on Betsy's parcel for activities permitted by the easement. 2020 WL 13304169, at *3. Similarly, Betsy owned her parcel outright but also had a right to use the roads on Susan's parcel for activities permitted by the easement. *Id.* Thus, Susan had an ownership interest in Betsy's property. The scenario present in Floyd is precisely the scenario that S.C. Code Ann. § 27-8-40(A)(1) permits standing to enforce a conservation easement. This case on the other hand is not a right-to-access case involving shared interests in the same parcel granted by the conservation easement. Unlike the conservation easement in *Floyd*, neither the Conservation Easement at issue in this case nor the Amendment grant MST an interest in GMH's property ("Hospital Property"). Because *Floyd* contemplates a different scenario that the UCEA confers standing for, MST's reliance on this state circuit court order is misplaced.

**B. The majority opinion in *Estate of Robbins v. Chebeague & Cumberland Land Trust* is persuasive and should be applied here.**

MST argues this Court should not consider *Estate of Robbins* because it is "readily distinguishable from this case, on both the facts and the law." (Plaintiff's Opp. at p. 10.) MST however misunderstands the issue presented in *Estate of Robbins* and the court's analysis of the same.

As MST asserts, in *Estate of Robbins*, "the estate, an owner of one of the tracts of land covered by a conservation easement, brought an action challenging the conservation entity grantee's interpretation of the terms of the conservation easement that would allow certain development on adjoining property, also encumbered by the conservation easement, that the estate did not want to proceed." (Plaintiff's Opp. at p. 10.) These facts are almost identical to this case. Here, MST, an owner of a tract of land covered by the Conservation Easement, brought an action

4

challenging the Amendment to the Conservation Easement that would allow certain development on adjoining property, also encumbered by the Conservation Easement, that MST does not want to proceed.

MST argues that *Estate of Robbins* is inapplicable because it was premised on the interpretation of the terms of a conservation easement as opposed to whether an amendment to a conservation easement is valid. But MST misunderstands the import of the distinction it has noted. The importance of *Estate of Robbins* lies in the fact that the Supreme Court of Maine analyzed the exact standing issue presented in this case—whether "a private owner of land encumbered by a conservation easement may bring a lawsuit seeking the enforcement of the easement on other land that is not owned by that landowner and *in which the landowner has no other legal interest*." *Estate of Robbins v. Land Trust*, 2017 ME 17, ¶ 1, 154 A.3d 1185, 1187 (2017) (emphasis added). The import of *Estate of Robbins* also lies in the fact that the statute interpreted by the Supreme Court of Maine is identical to the statute at issue here. *Compare* 33 M.R.S. § 478(1)(A) (2016) *with* S.C. Code Ann. § 27-8-40(A)(1) (both granting standing to "[a]n owner of an interest in the real property burdened by the easement"). In fact, the court in *Estate of Robbins* did not even reach the issue of interpreting the easement's terms because it found the plaintiff did not have standing to bring the claim. *Id.* at ¶ 35, 154 A.3d at 1195. It is equally of no significance that the challenged activity in *Estate of Robbins* was to occur entirely on the neighbor's property, whereas here the Amendment changed the terms of the Conservation Easement on MST's property as well. Again, the import of *Estate of Robbins* is the court's analysis of a standing provision identical to the standing provision before this Court, and the conclusion that a neighboring land-owner lacks standing to enforce a conservation easement on property in which the landowner has no legal interest.

i. *Plaintiff's argument that Estate of Robbins should not control because the legislative intent of Maine's Uniform Conservation Easement Act differs from the South Carolina Conservation Easement Act is without merit.*

Plaintiff notes that the Supreme Court of Maine's interpretation of 33 M.R.S. § 478(1)(A) was based on the state legislature's intention to prevent "a broader group of private citizens to have standing to enforce conservation easements upon land they did not own." (Plaintiff's Opp. at p. 12 (citing *Estate of Robbins*, 2017 ME at ¶ 28, 154 A.3d at 1193).) This intention, however, was found to apply only to 33 M.R.S. § 478(1)(D) which granted the Attorney General standing to enforce a conservation easement in limited circumstances. *Estate of Robbins*, 2017 ME at ¶ 28, 154 A.3d at 1193. Regarding § 478(1)(A), the court had already determined that "to the extent that an owner of an interest in the real property burdened by the easement was authorized to bring suit by the uniform act that Maine's Legislature adopted, such authorization was for the purpose of allowing the landowner to sue in cases where the easements also impose duties upon holders and these duties are breached by the holders." *Id.* at ¶ 21, 154 A.3d at 1191-92. The language cited by MST was specific only to § 478(1)(D) and therefore has no bearing on the standing analysis conducted under § 478(1)(A), which is identical to § 27-8-40(A)(1) in the South Carolina Uniform Conservation Easement Act.

