**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MST, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:22-cv-00874-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| NORTH AMERICAN LAND TRUST and | ) | |
| GEORGETOWN MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on defendant Georgetown Memorial Hospital's (the "Hospital") motion to dismiss, ECF No. 14, and defendant North American Land Trust's ("NALT") (collectively, "defendants") motion to dismiss, ECF No. 15. For the reasons set forth below, the court denies the motions to dismiss.

## I.  BACKGROUND

Plaintiff MST, LLC ("MST") brought this action for a declaratory judgment against Hospital and NALT regarding property in Georgetown County, South Carolina known as Weehaw Plantation ("Weehaw"). ECF No. 1, Compl. ¶¶ 6–7.

MST purchased Weehaw from Kyle N. Young and Jaqueline M. Young on June 16, 2010. Compl. ¶ 6. Fifteen years earlier, on December 29, 1995, the prior owners of Weehaw, Larry and Judy Young (the "Youngs"), granted NALT a Conservation Easement and Declaration of Restrictive Covenants (the "Conversation Easement"). Id. ¶ 7. The Conservation Easement perpetually encumbers Weehaw, as well as approximately 56.75 acres currently owned by the Hospital (the "Hospital Easement Property") that was subdivided from Weehaw prior to MST's ownership. Id. ¶ 8. The

1

Conservation Easement recites the environmental, conservation, and open space values of the encumbered property, and includes its important role as an ecologically stable habitat for flora and fauna, as well as for the endangered Red-cockaded Woodpeckers.  Id. ¶¶ 10–12.  The owners of the property recognized it as a valid easement—the Youngs claimed a qualified conservation contribution on their state and federal tax return, which reduced their taxable income and hence their income taxes, on the basis that the Conservation Easement met the requirements of state and federal law, including 26 C.F.R. § 1.1170A–14, Treas. Reg. § 1.170A-14.  Id. ¶ 16.

Years later, the Youngs and NALT attempted to release the Hospital Easement Property from the Conservation Easement by an amendment dated December 19, 2008.  Id. ¶ 17.  Defendants assert this release was in exchange for further encumbering approximately thirty-five acres of waterfront property in Weehaw and giving up the right to develop five homesites, which were originally permitted to be constructed under the Conservation Easement.  ECF No. 14 at 3.  Shortly before that amendment, Georgetown County zoned the hospital's property (the "Hospital Tract"), including the Hospital Easement Property, as a planned development district that permits only hospital and medical related uses.  Compl. ¶ 20.  In Spring 2021, the Hospital sought to amend the zoning of the planned development district to allow a large multifamily affordable housing project on part of the Hospital Tract, including a portion of the Hospital Easement Property.  Id. ¶ 21.  MST asserts that the Hospital no longer intends to develop the Hospital Tract for hospital or medical offices; instead, it entered a purchase and sale agreement with a multifamily development company, FourSix Development, to sell it sixteen acres of the Hospital Tract, including a portion of the Hospital Easement

2

Property.  Id. ¶ 23.  MST and neighboring properties opposed the rezoning and on May 25, 2021, at the third public reading of the zoning amendment, the amendment failed to pass.  ECF No. 14 at 4.  As a result, the Hospital's contract to sell the hospital property for affordable housing fell through.  Id. at 5.

On March 16, 2022, MST filed this complaint seeking a declaratory judgment to establish that the Conservation Easement, once granted, encumbers the property in perpetuity as a matter of law.  Compl.  On June 6, 2022, Hospital filed its motion to dismiss for failure to state a claim, ECF No. 14, and on that same date NALT filed its motion to dismiss for failure to state a claim, ECF No. 15.  MST filed its response in opposition to both motions on July 5, 2022.  ECF No. 19.  On July 19, 2022, the Hospital replied, ECF No. 23, as did NALT, ECF No. 24.  The court held a hearing on the motions on October 25, 2022.  ECF No. 28.  As such, the motions are fully briefed and are now ripe for review.

## II.  STANDARD

### A.  Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) [ ] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.  DISCUSSION

The Hospital moves this court to dismiss MST's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that MST lacks standing to pursue its claim. ECF No. 14. NALT joins the Hospital in moving the court to dismiss MST's claim pursuant to Rule 12(b)(6) for lack of standing. ECF No. 15. The court examines the relevant justiciability doctrines, including standing, in turn.

