**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| MST, LLC, | ) | Civil Action No.  2:22-cv-874-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **GEORGETOWN MEMORIAL** |
| | ) | **HOSPITAL'S ANSWER TO** |
| North American Land Trust and Georgetown | ) | **PLAINTIFF'S COMPLAINT,** |
| Memorial Hospital, | ) | **COUNTERCLAIM AND THIRD-** |
| | ) | **PARTY COMPLAINT** |
| Defendants. | ) | |
| | ) | Jury Trial Requested |

| | |
|---|---|
| Georgetown Memorial Hospital, | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MST, LLC, | ) |
| | ) |
| Counterclaim-Defendant. | ) |
| | ) |

| | |
|---|---|
| Georgetown Memorial Hospital, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| James Murren, and Heather Murren, | ) |
| | ) |
| Third-Party Defendants. | ) |

Defendant Georgetown Memorial Hospital (doing business as Tidelands Georgetown Memorial Hospital) ("GMH"), by and through its undersigned counsel, responds to the allegations contained in Plaintiff's Complaint (the "Complaint") as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Upon information and belief, GMH admits the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.      Upon information and belief, GMH admits the allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.      GMH admits the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      The allegations contained in Paragraph 4 of Plaintiff's Complaint are legal conclusions to which no response is required.  To the extent a response is required, GMH responds that it does not contest that this Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332.  Any remaining allegations are denied.

5.      The allegations contained in Paragraph 5 of Plaintiff's Complaint are legal conclusions to which no response is required.  To the extent a response is required, GMH does not contest that venue is proper in this Court.  Any remaining allegations are denied.

## BACKGROUND

6.      Upon information and belief, GMH admits the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7.      GMH admits the allegations contained in Paragraph 7 of Plaintiff's Complaint.

8.      GMH refers the Court to Exhibit 1 of Plaintiff's Complaint for a statement of its contents and denies Plaintiff's characterization of its contents or its effect.  Any remaining allegations contained in Paragraph 8 of Plaintiff's Complaint are denied.

9.      GMH admits that the entrance road to Weehaw from Wedgefield Road crosses through the property owned by GMH that is at issue in this lawsuit (the "Hospital Property").  GMH denies the remaining allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.     GMH admits only that Exhibit 2 to Plaintiff's Complaint contains copies of the Baseline Documentation for the Conservation Easement. GMH refers the Court to Exhibits 1 and 2 of Plaintiff's Complaint for a statement of their contents and denies Plaintiff's characterization of their contents or their effect.   Any remaining allegations contained in Paragraph 10 of Plaintiff's Complaint are denied.

11.     GMH refers the Court to Exhibits 1 and 2 of Plaintiff's Complaint for a statement of their contents and denies Plaintiff's characterization of their contents or their effect.   Any remaining allegations contained in Paragraph 11 of Plaintiff's Complaint are denied.

12.     To the extent Plaintiff's reference to documents contained in Paragraph 12 refers to Exhibits 1 and 2 of Plaintiff's Complaint, GMH refers the Court to those exhibits for a statement of their contents and denies Plaintiff's characterization of their content of their effect. The allegations referring to the 1973 Threatened and Endangered Species Act contains legal conclusions to which no response is required.  To the extent a response is required, GMH also refers the Court to the Threatened and Endangered Species Act of 1973 for a statement of its contents and deny Plaintiff's characterization of its contents or effect. Any remaining allegations contained in Paragraph 12 of Plaintiff's Complaint are denied, including those referencing conclusions by "experts in this field," because they are vague and do not clearly cite to or quote from any documents or supporting authority attached to the Complaint.

13.     GMH refers the Court to Exhibit 1 of Plaintiff's Complaint for a statement of its contents and denies Plaintiff's characterization of its contents or its effect.   Any remaining allegations contained in Paragraph 13 of Plaintiff's Complaint are denied.

14.     The allegations contained in Paragraph 14 of Plaintiff's Complaint are legal conclusions to which no response is required.  To the extent a response is required GMH refers

the Court to Exhibits 1 of Plaintiff's Complaint for a statement of its contents and denies Plaintiff's characterization of its contents or its effect. GMH also refers Plaintiff to the Conservation Easement Act of 1991 codified in S.C. Code Ann. § 27-8-10 *et seq.* for a statement of its contents and denies any of Plaintiff's characterization of the statute's contents or effect. Any remaining allegations contained in Paragraph 14 of Plaintiff's Complaint are denied.