ii. *MST's argument that this Court should follow the dissenting opinion in Estate of Robbins is also without merit.*

MST also argues that the dissenting opinion in *Estate of Robbins* is well-reasoned and should be applied here.[3] The dissent disagrees with the majority and stated that § 478(1)(A) is not ambiguous but that the specific reference to "the real property burdened by the easement refers back to *all* of *the* real property so burdened, not just the property that may be used in violation of

---

[3] Contrary to this argument MST previously asserted that *Estate of Robbins* "is readily distinguishable from this case, on both the facts and the law." (Plaintiff's Opp. at p. 10.)

6

the easement." *Estate of Robbins*, 2017 ME at ¶ 47, 154 A.3d at 1197 (Alexander and Jabar, J., dissenting). The dissent is not persuasive. A statute is ambiguous if its language, when read in context, is susceptible to more than one reasonable interpretation. *Newport News Shipbuilding and Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004).

As noted by the majority in *Estate of Robbins*, and by at least one other court in Maine, the language in § 478(1)(A) could be read to permit two different classes of plaintiffs to bring an action to enforce a conservation easement: (1) "an owner of any property that is subject to the conservation easement," or (2) "the owner of the particular property where the violation is alleged." *Woodworth v. Chebeague & Cumberland Land Trust, Inc.*, 2015 WL 3525089, at *2 (Sup. Ct. Maine May 5, 2015). The first reading is exactly what MST argues for. While GMH argues that this is the incorrect interpretation of the statute, it certainly is a possible reading of it, and MST would not disagree.

The second reading is also a possible (and correct) reading of the statute. The dissent argues that this reading is "truly absurd or illogical" because it would hold that only the "developer of land violating the easement, or the holder of the easement who supports the development, have standing to challenge the resulting violation of the easement," but this is not accurate. *Estate of Robbins*, 2017 ME at ¶ 52, 154 A.3d at 1198 (Alexander and Jabar, J., dissenting). The dissent's view overlooks "the possibility of litigation between tenants in common if one disapproved of activities by another which violated the conservation easement. Similarly there might be a dispute between the owner of the fee and a tenant, or between a life tenant and the holder of a remainder." *Id.* at ¶ 19 n.6, 154 A.3d at 1191 n.6. Thus, while the statute is susceptible to multiple readings, this Court should "find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that

7

Congress manifested," as the Supreme Court of Maine did. *Newport News Shipbuilding and Dry Dock Co.*, 376 F.3d at 248.

        *iii.*    *MST's argument that the holding of Estate of Robbins conveys standing on MST is incorrect.*

In addition, MST argues that even following *Estate of Robbins*, § 27-8-40(A)(1) confers standing on MST because the "court interpreted the phrase 'the real property burdened by the easement' to mean 'an owner of the real property, burdened by the easement, upon which an enforcement issue has arisen.'" (Plaintiff's Opp. at p. 14 (citing *Estate of Robbins*, 2017 ME at ¶¶ 19, 48, 154 A.3d at 1191, 1197-98).) MST goes on to argue that "while enforcement is not the issue, the validity of the Amendment to the Conservation Easement is and "because the validity of the Amendment directly affects [MST's]property as well," the statute confers standing. (Plaintiff's Opp. at p. 14.) But this is a gross misstatement of *Estate of Robbins*' holding. The Supreme Court of Maine held that 33 M.R.S. § 478(1)(A) exists for the "purpose of allowing the landowner to sue in cases where the easements also impose duties upon holders and these duties are breached by the holders." *Estate of Robbins*, 2017 ME at ¶ 21, 154 A.3d at 1191-92. This holding forecloses MST from bringing this lawsuit. Additionally, the validity of the Amendment is irrelevant to the issue of standing for enforcing a conservation easement on the Hospital Property because MST has never had an interest in the Hospital Property through the Conservation Easement. MST does have standing to enforce the Conservation Easement on its own property, it does not have standing to enforce the Conservation Easement on the Hospital Property.