#### A.  Prohibition Against Advisory Opinions

At the outset, the court must determine whether the pleadings state a cause of action entitling the parties to a declaratory judgment. The parties cannot by consent or agreement confer jurisdiction on the court to render a declaratory judgment in the absence of an actual justiciable controversy.

Article III of the Constitution established the judicial branch to peacefully resolve "Cases" and "Controversies," simultaneously endowing the judiciary with the authority

4

to resolve disputes and limiting the exercise of that power to the nebulous concept of "cases and controversies." U.S. Const. Art. III, § 2. Resolving to encompass the entire concept of federal jurisdiction with those two words, the authors of Article III left the Supreme Court to determine the types of disputes which "are of the justiciable sort," Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992), i.e., "appropriately resolved through the judicial process," Whitmore v. Arkansas, 495 U.S. 149, 155 (1990).

The Supreme Court has defined the contours of the cases-and-controversies requirement through several "justiciability doctrines." Justiciability requires that there be a live controversy throughout the entirety of litigation. Am. Fed'n of Gov't Emps. v. Off. of Special Couns., 1 F.4th 180, 187 (4th Cir. 2021). Such doctrines ensure that federal courts hear only true "cases and controversies" by precluding consideration of those matters that are not ripe, see, e.g., Abbott Labs. v. Gardner, 387 U.S. 136 (1967), are moot, see, e.g., Already, LLC v. Nike, Inc., 568 U.S. 85 (2013), ask political questions, see, e.g., Nixon v. United States, 506 U.S. 224 (1993), or seek advisory opinions, see, e.g., Golden v. Zwickler, 394 U.S. 103 (1969). Additionally, a justiciable dispute must be brought by a party with standing, which the Supreme Court has deemed "an essential and unchanging part of the case-or-controversy requirement." Lujan, 504 U.S. at 560. The concepts of justiciability are fluid and inform the constitutional "cases and controversies" definition by providing examples of the types of disputes that are not justiciable.

The Declaratory Judgment Act permits a court to "declare the rights and other legal relations of" interested parties "in a case of actual controversy." 28 U.S.C. § 2201. A court may not entertain a declaratory judgment claim in the absence of an underlying

case or controversy.  See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–40 (1937) ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy' . . . is operative only in respect to controversies which are such in the constitutional sense.").  As such, an action for declaratory judgment does not escape the constitutional mandate that its proponent has standing and that it does not seek an advisory opinion.  See Trustgard Ins. Co. v. Collins, 942 F.3d 195, 199 (4th Cir. 2019) (finding that the court must address issues of Article III justiciability before considering the merits of a declaratory judgment action).

Courts have long grappled with the distinction between a valid declaratory judgment claim and request for an advisory opinion that fails to present a case or controversy.  The Supreme Court has said that its own jurisprudence "do[es] not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  "To qualify [as a dispute that presents a case or controversy under Article III], it must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Auto-Owners Ins. Co. v. Madison at Park W. Prop. Owners Ass'n, Inc., 495 F. App'x 383, 388 (4th Cir. 2012) (quoting Aetna, 300 U.S. at 239–40) (internal quotation marks omitted).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127.

In this action, MST seeks a declaratory judgment to determine whether the amendment to the Conservation Easement is valid or null and void. Compl. ¶¶ 31–39. This action arose after defendants sought an amendment to the zoning of the Hospital Tract to allow multifamily development on that property—an amendment that failed to pass as a result of a tie vote. Id. ¶¶ 27–29. It is unclear if the injury has already occurred, because MST asserts "all or a portion of the Hospital Easement Property is at risk of being sold to a third party for uses that violate the terms and conditions of the Conservation Easement and would defeat the conservation purposes stated in the Conservation Easement." Id. ¶ 30. Based on that assertion, it appears that the harm has not yet occurred but is imminent upon the passing of amended zoning. But, MST argues that "[t]he commercial uses that are allowed under the existing Hospital Weehaw PD are contrary to the terms and conditions of the Conservation Easement." Id. ¶ 29. Therefore, MST objects to the original amendment and rezoning that permits hospital and related medical uses. Given that basis, the court determines that the harms are ongoing and the case or controversy is live, and therefore ripe for review.[1]

## B. Mootness

Before the court can delve into which parties do or do not have standing, the court first must examine the state of the easement. In essence, if the amendment were a valid modification of the easement, then the Hospital Property is not subject to the

---

[1] Neither party addressed ripeness in their briefs. The court asked the parties for their arguments about ripeness at the hearing. ECF No. 28. Defendants asserted that the matter is ripe because the controversy has clouded the title. MST asserted that the matter is ripe because there is a distinct assertion of conflicting interpretations of the amendment to the Conservation Easement, which gives ripeness under the South Carolina Declaratory Judgement Action § 15-53-30.