15.     The allegations in Paragraph 15 contain legal conclusions to which no response is required. To the extent a response is required, GMH admits only that Section 27-8-30(C) states in part that "a conservation easement is unlimited in duration unless the instrument creating it provides otherwise." GMH also refers Plaintiff to Exhibit 1 of Plaintiff's Complaint for a statement of its contents and denies any characterization of its contents or effect by Plaintiff. Any remaining allegations contained in Paragraph 15 are denied.

16.     GMH is without knowledge or information sufficient to form a belief as to the truth of the allegation that the Youngs claimed a qualified conservation contribution on their state and federal tax returns, and therefore denies the same. Any remaining allegations contained in Paragraph 16 are denied.

17.     GMH admits only that that the Amendment to the Conservation Easement ("Amendment") was executed on December 19, 2008 and subsequently recorded at Book 1122, Page 80 in the ROD. GMH denies all remaining allegations included in Paragraph 17 including any allegation suggesting that the Amendment to the Conservation Easement did not effectively release the Hospital Property from the restrictions imposed by the Conservation Easement.

18.     GMH admits that a copy of the Amendment is attached to the Complaint as Exhibit 3. GMH also admits that the Amendment contains the language quoted in Paragraph 18. Any remaining allegations contained in Paragraph 18 of Plaintiff's Complaint are denied.

19.    GMH admits that it owns what Plaintiff has labelled as the Hospital Easement Property (and what GMH refers to as the "Hospital Property") as part of the approximate 65-acre tract of land identified by TMS No. 02-1009-018-02-03 including 8.25 acres of property that were not included in the Conservation Easement documentation.  Any remaining allegations contained in Paragraph 19 of Plaintiff's Complaint are denied.

20.    GMH admits only that in November 2008 the Hospital Property was zoned as a planned development district known as the Georgetown Memorial Hospital Weehaw Campus Planned Development ("Hospital Weehaw PD").  GMH denies the remaining allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.    GMH admits only that in the Spring of 2021, it sought to modify the Hospital Weehaw PD, which included property that Plaintiff has defined as the Hospital Easement Property.  GMH denies any remaining allegations contained in Paragraph 21.

22.    GMH refers the Court to Exhibit 1 of Plaintiff's Complaint for a statement of its contents and denies Plaintiff's characterization of its contents or its effect.  Any remaining allegations contained in Paragraph 22 of Plaintiff's Complaint are denied.

23.    GMH admits only that it entered a purchase and sale agreement to sell sixteen acres of the Hospital Property, contingent on the Hospital Weehaw PD being modified to include multi-family housing as a permitted use.  Any remaining allegations contained in Paragraph 23 of Plaintiff's Complaint are denied.

24.    GMH admits the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.    GMH admits the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.    GMH admits the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.    GMH admits the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.    GMH admits the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.    The allegations contained in Paragraph 29 of Plaintiff's Complaint contain legal conclusions to which no response is required.  To the extent a response is required, GMH denies Plaintiff's characterization of the terms and conditions of the Conservation Easement and their effect.

30.    GMH denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

31.    Answering the allegations in Paragraph 31 of Plaintiff's Complaint, GMH incorporates its responses to all previous paragraphs of the Complaint as if fully restated herein.

32.    GMH admits that it asserts the Amendment is enforceable and valid, and that the Amendment was legally effective at removing what Plaintiff defines as the Hospital Easement Property from the Conservation Easement.  GMH admits upon information and belief that Plaintiff contends what it purports to contend in Paragraph 32 of Plaintiff's Complaint, but GMH denies that those contentions are correct.  Any remaining allegations contained in Paragraph 32 are denied.

33.    GMH admits upon information and belief that Plaintiff is seeking the relief requested in Paragraph 33 of Plaintiff's Complaint, but GMH denies that Plaintiff is entitled the requested relief.

34.    GMH denies that the Conservation Easement contains the language quoted in Paragraph 34 of Plaintiff's Amended Complaint.  Any remaining allegations contained in Paragraph 34 are denied.

35.    Paragraph 35 contains a legal conclusion to which no response is required.  To the extent a response is required, GMH refers the Court to 26 U.S.C. § 170(h)(2)(C) for a statement

of its contents and denies Plaintiff's characterization of its contents or effect.  Any remaining allegations are denied.

36.    GMH admits only that 26 U.S.C. § 170(h)(5)(A) contains the language quoted in Paragraph 36 of Plaintiff's complaint.   Any remaining allegations, including any implied characterization of the statutes' effect are denied.

37.    The allegations contained in Paragraph 37 are legal conclusions to which no response is required.  To the extent a response is required, GMH refers the Court to the "controlling regulations" referenced in Paragraph 37 for a statement of their contents and denies any of Plaintiff's characterization of the regulations' contents or effect.