## II.    MST IS NOT A PERSON OTHERWISE AUTHORIZED BY LAW TO ENFORCE THE CONSERVATION EASEMENT.

MST argues it also fits into the fourth and final category of persons or entities that have standing to bring an action affecting a conservation easement under the UCEA as "a person otherwise authorized by law" because it has constitutional standing under Article III. (Plaintiff's Opp. at p. 14 (citing S.C. Code Ann. § 27-8-40(A)(4).) Section 27-8-40(A)(4) does not confer standing to enforce conservation easements on all individuals who have Article III standing, and even if it did, MST would not have standing to assert its claims.

### A. S.C. Code Ann. § 27-8-40(A)(4) does not include all persons who have Article III Standing.

The Drafting Committee of the UCEA explicitly notes that (A)(4) "recognizes that the *state's* other applicable law may create standing in other persons." Unif. Conservation Easement Act § 3(a) cmt., 12 U.L.A. at 185 (2008) (emphasis added). This permits a state to enact statutes to expand the class of individuals who may bring an action to enforce a conservation easement. It does not mean, as MST suggests, that the South Carolina General Assembly intended for § 27-8-40(A)(4) to create a "broad catch-all category" for those who may sue under the statue. (Plaintiff's Opp. at p. 12.) And it does not mean that if a plaintiff has Article III standing, he or she automatically has statutory standing pursuant to § 27-8-40(A)(4). Article III standing and statutory standing are separate concepts that must *both* be satisfied where there exists a statute that provides standing provisions for the relevant cause of action. *See In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008); *Freemantle v. Preston*, 398 S.C. 186, 194, 728 S.E.2d 40, 44 (2012) ("The traditional concepts of constitutional standing are inapplicable when standing is conferred by statute.").

A plaintiff must always satisfy Article III standing in order to bring a cause of action. *See In re Mut. Funds Inv. Litig.*, 529 F.3d at 216 ("Article III standing is a fundamental, jurisdictional requirement that defines and limits a court's power to resolve cases or controversies."). Statutory

standing provisions thus exist to further *limit* the "class of litigants that may, as a matter of law, appropriately invoke the power of the court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 119 n.6 (1998). Given these foundational principles of standing, it defies logic that the General Assembly would enact a statutory standing provision that "limits" the class of plaintiffs who can bring a claim under the statute to individuals who have Article III standing. If it did, the statutory standing provision would not impact who could bring these claims because it has simply incorporated the already existing and separate Article III standing requirement to bring any action. What makes much more sense, is that § 27-8-40(A)(4) allows the General Assembly to enact additional statutes that expressly convey standing to additional classes of individuals beyond those enumerated in § 27-8-40(A)(1)-(3). Any other reading of § 27-8-40(A)(4)—including MST's interpretation that it creates a broad "catch-all" category of persons having standing—would open up the floodgates of conservation easement litigation and allow any neighboring landowner (without any interest in the property on which enforcement is sought) to bring an action against the owner of eased property and the land trust to enforce the terms of a conservation easement. That cannot be what was intended and is not how this Court should interpret § 27-8-40(A)(4).

Finally, MST's reliance on *Floyd*'s two sentence conclusion that § 27-8-40(A)(4) confers standing on those who have constitutional standing is similarly unpersuasive because the conclusion fails to provide any reasoning or analysis. (Plaintiff's Opp. at p. 14 (citing *Floyd*, 2020 WL 13304169 at *5).) Therefore, based on the foregoing, § 27-8-40(A)(4) does not confer *statutory* standing on all those who have *constitutional* standing.

### B. MST lacks Article III constitutional standing to bring this lawsuit because it has not suffered an injury in fact.

Even if § 27-8-40(A)(4) confers statutory standing to those that have Article III standing—which it does not—MST would still lack standing to bring this lawsuit. "To establish Article III

standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct and (3) that is likely to be redressed by a favorable judicial decision." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Here, MST has not "suffered an injury in fact."