Conservation Easement and this suit is moot. But, if the amendment was invalid, or possibly invalid, then in deciding the motion, the court must determine whether MST is a successor in interest of the grantor and able to use that interest to have standing to bring this suit against NALT and the Hospital.

As a substantive matter, "the existence of an easement is a question of fact in a law action, [whereas] the determination of the extent of an easement is an equitable matter." Plott v. Justin Enters., 649 S.E.2d 92, 95 (S.C. Ct. App. 2007); see also Tupper v. Dorchester Cnty., 487 S.E.2d 187, 190 (S.C. 1997); Rhett v. Gray, 736 S.E.2d 873, 879 (S.C. Ct. App. 2012). "The language of an easement determines its extent . . . [, and the court] must construe unambiguous language in the grant of an easement according to the terms the parties have used." Plott, 649 S.E.2d at 96–97; S.C. Pub. Serv. Auth. v. Ocean Forest, Inc., 273 S.E.2d 773, 774 (S.C. 1981) ("Clear and unambiguous language in grants of easement must be construed according to terms which parties have used, taken, and understood in plain, ordinary, and popular sense.").

Here, the South Carolina Uniform Conservation Easement Act (the "South Carolina UCEA"), S.C. Code Ann. § 27-8-10 et seq., provides that "a conservation easement is unlimited in duration unless the instrument creating it provides otherwise." S.C. Code Ann. § 27-8-30(C). Therefore, if the easement runs in perpetuity, then any subsequent amendment is invalid. The South Carolina UCEA also explains that the recommended law "leaves intact the existing case and statute law of adopting states as it relates to the modification and termination of easements." Unif. Conservation Easement Act ("UCEA") § 3(a) cmt., 12 U.L.A. at 185 (2008). As such, to determine whether the

2008 amendment is valid, the court turns first to federal tax law and then to South Carolina law governing easement modifications.

The Internal Revenue Service ("IRS") sets forth federal tax incentives for property owners who grant conservation easements. To take advantage of the federal tax treatment of "conservation easements" a landowner must comply with two conditions of the Internal Revenue Code, 26 U.S.C. § 170. First, the easement must impose "a restriction (granted in perpetuity) on the use which made be made of the real property." 26 C.F.R. § 1.170A–1(h)(2)(C), Treas. Reg. § 1.170A–1(h)(2)(C). Second, the grant must ensure that the easement's "conservation purposes" are "protected in perpetuity." Id. § 170(h)(5)(A). For this amendment to be valid, and for the Youngs to not have run afoul of federal tax law, the court must determine whether amendments to Conservation Easements are allowed under that federal law.

The prior owners of Weehaw, the Youngs, created the easement in 1995 and demonstrated their intent to have created an easement by filing for a qualified conservation contribution on their state and federal tax returns. Compl. ¶¶ 7, 16. The provision outlining terms of qualification for the IRS's conservation easement does not in itself preclude amendments—the Eleventh Circuit held as much in 2020. See Pine Mountain Preserve, LLLP v. Comm'r of Internal Revenue, 978 F.3d 1200, 1202 (11th Cir. 2020) ("[T]he existence of an amendment clause in an easement does not violate § 170(h)(5)(A)'s protected-in-perpetuity requirement . . . ."). Neither the Supreme Court nor the Fourth Circuit has ruled on this particular interpretation—but, the court is persuaded by Pine Mountain Reserve's reasoning and accepts that amendments of

conservation easements may be valid under federal law without disqualifying that easement from the federal tax regime.