38.    The allegations contained in Paragraph 38 are legal conclusions to which no response is required.  To the extent a response is required GMH refers the Court to 26 U.S.C. § 170(h) and its subparts for a statement of its contents and denies any of Plaintiff's characterization of the statute's contents or effect.

39.    GMH admits upon information and belief that Plaintiff is seeking the relief requested in Paragraph 39 of the Complaint and the subsequent Paragraph beginning with "WHEREFORE" but expressly denies that the Amendment violates the provisions of 26 U.S.C. § 170(h); expressly denies that the Amendment is null, void, and unlawful; expressly denies that the Conservation Easement still encumbers any portion of the Hospital Property; and expressly denies that Plaintiff is entitled to any other relief it has requested.

### DEFENSES AND AFFIRMATIVE DEFENSES

### First Defense
### (Failure to State a Claim Upon Which Relief Can Be Granted)

40.    Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**Second Defense**
**(Statute of Limitations)**

41.    Plaintiff's declaratory judgment action is barred by the applicable statute of limitations.

**Third Defense**
**(Equitable Defenses)**

42.    Plaintiffs' declaratory judgment action is barred by the doctrines of waiver, estoppel, laches, and/or unclean hands.

**Fourth Defense**
**(Bona-fide Purchaser for Value)**

43.    GMH is bona-fide purchaser for value and therefore, took possession and title of the Hospital Property free and clear of the restrictions and encumbrances allegedly imposed by the 1995 Conservation Easement at issue in this lawsuit.

**Fifth Defense**
**(Reservation)**

44.    GMH reserves the right to amend and supplement its affirmative defenses to include any defense, legal, equitable, factual, and/or otherwise that may become available during the course of the above-captioned litigation.

**ADDITIONAL DEFENSES BY WAY OF COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Pursuant to Fed. R. Civ. P. 13, GMH hereby brings the following Counterclaim and Third-Party Complaint against Counterclaim Defendant, MST, LLC (hereinafter "MST") and Third-Party Defendants James and Heather Murren (collectively "the Murrens") alleging as follows:

**INTRODUCTION**

1.      This lawsuit arises out of a dispute involving a 1995 Conservation Easement ("Conservation Easement") placed on a tract of land known as Weehaw Plantation ("Weehaw") and the subsequent 2008 Amendment of that Conservation Easement ("Amendment") that released 56.75 acres of land from the restrictions of the easement.

2.      That land released from the Conservation Easement was later sold to GMH, a 501(c)(3) not-for-profit community hospital.

3.      In pursuing its claim for declaratory judgment MST, incorrectly claims that that the Amendment is invalid and that the 56.75 acres of property purchased by GMH is still subject to, and fully encumbered by the Conservation Easement.

4.      MST avers that its purpose for bringing this action is to protect the environmental, conservation, and open space values reflected in the easement.  However, the real purpose of MST's suit is to have the Amendment declared invalid so that MST and the Murrens' will have the ability to build five dwellings on Weehaw, which will greatly increase the value of the Weehaw property.  In bringing this suit, MST also seeks to thwart the potential development of the Hospital Property and prevent the property from being used in a manner that MST and other neighboring landowners perceive will lower their own property values.

5.      MST and its members James and Heather Murren have known of GMH's plans to develop the property at issue in the case since MST purchased Weehaw in 2010.

6.      In 2008, before MST's and the Murrens' purchase of Weehaw, the Amendment was recorded and the GMH property was rezoned to allow the property to be developed as a hospital.  However, since purchasing Weehaw Plantation in 2010, MST and the Murrens have idly sat by, without protest, willing to allow GMH to pursue the development of a hospital campus on the property at issue.  It was only when GMH decided not to build a hospital on the

land and instead sell it to a developer to construct affordable housing that MST and the Murrens opposed modification of the Hospital Weehaw PD and publicly claimed that the Amendment was invalid and that GMH's property was still encumbered by the Conservation Easement.

7.     MST and the Murren's knowingly made false statements concerning the Hospital Property, the Conservation Easement, and the Amendment to prevent the modification of the Hospital Weehaw PD and ultimately to prevent the development of the Hospital Property and have the Amendment declared invalid.

8.     MST and the Murrens took these actions for the purpose of furthering their own economic gain at great expense to GMH and the Georgetown Community.

9.     MST and the Murrens stand to profit greatly if the Amendment is declared invalid because MST would then have the ability to develop five dwellings within Weehaw, which would greatly increase the resale value of Weehaw.