On December 19, 2008, the Youngs and North American Land Trust amended the Conservation Easement to release 56.75 acres of upland property from the restrictions contained in the Conservation Easement. (*See* Compl., Ex. 3, at p. 2; Compl., Ex. 1, at p. 5.) On December 30, 2008, GMH purchased 65 acres of upland property from the Youngs, 56.75 acres of which were released from the Conservation Easement as a result of the Amendment. (*Id.* at ¶ 18-19.) The Amendment was recorded with the Georgetown County Register of Deeds the same day that GMH purchased the property. (Compl., Ex. 3.) The Amendment made clear that at the time GMH purchased the Hospital Property, it "need[ed] to relocate its Georgetown Memorial Hospital campus due to the inability to expand in its current location due to geographic restraints," and that GMH intended to build a new hospital campus on the Hospital Property. (*Id.*, at p. 3.)

Nearly two years after the Conservation Easement was amended, MST purchased approximately 687.20 acres of Weehaw Plantation from the Youngs for $3,400,000 as evidenced by the deed recorded June 21, 2010 in the Georgetown County Register of Deeds Book 1497 at Page 342, attached hereto as **Exhibit A**.[4] The deed shows that Weehaw was conveyed to MST *subject to the Conservation Easement and the Amendment*.

---

[4] A court may consider official public records when ruling on a motion to dismiss. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). When a plaintiff fails to introduce pertinent document as part of a complaint, the defendant may attach document to its motion to dismiss and the court may consider same without converting motion to one for summary judgment. *Gray v. Zirfas*, 2016 WL 7974109, at *2 (D.S.C. Nov. 22, 2016), *report and recommendation adopted*, 2017 WL 345137 (D.S.C. Jan. 24, 2017).

11

> THIS CONVEYANCE IS MADE SUBJECT TO all matters as shown on "Plat of 687.2 Acres, the Remaining Portion of Weehaw Plantation on Black River, Surveyed for MST, LLC, a Nevada Limited Liability Company", dated May 20, 2010, prepared by Powers Land Surveying and recorded on June 21, 2010 on Slide 714 at page 10; to the Conservation Easement and Declaration of Restrictive Covenants made December 29, 1995 between Larry Young and Judy Young and North American Land Trust recorded on December 29, 1995 in Deed Book 669 at page 300; to the Amendment to Conservation Easement and
>
> Declaration of Restrictive Covenants between Kyle N. Young and Jacqueline M. Young and the North American Land Trust dated December 19, 2008 and recorded on December 30, 2008 in Record Book 1122 at page 80; and to all covenants, conditions, restrictions and easements as may be applicable as recorded in the public records of Georgetown County.

(Ex. A at 1-2. (emphasis added).)

MST claims to satisfy the injury in fact requirement because the development of GMH's land "invades MST's legally protected interest in how it uses and enjoys its property." (Plaintiff's Opp. at p. 16.) MST takes no care to detail this amorphous legalese. Regardless, the development of GMH's land does not infringe on or otherwise deprive MST of any property right that was conveyed to it by the Youngs. The Amendment, executed by the Youngs and NALT, was a publicly recorded document referenced in MST's own deed and stated that 56.75 acres of the Hospital Property were removed from the Conservation Easement and that there was a plan to develop that property. MST now—more than 12 years after purchasing Weehaw—seeks to unilaterally expand on the property rights conveyed to it by the Youngs. MST's desire to acquire greater property rights than what were conveyed to it does not satisfy the injury in fact requirement for Article III standing. In fact, MST has not been injured at all. It still retains every property right it received when it purchased Weehaw for $3,400,000 in 2010 subject to the terms of the Conservation Easement and Amendment.

Because MST's property rights in Weehaw have not been impaired by or infringed on by Defendants, MST has suffered no injury in fact and lacks Article III standing to bring this claim.

## **CONCLUSION**

For the reasons stated above, MST does not have standing to bring its lawsuit which seeks to declare the Amendment invalid and enforce the restrictions of the Conservation Easement on the Hospital Property. As such, GMH requests the Court dismiss MST's lawsuit in its entirety, that GMH be awarded its expenses incurred in connection with this action, including its reasonable attorneys' fees, and for such other relief as this Court deems proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/*Wesley T. Moran*
Wesley T. Moran
Federal Bar No. 12797
E-Mail: wes.moran@nelsonmullins.com
3751 Robert M. Grissom Parkway / Suite 300
Post Office Box 3939 (29578-3939)
Myrtle Beach, SC 29577-6412
(843) 448-3500

***Attorney for Defendant Georgetown Memorial Hospital***

Myrtle Beach, South Carolina
July 19, 2022