Moreover, South Carolina courts have held that a grantor who grants a covenant may reserve to himself, in his sole discretion, the right to amend restrictive covenants running with the land or impose new restrictive covenants with the land, provided five conditions are met:

> (1) the right to amend the covenants or impose new covenants must be unambiguously set forth in the original declaration of covenants; (2) the [grantor], at the time of the amended or new covenants, must possess a sufficient property interest in the development; (3) the [grantor] must strictly comply with the amendment procedure as set forth in the declaration of covenants; (4) the [grantor] must provide notice of amended or new covenants in strict accordance with the declaration of covenants and as otherwise may be provided by law; and (5) the amended or new covenants must not be unreasonable, indefinite, or contravene public policy.

Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp., 628 S.E.2d 902, 907 (S.C. Ct. App. 2006); see also Snow v. Smith, 784 S.E.2d 242, 251–52 (S.C. Ct. App. 2016) (applying the factors of Queen's Grant to determine whether the amendment to the easement was valid). Therefore, for an amendment to the Conservation Easement to be valid, the Youngs and NALT must have complied with the framework of Queen's Grant.

Thus, for the court to make its determination about the validity of the amendment under federal and state law, it now turns to the language of the conveyance itself. The covenant expressly sets out that the gift is made "absolute and unconditional" and "assigns forever, a perpetual easement in gross." ECF No. 1-1 at 2. But the covenant expressly reserved the right to amend the agreement:

> Grantor and Grantee recognize that circumstances could arise which this end, Grantee and Grantor shall mutually have the right, in their sole discretion, to agree to amendments to this Declaration which are not

10

> inconsistent with the basic purpose of the Declaration as stated in this document, provided, however, that Grantee shall have no right or power to agree to any amendments hereto that would result in this Declaration and Declaration failing to qualify as a valid conservation easement under the Act, as the same may be hereafter amended, or Section 170(h) of the Code as hereafter amended.

Id. at 9–10.  Consequently, the parties to the agreement had the right to amend the easement, provided that the amendment is "not inconsistent with the basic purpose of the [easement]."  See id.; see also Pine Mountain Preserve, 978 F.3d at 1209–10 (holding on identical language that Pine Mountain and NALT as contracting parties can always amend their agreements after the fact).  Therefore, provided the amendment is "not inconsistent with the basic purpose of the [easement]," the amendment is valid and it is possible the case is moot.  If MST is a successor in interest to the grantor, it could bring this action to challenge if the amendment was consistent with the Conservation Easement—which is what MST seeks to do in the present case.  The court now examines whether MST has standing to do so.

### C.  Standing

Defendants argue that MST lacks constitutional standing because there is no injury-in-fact, and lacks statutory standing because MST is not among the class of plaintiffs the statute was meant to protect.  ECF Nos. 14, 23.  MST disagrees on both counts.  The court examines each argument in turn.

#### 1.  Constitutional Standing

"[T]he irreducible constitutional minimum of standing contains three elements."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  First, a plaintiff must demonstrate an "injury-in-fact", which is a "concrete and particularized . . . invasion of a legally protected interest."  Id.  Second, "there must be a causal connection between the injury

and the conduct complained of," meaning that the injury must be "fairly ... trace[able] to the challenged action of the defendant." Id.  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id.

Importantly, the overriding motion-to-dismiss standard applies to the inquiry of standing, meaning that "a suit will not be dismissed for lack of standing if there are sufficient 'allegations of fact'—not proof—in the complaint or supporting affidavits." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 65 (1987).  In other words, plausible, good-faith allegations that, if true, would satisfy the standing requirements, sufficiently demonstrate standing and preclude dismissal (or, consequently, judgment on the pleadings).  See id.; see also Iqbal, 556 U.S. at 678.

Injury-in-fact is a "concrete and particularized . . . invasion of a legally protected interest." Lujan, 504 U.S. at 560.  That injury must be (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000) (quoting Lujan, 504 U.S. at 560–61).  For an injury to be particularized, it must affect the plaintiff in a personal and individual way.  Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, 504 U.S. at 560 n.1).