10.    By having the Amendment declared invalid, MST and the Murrens would also ensure that the Hospital Property would not be used for an affordable housing development that—in MST's and the Murrens' opinions—would cause the Weehaw property value to decrease.

11.    MST's and the Murren's false statements concerning the Hospital Property, the Conservation Easement, and Amendment slandered title to the Hospital Property and tortiously interfered with GMH's existing and prospective contracts to sell the Hospital Property in turn causing GMH to suffer great economic harm.

12.    MST's and the Murren's actions have also caused harm to the Georgetown Community by preventing the development of much needed affordable housing in the area.

**THE PARTIES**

13.    GMH is a tax exempt 501(c)(3) not-for-profit community hospital organized under the laws of South Carolina and primarily serves the populations of Georgetown and Williamsburg Counties in South Carolina.

14.    GMH owns the parcel of land on which MST is seeking to enforce the restrictions of a 1995 Conservation Easement.

15.    Counterclaim Defendant MST, LLC is a Nevada limited liability company and the owner of Weehaw, which neighbors the parcel of land owned by GMH that is the subject of this lawsuit.

16.    Third-Party Defendants James and Heather Murren (collectively "the Murrens") are, upon information and belief, the only members of MST, LLC.

17.    James Murren is the former Chairman and Chief Executive Officer of MGM Resorts International who, upon information and belief, is a resident of Las Vegas, Nevada.

18.    Heather Murren is a former Wall Street securities analyst and the ex-wife of James Murren.  Upon information and belief, Heather Murren is a resident of Las Vegas, Nevada.

## JURISDICTION AND VENUE

19.    This Court has personal jurisdiction over the parties to this lawsuit because they have availed themselves to the jurisdiction of this Court.

20.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Counterclaim Defendant and Third-Party Defendants and the amount in controversy exceeds $75,000.

21.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because the real property that is the subject of this lawsuit is located in Georgetown County, South Carolina and a

substantial part of MST's and the Murren's actions giving rise to GMH's counterclaims and third-party claims occurred in Georgetown County, South Carolina.

## **GENERAL COUNTERCLAIM AND THIRD-PARTY COMPLAINT ALLEGATIONS**

### **The Formation of the Conservation Easement**

22.     In 1988, Larry and Judy Young acquired several hundred acres of land in Georgetown, South Carolina known as Weehaw Plantation.

23.     Several years later, on December 29, 1995, the Youngs granted Defendant North American Land Trust ("NALT") a conservation easement by way of an executed Conservation Easement and Declaration of Restrictive Covenants (the "Conservation Easement") on approximately 788 of the 932.56 acres that made up Weehaw.

24.     Under the Conservation Easement, the Youngs and any of their successors and assigns that are legal owners of the property subject to the easement were defined as the Grantor. NALT and its successor or assigns were defined as the Grantee.

25.     The Conservation Easement's stated purpose is to conserve the property that is subject to the easement "in the manner intended by Grantor and Grantee."

26.     The Conservation Easement further provides that "Grantor and Grantee desire to perpetually conserve the natural, scientific, educational, open space, and scenic resources" of the property.

27.     The Conservation Easement allows the Grantor and Grantee to amend the Conservation Easement and states as follows:

> "Grantor and Grantee shall mutually have the right, in their sole discretion, to agree to amendments to [the Conservation Easement] which are not inconsistent with the basic purpose of  the [Conservation Easement] as states in [the] document, provided, however, that Grantee shall have no right or power to agree to any amendments hereto that would result in the [Conservation Easement]

failing to qualify as a valid conservation easement under the Act, as the same may be hereafter amended, or Section 170(h) of the Code as hereafter amended."

28.     In 2003, Larry and Judy Young conveyed approximately 680 acres of Weehaw to Sand Dunes Ocean Front Resort, LLC which then conveyed the property to Kyle and Jacqueline Young in 2004.

**The 2008 Amendment to the Conservation Easement**

29.     Beginning in 2008, an exhaustive study of possible sites for a new Georgetown public hospital was conducted.

30.     Due to site selection criteria including wetland areas, elevation, and other infrastructure considerations, it was determined that a portion of Weehaw owned by Kyle Young and Jacqueline Young was the best site for a potential hospital development.

31.     On November 10, 2008, Georgetown County passed Ordinance No. 2008-65 which rezoned portions of Weehaw Plantation from residential and general commercial to the Georgetown Memorial Hospital Weehaw Campus Planned Development.