Here, MST has alleged that its ownership of Weehaw is encumbered by the Conservation Easement.  Compl. ¶ 6.  The Conservation Easement is also attached to nearby land owned by the Hospital, i.e., the Hospital Easement Property.  Id. ¶ 8. Weehaw and the Hospital Easement Property are contiguous properties.  Id. ¶ 9.  The Conservation Easement is ecologically significant, and its conservation provides a benefit to the general public—including direct benefits to the endangered Red-cockaded

Woodpecker.  Id. ¶¶ 10–12.  MST cites and describes a related case where the Sierra

Club was able to demonstrate injury-in-fact by averring that eight Sierra Club members

lived in close proximity to the land to be developed on land abutting the proposed

development, and their enjoyment of that land would be injured by the development's

destruction of the rural quality of the land.  ECF No. 19 at 15–16 (citing Sierra Club, Inc.

v. St. Johns River Water Mgmt. Dist., 2015 WL 6814566, at *2 (M.D. Fla. Nov. 6,

2015)).  Though MST does not explicitly say as much, the court can clearly draw the

comparison that MST could suffer a concrete and particularized injury from the

development of the adjacent land.[2]

Further, the plan to develop the Hospital's land has been set in motion "as evinced

by its rezoning and, more recently, attempted second rezoning."  ECF No. 19 at 16.  As

the court confirmed in its ripeness determination, MST takes issue with the initial

rezoning for hospital and medical related uses, in addition to the attempted rezoning for

multifamily use, and its continuing concern with those plans demonstrates that the harm

is ongoing.  Compl. ¶ 29.  Thus, MST has satisfied the requirement that the harm is actual

or imminent.  See Laidlaw, 528 U.S. at 180–81.

"[T]here must be a causal connection between the injury and the conduct

complained of," meaning that the injury must be "fairly . . . trace[able] to the challenged

action of the defendant."  Lujan, 504 U.S. at 560.  Given that the amendment of the

Conservation Easement is the only reason that any development of the Hospital Easement

---

[2] At the hearing, MST alleged that the amendment to the Conservation Easement
has directly affected its property by eliminating its right to develop five homesites from
MST's property.  This argument is not included in the briefs, but the court notes that, if
true, MST can show a measurable injury from the alleged violation.

Property would be allowed to go forward, and this action challenges the validity of that amendment, the causation prong is clearly established.

"[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560. The court finds that the injury from the Hospital developing the adjacent parcel of land may be redressed by a favorable court decision. If the court finds that the Conservation Easement is still attached to the Hospital Tract, then the contested development and related harms would be avoided.

Thus, since MST can show injury-in-fact that is caused by the conduct complained of, which would be redressable by a favorable decision, the court finds that MST can show constitutional standing.

## 2. Statutory Standing

Defendants' next standing argument asks the court to consider statutory construction. The "concept [of statutory standing is] distinct from Article III and prudential standing. And typically, a dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (internal quotation marks omitted). First, a statutory cause of action extends only to plaintiffs whose interests "fall within the zone of interests protected by the law invoked." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129 (2014) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Second, a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute—put differently, the proximate-cause

14

requirement generally bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct.  Id. at 132–33.

### a. Zone of Interests

First, the court examines whether MST falls within the statute's "zone of interests."  See Lexmark, 572 U.S. at 129.  To determine if a plaintiff is within the "zone of interests," the court looks to the statute itself.  Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 656 (4th Cir. 2019).  Applying this test requires nothing more than "traditional principles of statutory interpretation."  Id.

Defendants argue that "the real purpose of MST's suit is to thwart the potential development of [the Hospital's] property and prevent the property from being used in a manner that MST and other neighboring landowners perceive will lower their own property values."  ECF No. 14 at 1–2.  Defendants assert that MST does not own the property at issue—the Hospital does—nor does MST "fit any other category of persons that have standing to enforce a conservation easement under Section 40(A) of the South Carolina Conservation Easement Act."  Id. at 2.  Accordingly, defendants argue that MST lacks standing to bring this declaratory action.  Id. at 7–14.  Specifically, the South Carolina UCEA expressly limits who may bring "[a]n action affecting a conservation easement" to the following:

> (1) an owner of an interest in the real property burdened by the easement;
> (2) a holder of the easement;
> (3) a person having a third-party right of enforcement; or
> (4) a person otherwise authorized by law.

S.C. Code Ann. § 27-8-40(A).  Defendants argue that MST does not fall under any of the four explicitly enumerated categories and thereby lacks standing to pursue this action. ECF No. 14 at 7.