32.     On December 19, 2008, the Youngs and NALT amended the Conservation Easement (the "Amendment") to release 56.75 acres of upland property from the restrictions contained in the easement in exchange for further encumbering approximately 35 acres of waterfront property in Weehaw by giving up the right to develop five homesites, which were originally permitted to be constructed under the 1995 Conservation Easement. (*See* Compl., Ex. 3, at p. 2; Compl, Ex. 1, at p. 5).

33.     The Amendment provided, "[t]hat portion of the Hospital Parcel that is within the boundaries of the Property, being 56.75 acres, more of less, is hereby removed from the Conservation Area and released from the easements, covenants, prohibitions, and restrictions set forth in the Conservation Easement."

34.    Before executing the Amendment, NALT determined that amending the Conservation Easement in this manner would "have a greater ecological benefit and further advance and protect the Conservation Purposes of the Conservation Easement than any loss of such from removal of the Hospital Parcel from the Conservation Easement, particularly due to the superior location of the five dwellings in terms of scenic view from the Pee Dee River, Black River and Intracoastal Waterway and proximity to significant environmental features of the Property including, without limitation, critical marsh habitat, the archaeologically significant sites, and the wetlands area of the Property. . . ." (Compl., Ex. 3 at p. 2).

35.    NALT also determined that "the loss of scenic view from Highways 701 and S-22-325 as a result of the development of the Hospital Parcel is insignificant in comparison to the substantial ecological and scenic benefits of the extinguishment of the five dwelling rights, in addition to the public and social benefits related to meeting the needs of the Hospital. . . ." (*Id.*)

36.    The Amendment ultimately concluded that "the benefits to the Conservation Values and Conservation Purposes of the Conservation Easement as a result of the Amendment far outweigh any possible detriment." (*Id.* at p. 3).

37.    On December 30, 2008, GMH purchased 65 acres of upland property from the Kyle and Jacqueline Young ("Hospital Property"), 56.75 acres of which were released from the Conservation Easement as a result of the Amendment and 8.25 acres of which were never subject to the Conservation Easement.

38.    The Amendment was recorded with the Georgetown County Register of Deeds the same day that GMH purchased the Hospital Property.  (Compl., Ex. 3). The Amendment made clear that at the time GMH purchased the Hospital Property, it "need[ed] to relocate its Georgetown Memorial Hospital campus due to the inability to expand in its current location due

to geographic restraints," and that GMH intended to build a new hospital campus on the Hospital Property.  (*Id.*, at p. 3).  However, neither the Amendment, nor any other instrument restricted GMH's use of the Hospital Property.  GMH was free to use, develop, and/or sell the Hospital Property for any purpose, subject to the appropriate zoning and permitted uses under the planned unit development.

39.    When GMH purchased the Hospital Property, it did so with the good faith belief and understanding (which it still maintains) that the Amendment was valid.

40.    When purchasing the Hospital Property, GMH paid the full purchase price of $3,301,513.36 and acquired legal title to the property without any actual or constructive knowledge of any allegation that the Amendment was somehow invalid.  The Amendment specifically stated that NALT reaffirmed its acceptance of the Conservation Easement as modified by the Amendment, and that Kyle and Jacqueline Young agreed that the Conservation Easement remained in full force in effect except as modified by the Amendment.  (Ex. 3 to Compl. at p. 4).

**MST's Purchase of Weehaw**

41.    On June 16, 2010, MST purchased approximately 687.20 acres of Weehaw Plantation from Kyle and Jacqueline Young as evidenced by the Deed recorded June 21, 2010 in the Georgetown County Register of Deeds Book 1497 at Page 342.

42.    As set forth below, the deed transferring title of Weehaw from the Youngs to MST stated that MST purchased the property subject to the Conservation Easement and the Amendment.

> **THIS CONVEYANCE IS MADE SUBJECT TO** all matters as shown on **"Plat of 687.2 Acres, the Remaining Portion of Weehaw Plantation on Black River, Surveyed for MST, LLC, a Nevada Limited Liability Company"**, dated May 20, 2010, prepared by Powers Land Surveying and recorded on June 21, 2010 on Slide 714 at page 10; to the Conservation Easement and Declaration of Restrictive Covenants made December 29, 1995 between Larry Young and Judy Young and North American Land Trust recorded on December 29, 1995 in Deed Book 669 at page 300; to the Amendment to Conservation Easement and

> Declaration of Restrictive Covenants between Kyle N. Young and Jacqueline M. Young and the North American Land Trust dated December 19, 2008 and recorded on December 30, 2008 in Record Book 1122 at page 80; and to all covenants, conditions, restrictions and easements as may be applicable as recorded in the public records of Georgetown County.