15

In its response in opposition, MST begins by emphasizing its interest as a conservation-minded owner and lambasts defendants for concocting unsubstantiated assertions regarding MST's motives for bringing the case. ECF No. 19 at 2. Further, MST argues that it has standing for two independent reasons: (1) § 27-8-40(A)(1) ("(A)(1)") permits MST to bring this action affecting the Conservation Easement and amendment because it is an owner of an interest in the real property burdened by both; and (2) § 27-8-40(A)(4) ("(A)(4)") permits MST to bring this action because it has constitutional standing and, therefore, is "otherwise authorized by law to do so." Id. at 16–17.

In their reply to MST's response, defendants disagree with MST's legal arguments and statutory interpretation. ECF No. 23. First, defendants argue that MST is not an owner of an interest in the real property burdened by the easement. Id. at 2–9. Second, defendants argue that constitutional standing does not confer "authorization by law" to enforce the conservation easement. Id. at 8–10. But, even if it did, defendants argue that MST lacks Article III constitutional standing because it has not suffered an injury in fact. Id. at 10–12.

The crux of the debate comes down to the interpretation of the South Carolina UCEA and whether MST can correctly assert that the statute confers standing for this case. According to the parties' briefs, there is no controlling law—only contradictory but persuasive caselaw. Compare Est. of Robbins v. Chebeague & Cumberland Land Tr., 154 A.3d 1185, 1188 (Me. 2017) (holding that the identical statutory language of Maine's UCEA does not include owners of other unrelated property that happen to be burdened by the same easement), with Floyd v. Dross, 2020 WL 13304169 (S.C. Ct. Com. Pl. Sept.

11, 2020) (holding that the plaintiff had standing to sue even though she did not own the contested parcel because she owned half of the conservation easement property and was a successor in title to the grantor).

South Carolina adopted the UCEA pursuant to recommendations of the National Conference of Commissioners on Uniform State Laws.  UCEA § 3(a) cmt., 12 U.L.A. at 185 (2008).  Here, South Carolina's version of the relevant provision states that an action affecting a conservation easement may be brought by:

> (1) an owner of an interest in the real property burdened by the easement;
> (2) a holder of the easement;
> (3) a person having a third-party right of enforcement; or
> (4) a person otherwise authorized by law.

S.C. Code Ann. § 27-8-40(A).  This language has prompted controversies across the states who have adopted the UCEA with regards to who exactly has standing under this statute.  See Federico Cheever & Nancy A. McLaughlin, An Introduction to Conservation Easements in the United States: A Simple Concept and a Complicated Mosaic of Law, 1 J. of L., Prop., & Soc'y 107, 149–66 (2015).  In general, cases brought under each state's UCEA have been brought by the government or nonprofit holder of the easement against a person violating or threatening to violate the conservation easement.  See id. at 151–52. Alternatively, actions are brought against the government or nonprofit holder of a conservation easement when the holder fails to enforce the easement, or agrees with the landowner to improperly transfer, modify, or release or otherwise terminate the easement. Id.  To date, neighbors and other members of the general public separate from the parties affiliated with the easement, or the enforcement mechanisms of the state, have not had

much success establishing standing to sue holders for alleged failures to properly administer conservation easements.[3]

Here, the grantors of the interest were Larry and Judy Young and the holder of the easement is NALT. See Compl. ¶ 7; S.C. Code Ann. § 27-8-20(2). Under the statute, a third-party right of enforcement means a right provided to "a governmental body, a charitable, not-for-profit, or educational corporation, association, or trust, which though not the holder of the easement, is eligible to be the holder of such easement." S.C. Code Ann. § 27-8-20(4). Neither of these provisions, (A)(2)–(3), grant MST standing to bring this action, and so the court instead focuses on (A)(1) and (A)(4).

It is debatable whether MST qualifies as "an owner of an interest in the real property burdened by the easement." S.C. Code Ann. § 27-8-40(A)(1). The original covenant expressly states that the agreement "may only be enforced by the parties hereto, and their respective successors and assigns, no third-party beneficiary rights, including but not limited to third party rights of enforcement, are created hereby." ECF No. 1-1 at 7. Therefore, MST only has standing to bring this action if it is a "successor in interest"