(*See* June 16, 2010 Deed Transferring 687.2 Acres of Weehaw from Kyle and Jacqueline Young to MST, LLC, attached as **Exhibit A**).

43.     By nature of the representations contained in the deed, when MST purchased Weehaw, MST and the Murrens had notice of both the Conservation Easement and the Amendment, the latter of which removed 56.75 acres of the Hospital Property from the Conservation Easement and stated GMH's intent to develop the Hospital Property.

44.     On October 3, 2014, MST purchased an additional 342.4 Acres of Weehaw from the Weehaw-Cheves Partnership, as reflected in the Georgetown County Registrar of Deeds' Book 2248 Page 107.  This portion of Weehaw was never subject to the Conservation Easement.

**MST's Wrongful Attempt to Stop the Development of the Hospital Property**

45.     Following GMH's purchase of the Hospital Property, the 2008 economic recession put a hold on GMH's plans to build a new hospital.  Subsequently, there were changes to the hospital system's overall strategic plan, which did not require constructing a new hospital campus in Georgetown, South Carolina.  Under its revised strategic plan, GMH decided to renovate and expand its already existing Georgetown Memorial Hospital campus rather than build an entirely new hospital campus in Georgetown.

46.     On February 19, 2021, GMH applied to Georgetown County for a modification to the Hospital Weehaw PD to allow for multifamily housing on the Hospital Property with the goal of selling the property to an affordable housing developer so that GMH and other businesses in Georgetown could attract and recruit lower to middle-income skilled workers that are necessary for their businesses to operate.

47.     There is a significant shortage of affordable housing in Georgetown, South Carolina, which has hindered the town's economic growth and prevented the town and its businesses from expanding the workforce.

48.     Pursuant to the Hospital Weehaw PD, GMH could have developed the Hospital Property into a hospital campus at any point since purchasing the property in 2008.  However, it was not until GMH sought to modify the Hospital Weehaw PD—approximately 11 years after MST purchased Weehaw with the knowledge that Hospital Property would be developed—that MST and the Murrens opposed GMH's proposed modification of the Hospital Weehaw PD on the grounds that it was still encumbered by the Conservation Easement and could not be developed.

49.     Between 2010 and 2021, MST and the Murrens did not contest the potential development of the Hospital Property despite it being clear that GMH intended to use the property as the site of a hospital campus or some other commercial use.  However, once MST and the Murrens realized that GMH did not intend to build a hospital on the Hospital Property, but that the property may be used for affordable housing, only then did MST and the Murrens try to declare the Amendment invalid.

50.     After MST and the Murrens learned that GMH intended to sell the Hospital Property for use as affordable housing, they, along with other neighboring landowners wrote

letters to the Georgetown County Council protesting the proposed modification to the Hospital Weehaw PD that would allow for multi-family housing.

51.    Examples of such letters are attached to MST's Complaint in Exhibits 4 and 5.

52.    On May 7, 2021, MST—at the direction of the Murrens—a representative of MST sent a letter to every member of the Georgetown County Council opposing the modification to the Hospital Weehaw PD and falsely claimed that the 2008 Amendment to the Conservation Easement "violated the federal law governing conservation easements and was entirely invalid and ineffective" and that the 56.75 acres of land the made up the majority of the Hospital Property "remain fully restricted and encumbered by the Conservation Easement."

53.    Upon information and belief, MST and the Murrens made other similar representations to members of the Georgetown County Council and members of the public and encouraged other nearby landowners to raise the Conservation Easement as an issue to oppose the modification to the Hospital Weehaw PD.

54.    MST's and the Murrens' representations to the Georgetown County Council and others caused the modification to the Hospital Weehaw PD not to pass during its third public reading at a Georgetown County Council Meeting on May 25, 2021, despite the Planning Commission previously recommending the modification and the County Counsel unanimously approving the modification during the first and second public readings.

55.    As a result of the modification failing to pass, GMH's contract to sell the Hospital Property for an affordable housing development fell through, and the property was not sold.

56.    GMH still owns the Hospital Property as of the date of this filing and has not yet been able to find a buyer for the Hospital Property due to MST and the Murrens clouding title by claiming that the property is still subject to the restrictions of the Conservation Easement.

### GMH's First Claim Against Counterclaim Defendant MST
(Declaratory Judgment)

57.     GMH incorporates and realleges the preceding paragraphs of its Counterclaim and Third-Party Complaint as if fully restated verbatim herein.