_____

[3] See, e.g., Hicks v. Dowd, 157 P.3d 914 (Wyo. 2007) (denying standing to a citizen to sue to object to the County's agreement to terminate a perpetual conservation easement, but inviting the Wyoming Attorney General, who had previously declined to file suit because the public interest was already being represented, to "reassess his position" in the case); Long Green Valley Ass'n v. Bellevale Farms, 68 A.3d 843 (Md. 2013) (denying standing to a preservation association and its members to sue in objection of a state agency's authorization of the building of a creamery on property subject to an agricultural easement; the Maryland Attorney General served as legal counsel to the state agency and supported the authorization); cf. Bjork v. Draper, 886 N.E.2d 563 (Ill. App. Ct. 2008), appeal denied, 897 N.E.2d 249 (Ill. 2008) (neighbor objecting to amendments to a conservation easement and a partial swap had standing to sue under the Illinois enabling statute's neighbor-standing provision); Kapiolani Park Pres. Soc'y v. Honolulu, 751 P.2d 1022 (Haw. 1988) (members of the public who used a public park had standing to sue to enjoin the lease of a portion of the park for use as a restaurant where the attorney general actively joined in supporting the alleged breach of trust).

to the grantor. The covenant expressly states that "all of the covenants, easements and restrictions herein set forth shall run with the land and be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, successors and assigns." ECF No. 1-1 at 10. The term "Grantor" is defined to include "the above-named Grantor and any of its successors or assigns that are the legal owners of the Property or any part thereof." Id. Thus, since MST owns property that is restricted by the same Conservation Easement, it is a grantor under the terms of that agreement. See id. As a grantor, MST can "enforce" the covenant and thereby has standing to sue under (A)(1). See id. at 7.

Courts have permitted the donor of a charitable gift to file suit against the donee charity for the charity's failure to administer the gift in accordance with the terms and purposes specified by the donor. See, e.g., Smithers v. St. Luke's-Roosevelt Hosp. Ctr., 723 N.Y.S.2d 426, 435–36 (N.Y. App. Div. 2001); Register v. The Nature Conservancy, 2014 WL 6909042, at *6 (E.D. Ky. Dec. 9, 2014). If MST has indeed become a grantor of the Conservation Easement, then these cases are instructive and provide an example of a way that MST has standing to pursue a cause of action against NALT. MST argues that South Carolina caselaw supports this interpretation, where the South Carolina Court of Common Pleas held that since the plaintiff in that case owned half of the conservation easement property and fell within the definition of "Grantor," she met the requirements of subsection (A)(1) and had standing to pursue the case. Floyd, 2020 WL 13304169 at *5.

NALT and the Hospital disagree with this interpretation and rest their argument on a 2017 decision by the Supreme Court of Maine which interpreted the same clause in Maine's UCEA. See ECF No. 15 at 8–10 (citing Estate of Robbins, 154 A.3d 1185). Estate of Robbins concerned a conservation easement granted by deed over one hundred

acres of coastal property in Maine in 1997.  154 A.3d at 1187.  At the time of the lawsuit, following several conveyances, the original grantor's estate owned only a portion of the original one hundred acres subject to the conservation easement, with the Town of Cumberland purchasing another part of the subject acreage.  Id. at 1188.  The town sought to construct a parking lot for a public beach to be constructed on that acreage, which the easement holder approved as consistent with the conservation easement.  Id. The estate, though not an owner of the land at issue, took the position that the town's plan did not comply with the terms of the conservation easement and that the holder was violating its obligations as holder of the easement.  Id.  The estate filed suit seeking a declaratory judgment that the town's plans violated the terms of the conservation easement.  Id.  The Superior Court of Maine interpreted the statutorily provided grant of standing (granting standing to "[a]n owner of an interest in the real property burdened by the easement") and concluded "that the statutory language does not include owners of other unrelated property that happens to be burdened by the same easement."  Id.; 33 M.R.S. § 478(1)(A) (2016).  The Supreme Court of Maine reviewed the Superior Court's decision de novo and affirmed, holding that the provision did not confer standing to the estate.  Estate of Robbins, 154 A.3d at 1191.