58.     MST has claimed that the Amendment is invalid, and that 56.75 acres of the Hospital Property remain fully restricted and encumbered by the Conservation Easement.  GMH asserts that the Amendment is valid and that the 56.75 acres of the Hospital Property at issue in this lawsuit were released from the easement, covenants, restrictions, and prohibitions set forth in the Conservation Easement.

59.     Pursuant to 28 U.S.C. §2201, et seq. and Rule 57 of the Federal Rules of Civil Procedure, GMH seeks a declaratory judgment that the Amendment is valid and that the 56.75 acres of the Hospital Property at issue in this lawsuit were released from the easement, covenants, restrictions, and prohibitions set forth in the Conservation Easement.

60.     The South Carolina Uniform Conservation Easement Act expressly allows for a Conservation Easement to be amended.  Specifically, S.C. Code Ann. § 28-7-30 states, a "conservation easement may be created, conveyed, recorded, assigned, released, modified, terminated, or otherwise altered or affected in the same manner as other easements and must be recorded in the same manner as other easements."

61.     The Conservation Easement itself also expressly states that the Grantor and Grantee may amend the easement.

> Grantor and Grantee shall mutually have the right, in their sole discretion, to agree to amendments to [the Conservation Easement] which are not inconsistent with the basic purpose of  the [Conservation Easement] as states in [the] document, provided, however, that Grantee shall have no right or power to agree to any amendments hereto that would result in the [Conservation Easement] failing to qualify as a valid conservation easement under the Act, as the same may be hereafter amended, or Section 170(h) of the Code as hereafter amended.

62.    Kyle and Jacqueline Young, as Grantors, and NALT, as Grantee, Amended the Conservation Easement on December 19, 2008 to remove the 56.75 acres that now comprise the majority of the Hospital Property from the Conservation Area and release those 56.75 acres from the easements, covenants, prohibitions, and restrictions set forth in the Conservation Easement.

63.    The Amendment was subsequently recorded with the Georgetown County Registrar of Deeds on December 30, 2008, in Book 1122 Page 80.

64.    The Amendment was executed and recorded in accordance with the South Carolina Uniform Conservation Easement Act and the Conservation Easement itself.

65.    As NALT determined, the Amendment was consistent with and furthered the basic purpose of the Conservation Easement by providing a greater net conservation benefit by amending the Conservation Easement in the manner set forth in the Amendment.

66.    NALT, as the Grantee, had the full power and authority to agree to the Amendment because no provision of the Amendment results in the Conservation Easement failing to qualify as a valid conservation easement under the South Carolina Uniform Conservation Easement Act or Section 170(h) of the Code.

### GMH's Second Claim Against All Counterclaim and Third-Party Defendants
(Slander of Title)

67.    GMH incorporates and realleges the preceding paragraphs of its Counterclaim and Third-Party Complaint as if fully restated verbatim herein.

68.    MST, acting through or at the directions of the Murrens, published false statements to the Georgetown County Council and other members of the public that the Amendment "violated the federal law governing conservation easements and was entirely invalid and ineffective" and that the 56.75 acres of land that made up the majority of the Hospital Property "remain fully restricted and encumbered by the Conservation Easement."

69.     MST and the Murrens knowingly and maliciously published these false statements as a pre-text to prevent the Hospital Weehaw PD from being amended and prevent the development of the Hospital Property for use as affordable housing.

70.     Upon information and belief, MST and the Murrens made these false statements for their own economic benefit in an effort to have the Amendment declared invalid so that they could develop five dwellings on the Weehaw property and to prevent any perceived loss in property value that would result in the Hospital Property being developed for use as affordable housing.

71.     By publishing the above-mentioned false statements, MST and the Murrens have clouded title to the Hospital Property and discouraged potential buyers from purchasing the property from GMH.

72.     MST's and the Murrens' actions have resulted in the diminished value of the Hospital Property in the eyes of third parties and caused pecuniary harm to GMH.

### GMH's Third Claim Against All Counterclaim and Third-Party Defendants
(Intentional Interference with a Prospective Contractual Relations)

73.     GMH incorporates and realleges the preceding paragraphs of its Counterclaim and Third-Party Complaint as if fully restated verbatim herein.

74.     On January 13, 2021, GMH entered into a contract with We Do Good Work, LLC ("Buyer") for the sale of 16 acres of the Hospital Property at a purchase price of $50,000 per acre.  A copy of the contract is attached as **Exhibit B**.

75.     The Contract was contingent on the Hospital Weehaw PD being modified to include multi-family housing as a permitted use.