MST asserts that defendants misconstrue the holdings in Estate of Robbins, and instead focuses on the clear differences in the Maine and South Carolina statutes.  ECF No. 19 at 12 (comparing Maine's statute "authoriz[ing] the Attorney General to enforce the terms of a conservation easement only in limited circumstances," with the fourth clause in the South Carolina statute conferring standing "on a person otherwise authorized by law").  This choice to narrow the Attorney General's role in enforcing

conservation easements was interpreted as legislative "intent[] to not extensively expand the scope of standing to litigate over conservation easements." Id. (citing Estate of Robbins, 154 A.3d at 1192). Further, MST argues that Estate of Robbins was a 3-2 decision that includes a "well-reasoned dissent" that explains why the similar subsection is not ambiguous and rather clearly states that "the real property burdened by the easement refers back to all of the real property so burdened, not just the property that may be used in violation of the easement." Id. at 13 (citing Estate of Robbins, 154 A.3d at 1197–98 (Alexander, J. and Jabar, J., dissenting) (internal quotation marks omitted)). The court agrees and finds that MST has standing under (A)(1), though in the absence of any direct authority, the court would welcome the South Carolina Supreme Court to provide additional clarity on the interpretation of this provision.

MST is likely not within the scope of "a person otherwise authorized by law" simply by virtue of having constitutional standing. S.C. Code Ann. § 27-8-40(A)(4). The commentaries suggest that this provision refers to the fact that a state's other applicable laws may create standing in other persons. UCEA § 3 cmt., 12 U.L.A. at 185 (2008). For example, "the Attorney General could have standing in his capacity as supervisor of charitable trusts, either by statute or at common law." Id.; see Hicks, 157 P.3d at 921 (dismissing the case because the plaintiff did not have standing to sue to enforce a charitable trust but inviting the Wyoming Attorney General, as supervisor of charitable trusts in Wyoming to reassess his position regarding the case).

But, MST argues that under Floyd v. Dross, subsection (A)(4) includes those who have constitutional standing. ECF No. 19 at 14 (citing Floyd, 2020 WL 13304169, at *5) ("As an affected person who is suffering an injury-in-fact that will be remedied by a

favorable ruling of this Court, [the plaintiff] also has constitutional standing and qualifies under subsection (A)(4) as well.").  Defendants critique <u>Floyd</u> as inapplicable to the present facts because it concerned a dispute over right to access a parcel pursuant to the terms of the conservation easement.  ECF No. 23 at 4 (citing <u>Floyd</u>, 2020 WL 13304169, at *3).  Further, defendants persuasively assert that a plaintiff must always satisfy Article III standing in order to bring a cause of action, and therefore accepting <u>Floyd</u>'s reasoning would impermissibly open the floodgates to the court and render a state's other laws creating standing essentially meaningless.  <u>See</u> ECF No. 23 at 9–10 (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 119 n.6 (1998)).  The court is inclined to agree with defendants on this provision and finds that MST does not have standing under (A)(4).

The court finds that MST has standing under S.C. Code Ann. § 27-8-40(A)(1) as a "Grantor" of the property as is clearly defined by the unambiguous language of the conveyance.  <u>See</u> ECF No. 1-1 at 7, 10.

### b. Proximate Causation

Second, the court examines whether MST's alleged injuries are proximately caused by violations of the statute.  The injury must have a "sufficiently close connection to the conduct the statute prohibits."  <u>Belmora LLC v. Bayer Consumer Care AG</u>, 819 F.3d 697, 708 (4th Cir. 2016) (quoting <u>Lexmark Int'l</u>, 572 U.S. at 132–33).

Here, MST alleges that NALT and the Hospital violated the IRS Qualified Conservation Contributions that requires the conservation purpose be protected in perpetuity.  26 C.F.R. § 1.170A–14, Treas. Reg. § 1.170A–14.  If the amendment is inconsistent with the Conservation Purposes, then MST may correctly assert that its

alleged injuries—namely, impacts to the ecology on the adjacent land parcel and additional development impacts—are proximately caused by defendants' amendment of their Conservation Easement in violation of 26 C.F.R. § 1.170A–14.

In 2020, the Eleventh Circuit examined at length the exact issue of amending a conservation easement granted in perpetuity as it related to § 170(h). <u>Pine Mountain Preserve</u>, 978 F.3d at 1209–10. It held that "perpetuity" in the easement context does not mean "inalienability, unreleasability, or unamendability" but rather draws on the term's common-law meaning and denotes only that the granted property will not automatically revert to the grantor, his heirs, or assigns. <u>Id.</u> at 1209. It is debatable whether the amendment does in fact violate that statute, but that is a question the court will review as this case proceeds—at this time, the court finds that MST has stated facts sufficient to establish standing and to survive the motions to dismiss.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motions to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 8, 2022**
**Charleston, South Carolina**