76.     Prior to the third and final public reading of the proposed modification to the Hospital Weehaw PD, MST and the Murrens knowingly and maliciously publicized false

statements that the Amendment "violated the federal law governing conservation easements and was entirely invalid and ineffective" and that the 56.75 acres of land the made up the majority of the Hospital Property "remain fully restricted and encumbered by the Conservation Easement."

77.    Upon information and belief, MST and the Murrens also encouraged and conspired with other members of the public to knowingly make false statements concerning the Conservation Easement and Amendment so that the Georgetown County Council would not pass the modification to the Hospital Weehaw PD that would include multi-family housing as a permitted use and ultimately allow for 16 acres of the Hospital Property to be used for an affordable housing development.

78.    MST and the Murrens engaged in these actions for their own economic benefit at the expense of GMH and the Georgetown Community by preventing the development of much needed affordable housing.

79.    As a result of MST's and the Murrens' actions, the contract between GMH and We Do Good Work was terminated and GMH suffered monetary harm resulting therefrom.

**GMH's Fourth Claim Against all Counterclaim and Third-Party Defendants**
(Civil Conspiracy)

80.    GMH incorporates and realleges the preceding paragraphs of its Counterclaim and Third-Party Complaint as if fully restated verbatim herein.

81.    Upon information and belief, MST and the Murrens encouraged and conspired with other residents of Georgetown County (including those who wrote letters to the Georgetown County Council attached as Exhibit 5 to MST's Complaint) to publish false statements to the Georgetown County Council claiming that the Hospital Property was still subject to and encumbered by the restrictions set forth in the Conservation Easement.

82.     The purpose of this conspiracy was to injure GMH by preventing the modification of the Hospital Weehaw PD to allow for multifamily housing and ultimately prevent the sale of the Hospital Property and its subsequent development into an affordable housing community.

83.     Ultimately, MST and the Murrens engaged in the conspiracy in an effort to have the Amendment declared invalid so that it could develop five dwellings on the Weehaw property and also to protect against the perceived drop in its property values that would result from an affordable housing development being built on the Hospital Property at the expense of GMH being unable to sell the Hospital Property.

84.     As a result of MST's and the Murrens' actions, GMH suffered monetary harm from losing its contract to sell 16 acres of the Hospital Property and from the diminished value of the Hospital Property in the eyes of third parties due to the perception that the property is still encumbered by the Conservation Easement and cannot be developed or used for any commercial purpose.

### GMH's Fifth Claim Against All Counterclaim and Third-Party Defendants
(Unjust Enrichment)

85.     GMH incorporates and realleges the preceding paragraphs of its Counterclaim and Third-Party Complaint as if fully restated verbatim herein.

86.     By making the false publications referenced above, MST and the Murrens have increased the value of Weehaw and simultaneously diminished the value of the Hospital Property.

87.     It is inequitable and unjust for MST and the Murrens to realize the benefit of its false publications without compensating GMH for the benefit MST and the Murrens received and for the harm caused to GMH.

88.     As such, GMH is entitled to be compensated for any increase in the Weehaw Plantation property value that MST, and the Murrens received as a result of falsely claiming the Amendment was invalid and for any corresponding decrease in property value to the Hospital Property.

**WHEREFORE,** GMH respectfully requests this Court to:

A.  Dismiss MST's Declaratory Judgment action with prejudice;

B.  Issue a Declaratory Judgment stating that the 2008 Amendment to the Conservation Easement is valid and that the 56.75 acres of land that were previously subject to the Conservation Easement and comprise the majority of the Hospital Property were removed from the Conservation Area (as defined in the Conservation Easement) released from the easements, covenants, prohibitions, and restrictions set forth in the Conservation Easement.  Alternatively, GMH seeks an order declaring that GMH is a bona-fide purchaser for value and therefore took possession and title of the Hospital Property free and clear of the restrictions and encumbrances allegedly imposed by the 1995 Conservation Easement at issue in this lawsuit; and

C.  Enter judgment against MST and the Murrens in favor of GMH and award GMH in excess of $4 million in actual damages, together with interest, costs, and attorney's fees and such other and further relief this Court deems just and proper, including punitive damages.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/*Wesley T. Moran*
    Wesley T. Moran
    Federal Bar No. 12797
    E-Mail: wes.moran@nelsonmullins.com
    3751 Robert M. Grissom Parkway / Suite 300
    Post Office Box 3939 (29578-3939)
    Myrtle Beach, SC 29577-6412
    (843) 448-3500

***Attorney for Defendant and Third-Party Plaintiff Georgetown Memorial Hospital***

Myrtle Beach, South Carolina
November 22, 2022