# Exhibit B

(Purchase Agreement)

**PURCHASE AND SALE AGREEMENT**

THIS PURCHASE AND SALE AGREEMENT (this "**Agreement**") is executed to be effective as of the latest date set forth on the signature page of this Agreement (the "**Effective Date**"), by and between **WE DO GOOD WORK, LLC**, a South Carolina limited liability company, 955 Old Cherokee Rd, Lexington, SC 29072, ATTN: Gregory Wilkins; Telephone: (803) 606-2186; email: gwilkins@svrealty.com (together with its successors and/or assigns, "**Buyer**"), and **Georgetown Memorial Hospital** (together with its successors and/or assigns, "**Seller**") (Buyer and Seller are collectively referred to as the "**Parties**", and each a "**Party**").

1.  **Property.** On the terms herein set forth, Buyer agrees to purchase from Seller, and Seller agrees to sell to Buyer, that tract of land located at the intersection of N. Fraser Street and Wedgefield Road, Georgetown, South Carolina 29440, and being Georgetown County a 16 acre portion of parcel 02-1009-018-02-03 , as more particularly described on Exhibit A, attached hereto and made a part hereof (the "**Land**"), together with all easements, appurtenances and rights thereunto belonging, including without limitation, all (a) roads, alleys, easements, streets and right-of-way bounding the Land, (b) rights of ingress and egress to and from the Land (including without limitation, Seller's right, title and interest in and to all applicable cross-access and reciprocal easements and/or agreements), and (c) oil, gas and other minerals lying on or under the Land (collectively, the "**Property**"). [The exact legal description and increase of the Land shall be determined by the Survey (hereinafter defined)].

2.  **Purchase Price.** The purchase price of the Property shall be subject to a final survey and the total acreage found in the final boundary subdivision plat. Buyer will pay Fifty Thousand ($50,000) per acre. The purchase of this property is contingent upon it appraising at the agreed upon price.

3.  **Earnest Money.** Within ten (10) business days of the execution of this Agreement, the Buyer shall deposit the sum of Ten Thousand Dollars and No Cents ($10,000.00)with the Escrow Agent as earnest money to be applied to the Purchase Price (the "Earnest Money"), subject to the terms and provisions of this Agreement. The Earnest Money shall be held by Southern Visions Realty Trust Account in an non-interest bearing account, separate from the other accounts, to be handled in accordance with the terms and conditions of this Agreement.

4.  **Conditions Precedent.**

    a.  **Due Diligence Period.** The Buyer shall have until June 30th, 2021 to receive a conditional commitment for temporary and permanent financing, conduct tests, studies, engineering work, title abstracts, or any other activities it deems appropriate to determine if the site is suitable. During this period the Buyer shall have the unilateral right to terminate the contract at any time and the Earnest Money shall be refunded. At the end of due diligence, the Property will be in the same condition as the time the contract was executed. Buyer will not do anything during the due diligence period to devalue the Property. All expenses during due diligence will be at the sole expense of the Buyer.

    b.  Due Diligence Materials. Within five (5) days of the Effective Date (the "**Delivery Date**"), Seller shall deliver to Buyer, at no cost to Buyer, each of the following items that are in the possession of Seller (collectively, the "**Due Diligence Materials**"):

**Purchase and Sale Agreement- Page 1**

(i)     Current year and immediately prior year tax bills and evidence of payment of same through Effective Date;

(ii)    Existing soil and groundwater tests;

(iii)   Title commitments, title policies and surveys;

(iv)    Leases, reciprocal easement agreements, service contracts and/or any other agreements in any way affecting the Property;

(v)     Environmental reports;

(vi)    Underground storage tank test results;

(vii)   Waste disposal records; permit records;

(viii)  Code violation notices and records;

(ix)    Traffic studies; and

(x)     All other engineering tests and other studies, reports, records and notices pertaining to the Property.

In the event the Property is not satisfactory to Buyer for any reason in Buyer's sole and absolute discretion, Buyer shall have the right to terminate this Agreement by delivering written notice thereof to Seller prior to the expiration of the Due Diligence Period, and Buyer shall receive a full and prompt refund of the Earnest Money without the need for Seller's signature or consent for its release.

<u>Title and Survey.</u>

(i)     If any of the Commitment, the Title Exceptions or the Survey are not satisfactory to Buyer, then Buyer may give Seller written notice of the items that Buyer finds unacceptable (the "**Title Objections**") before the expiration of the Due Diligence Period (as may be extended). Seller shall have fifteen (15) days after such notice from Buyer to deliver written notice to Buyer that it either agrees to cure the Title Objections within thirty (30) days or to advise Buyer that it will not so cure the Title Objections. All Title Exceptions to which Buyer does not object or which are deemed waived and accepted by Buyer, as herein provided, are collectively referred to as the "**Permitted Exceptions**".

(ii)    If Seller does not agree to cure one or more of the Title Objections (and Seller's failure to respond in writing shall be deemed to be an agreement to not cure the Title Objections), Buyer may either (A) accept title to the Property subject to the Permitted Exceptions without a reduction in the Purchase Price, or (B) terminate this Agreement by delivering written notice to Seller and receive a full and prompt refund of the Earnest Money without the need for Seller's consent or signature for its release.

(iii)   Notwithstanding any other provision of this Agreement to the contrary, including without limitation whether or not Buyer includes such items in its schedule of Title Objections, Seller shall have the unconditional obligation to remove, discharge, pay

and/or cure as applicable, at no cost to Buyer, all (A) title matters that are a lien for the payment of money, (B) encumbrance that can be removed by the payment of a definite sum of money, and (C) title matters caused by Seller that arise after the Effective Date, and none of such items shall be deemed Permitted Exceptions nor appear in Title Policy.

d.   Governmental Approvals. Buyer may, at its option and expense, prepare and submit applications for, and seek to obtain approval by the applicable governmental authorities and/or third parties of, approvals, permits, licenses, easements and agreements required for Buyer's Use, including without limitation, those for utilities, zoning, special uses, building construction, access, platting, easements, site construction and off-site improvements (collectively, the "**Governmental Approvals**"), including without limitations, appropriate re-zoning if necessary. Seller shall cooperate with Buyer in connection with the preparation of the applications and seeking the Governmental Approvals, including without limitation, the timely execution and delivery of all applications, documents, plats and instruments required by the applicable governmental authorities and/or third parties, provided that Seller shall not be obligated to incur any expense in connection therewith. Notwithstanding the foregoing, Buyer will not seek
a third and final reading from Georgetown County on any rezoning until Buyer closes.

e.   Other Conditions. It shall be a condition precedent to Buyer's obligation to close this transaction and purchase the Property that all of the following are timely satisfied:

   (i)   Title Policy. At Closing, the Title Company shall be prepared to issue the Title Policy to Buyer with all standard or pre-printed exceptions deleted (to the extent such can be deleted), evidencing Buyer owns good and indefeasible fee simple title in and to the Property subject only to the Permitted Exceptions.

   (ii)   Representations and Warranties.   At Closing, all of the representations and warranties of Seller shall be true in all material respects.

   (iii)   No Liens. At Closing, there shall be no unpaid charges, debts, liabilities, claims or obligations of Seller related to the Property, or any portion thereof, which could give rise to any mechanics', materialmen or other statutory lien against any portion of the Property other than those that will be paid or otherwise satisfied by Seller at Closing, and possession of the Property, free of all tenancies, leases and occupants, shall be delivered to Buyer at Closing.

   (iv)   Governmental Approvals.   Prior to Closing, Buyer shall have received all necessary and customary Governmental Approvals in order for Buyer to develop and operate the Property for its intended purpose, with the exception of any rezoning as set forth above in Item 4 (d).

   (v) Subdivided. At or prior to Closing, if the Property is part of a larger parcel belonging to Seller, the Property shall be subdivided from the larger parcel and/or platted. Seller will cooperate with the subdivision of the property, but the expense of the survey shall be the responsibility of the buyer.
   (vi)

f.  **Termination.** In the event that any condition precedent in Section 5.e is not satisfied by the date specified in Section 4.e, Buyer shall have the right to terminate this Agreement, receive a full and prompt refund of the Earnest Money with the need for Seller's consent or signature for its release.

g.  **Extensions.** Provided Buyer provides documentation to Seller evidencing Buyer's good-faith efforts to obtain its required approvals and its due diligence items,

Buyer shall have the right to extend the Due Diligence Period for a period of two (2) months beyond the expiration of the Due Diligence Period by Purchaser providing written notice of such extension to Seller Prior to the expiration of the Original Contract Term and the payment therewith of an additional   Ten Thousand   Dollars   and   No   Cents   ($10,000.00)   (The

"**Extension Deposit**") to the Escrow Agent. The Original Contract Deposit and the Extension Deposit will be non-refundable at the time the extension is executed. Both the Original Contract Deposit and the Extension Deposit shall be credited against the Purchase Price in the event of Closing.

c.  **Delivery of Documents.** The conveyance of the Property and the closing of the transaction herein described (the "Closing") shall occur by April 30th, 2022 (the "Closing Date") in escrow at the offices of the Title Company (or such other manner and/or location mutually acceptable to Buyer and Seller); provided, however, Buyer may elect to close at any time upon three (3) days' prior written notice to Seller.

(i)  **Seller shall deliver at Closing:** (A) a limited warranty deed conveying good, marketable and infeasible fee simple title in and to the Property to Buyer (or its designee) subject only to the Permitted Exceptions (the "Deed"); (B) a lien affidavit acceptable to the Title Company; (C) an affidavit of non-foreign status; (D) any other affidavit or document required by the Title Company to delete the so-called standard exceptions to the Title Policy; and (E) such other customary documents, instruments, certifications and confirmations as may be reasonably required to fully effect and consummate the transactions contemplated hereby and for the Title Company to issue the Title Policy in the form required by this Agreement.

(ii)  **Buyer shall deliver at Closing:** (A) the remaining balance of the Purchase Price as provided by this Agreement; and (B) such other documents, instruments, certifications and confirmations as may be reasonably required to fully effect and consummate the transaction contemplated hereby.

d.  Prorations. Buyer and Seller shall prorate all assessments related to the Property as of the Closing Date (collectively, the Taxes"), with the Closing Date being treated as a day of ownership by Buyer

c.  (iii.)   Seller is a 501 tax-exempt organization and therefore pays no ad valorem real property taxes

This Section 6.c shall not apply to any Rollback Taxes (hereinafter defined) described in Section 6.f below. This Section 6.c shall survive the Closing and delivery of the Deed.

e.  Costs. Seller shall pay the taxes and assessments for which Seller is responsible hereunder, the cost for the preparation of the Deed, any conveyance fee or transfer tax, the cost of curing any title or survey defect that Seller agreed to cure or is obligated to cure pursuant to the terms of this Agreement, and 100% of any broker's commission or fee in accordance with Section 9.f hereof. Except as may otherwise be stated herein, each Party shall bear its own expenses, including its own attorneys' fees.

f.  Seller's Obligations Prior to Closing. At all times until Closing, Seller shall maintain indefeasible fee simple legal title to the Property free and clear of any and all defects, liens, and encumbrances of every kind and nature (other than the Permitted Exceptions and liens and encumbrances that will be released at Closing).

g.  Rollback Taxes.

Seller is a 501 (c)(3)
tax-exempt organization and pays no ad valorem real estate taxes. Buyer shall be responsible for any rollback taxes.

  h. <u>Condemnation.</u> If, prior to Closing, condemnation proceedings are commenced against any portion of the Property, Buyer shall have the right to either (i) terminate this Agreement by delivering written notice to Seller within fifteen (15) days of Buyer's receipt of written notice from Seller of such condemnation proceedings, receive a full and prompt refund of the Earnest Money without the need for Seller's signature or consent for its release, and Seller shall reimburse Buyer for Buyer's reasonable out-of-pocket expenses incurred in connection with its due diligence inspection of the Property, provided, however, the amount of such expenses shall not exceed the condemnation proceeds received by Seller; or (ii) elect not to terminate the Agreement and appear and defend in the condemnation proceedings and any award will, at Buyer's election, belong to (A) Seller and the Purchase Price will be reduced by the same amount, or (B) Buyer and the Purchase Price will be reduced.

5. **Defaults and Remedies.**

  a. <u>SELLER DEFAULT.</u> IF SELLER FAILS TO PERFORM IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, OR OTHERWISE BREACHES ANY OF THE TERMS, COVENANTS, AGREEMENTS, REPRESENTATION OR WARRANTIES CONTAINED IN THIS AGREEMENT AND SUCH DEFAULT CONTINUES BEYOND A FIFTEEN (15) DAY NOTICE TO CURE PERIOD, THEN (I) BUYER MAY TERMINATE THIS AGREEMENT BY DELIVERING WRITTEN NOTICE THEREOF TO SELLER, WHEREUPON THE EARNEST MONEY SHALL BE IMMEDIATELY REFUNDED AND RETURNED TO BUER WITH THE NEED FOR SELLER'S CONSENT OR SIGNATURE, (II) SELLER SHALL REIMBURSE BUYER FOR ALL REASONABLE OUT-OF-POCKET EXPENSES AND COSTS INCURRED BY BUYER TO EXCEED TWENTY-FIVE THOUSAND AND NO CENTS ($25,000.00)
(III) BUYER MAY ENFORCE THE TERMS AND CONDITIONS OF THIS AGREEMENT AND EXERCISE ANY RIGHTS AND REMEDIES AVAILABLE TO BUYER, AT LAW AND IN EQUITY, INCLUDING WITHOUT LIMITATION AN ACTION FOR DAMAGES AND/OR SPECIFIC PERFORMANCE OF THIS AGREEMENT.

  b. <u>BUYER DEFAULT.</u> IF BUYER FAILS TO PERFORM IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, OR OTHERWISE BREACHES ANY OF THE TERMS, COVENANTS, OR AGREEMENTS CONTAINED IN THIS AGREEMENT, THEN AS SELLER'S SOLE AND EXCLUSIVE REMEDY, SELLER MAY TERMINATE THIS AGREEMENT BY DELIVERING WRITTEN NOTICE THEREOF TO BUYER, THE EARNEST MONEY SHALL BE FORFEITED BY BUYER AND DELIVERED TO SELLER AS LIQUIDATED DAMAGES AND NOT AS A PENALTY. SELLER ACKNOWLEDGES AND AGREES THAT THE EARNEST MONEY IS A FAIR AND EQUITABLE AMOUNT FOR SELLER TO RECEIVE SINCE SELLER WILL HAVE CHANGED ITS POSITION IN RELIANCE ON BUYER COMPLETELY THE TRANSACTION HEREIN DESCRIBED, WILL HAVE HELD THE PROPERTY OFF THE MARKET FOR AN EXTENDED PERIOD OF TIME IN RELIANCE UPON BUYER'S ABILITY TO CLOSE THIS TRANSACTION AND THE DAMAGES SUSTAINED BY SELLER IN SUCH CASE WOULD NOT OTHERWISE BE REASONABLY ASCERTAINABLE. SELLER WAIVES THE RIGHT TO EXERCISE ANY OTHER RIGHTS AND REMEDIES AVAILABLE TO SELLER BECAUSE OF A DEFAULT BY BUYER, AT LAW AND/OR IN EQUITY, INCLUDING WITHOUT LIMITATION, THE RIGHT TO SUE BUYER FOR ADDITIONAL DAMAGES OR SEEK SPECIFIC PERFORMANCE.

6. **Seller's Representations and Warranties.** Seller represents and warrants to Buyer that:

a.   Title. Seller is the owner of good, marketable and indefeasible fee simple title in and to the Property, and Seller has been the only owner of the Property during the 36-month period preceding the Effective Date. If at any time Buyer or Buyer's counsel make the reasonable determination that Seller does not hold such title, Buyer shall have the right to terminate this Agreement by delivering written notice thereof to the Title Company, and Buyer will then receive a full and prompt refund of the Earnest Money without the need for Seller's consent or signature for its release.

b.   Authority; Enforceability. Seller has the capacity and authority to execute this Agreement and perform its obligations under this Agreement. This Agreement constitutes a legal and valid binding obligation of Seller, enforceable against Seller in accordance with its terms. All action necessary to authorize Seller's execution (and execution by the individual executing this Agreement on behalf of Seller), delivery and performance of this Agreement has been taken and such action has not been rescinded or modified. Seller's obligations to perform hereunder re contingent on approval by its Board of Trustees on or before September 30th, 2021.

c.   Hazardous Substances. To the best of the seller's knowledge, there are no and there have been no wetlands, oil or gas wells (capped or uncapped) or underground storage tanks (in use or abandoned) on or about the Property and/or land adjacent to the Property. Neither Seller nor any prior owner or occupant of the Property has: (i) caused or permitted, and Seller has received no notice and has no knowledge of, the generation, manufacture, refinement, transportation, treatment, storage, deposit, release, salvage, installation, removal, disposal, transfer, production, burning or processing of Hazardous Substances (as hereinafter defined) on, under or about the Property or any adjacent properties; (ii) caused or permitted, and Seller has received no notice and has no knowledge of, the Release (as hereinafter defined) or existence of any Hazardous Substances on , under or affecting the Property or any adjacent properties; (iii) caused or permitted, and Seller has received no notice and has no knowledge of, any substances or conditions on, under or affecting the property of any adjacent properties which may support any claim or cause of action, whether by a governmental agency or any other person or entity, under any applicable federal, state or local law, rule, ordinance or regulation, including without limitation, those related to Hazardous Substances. For the purpose of this Agreement, the terms **"Hazardous Substances"** and **"Release"** shall have the same meaning as forth in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Sections 9601 et seq.; provided, however, that the definition of Hazardous Substances shall also include petroleum and related by-products, hydrocarbons, radon, asbestos, urea formaldehyde, polychlorinated biphenyl compounds and any other substance considered hazardous to humans or the environment.

d.   Leases; Options. (i) There are no outstanding written or oral leases, easements and/or other types of agreement in any way affecting the Property that are not recorded in the Real Property Records of Georgetown County, (ii) no person or entity has any right with respect to all or any of the Property (whether by option to purchase, easement, right of first refusal, contract or otherwise) that may prevent or interfere with Buyer taking title to, and exclusive possession of, all of the Property at Closing (excluding the access easement for the benefit of Weehaw Plantation, adjacent to the Property), and (iii) Seller shall not enter into any new lease,

easement or other contract with respect to the Property during the pendency of this Agreement that is not terminable upon demand without Buyer's prior written consent, which may be given or withheld by Buyer in Buyer's reasonable discretion.

e.      No Notices. Seller has not received any notice of, and to the best of its knowledge, there are no (i) proposed special assessments, condemnation or changes in the roads adjacent to the Property; (ii) pending public improvements that will result in any charge being levied or assessed against, or a lien being created upon, the Property; or (iii) pending or threatened eminent domain or condemnation proceedings against or involving any portion of the Property or any adjacent parcel.

f.      Access. Seller has not received any notice of any existing or proposed plans to widen, modify or realign any street adjoining the Property, and the Property has full and free access to and from public highways, streets and roads. Seller has no knowledge of any pending or threatened proceeding by any governmental authority, or any other fact or condition, which would limit or result in the termination of the Property's access to and from such public highways, streets and road.

g.      Utility Availability. Public water, sanitary and storm sewer, electricity, gas and other required utilities (i) are available to the Property; (ii) enter the Property through adjoining public streets or, if passing through adjoining private land, do so in accordance with recorded public or private easements; and (iii) are serviced and maintained by the appropriate public or quasi-public entity.

h.      Utility District. The Property is not situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services.

i.      Pipelines. There are no transportation pipelines, including without limitation, pipelines for the transportation of natural gas, natural gas liquids, synthetic gas, liquified petroleum gas, petroleum or a petroleum product or hazardous substance located on, under or within the Property.

j.      Owners' Association. The Property is not subject to mandatory membership in a property owners' association.

k.      Litigation. There is no pending or threated litigation, arbitration, administrative action or examination, claim or demand whatsoever relating to the Property; and no attachments, execution proceedings, liens, assignments or insolvency proceedings are pending or threatened against Seller of the Property or contemplated by Seller.

l.      Performance under Leases and Service Contracts. During the pendency of this Agreement, Seller will perform its material obligations under all agreements that affect the Property.

m.      Insurance. During the pendency of this Agreement, Seller shall maintain all insurance Seller was carrying on the Effective Date.

    n.      Exclusive Rights. In consideration of Buyer's efforts and expenses required to perform its review of the Property, Seller agrees that it will not, either directly or indirectly, offer to sell any offers to purchase or negotiate for the sale or disposition of the Property during the pendency of this Agreement, unless clearly disclosed as a backup offer.

    o.      Foreign Person. Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended.

Seller shall fully disclose to Buyer, immediately upon its occurrence, any material change in facts, assumptions or circumstances of which Seller becomes aware prior to the Closing Date that may affect the representations and warranties set forth above. The representations and warranties of Seller contained herein shall survive the Closing and deliver of the Deed.

**7.**    **Miscellaneous.**

Plans and Approvals. Buyer shall have the right to file, at Buyer's expense, any and all applications and plans necessary to obtain building permits, any rezoning, subdivision (or the vacation of any existing subdivision or plat) and/or any other agreement, assurance, approval, or permit from any and all governmental authorities having jurisdiction over the Property that Buyer deems appropriate in connection with the intended purpose of the Property. Seller agrees to join in the execution of any application required in order to obtain any such agreement, assurance, permit or approval (or file such application individually if the relevant governmental authority shall so require). Seller further agrees to cooperate with Buyer or its nominee in all respects, including without limitation, attending and giving favorable testimony at any hearings on the petitions or applications, meeting with and providing information to public and private utilities and governmental and quasi-governmental entities, and otherwise working to obtain the agreements, assurances, approvals and permits required by Buyer or its nominee without additional cost or obligation to Buyer or its nominee. Buyer shall not seek a third and final reading on any rezoning of the Property until Buyer closes.

    a.      Notices and Deadline Dates. Any notice, request, demand, instruction or other document to be given or served hereunder or under any document or instrument executed pursuant to this Agreement shall be in writing and shall be (i) delivered personally, (ii) sent or by overnight express courier, postage prepaid, or (iii) sent by facsimile or electronically (email), provided there is proof of delivery, each addressed to the Parties at their respective addresses set forth above, and the same shall be effective upon receipt if delivered personally, by overnight courier or by facsimile or electronically (with proof of delivery). A Party may change its address for receipt of notices by service of a notice of such change in accordance herewith. If any deadline under this Agreement falls on a Saturday, Sunday or legal holiday (which por purposes of this Agreement shall be not be considered a "**business day**"), the deadline shall be extended to the next business day.

    If to Buyer:      We Do Good Work, LLC
                           Attn: Gregory Wilkins
                           955 Old Cherokee Road
                           Lexington, South Carolina 29072
                           Telephone:    (803) 606-2186

Email: gwilkins@svrealty.com

    With a copy to:

| | |
|---|---|
| If to Seller: | Georgetown Memorial Hospital |
| | Attn: Bruce Bailey |
| | Post Office Box 421718 |
| | Georgetown, South Carolina 29442 |
| | Telephone: (843) 527-7000 |
| | Email: bbailey@tidelandshealth.org |
| With a copy to: | Oxner & Stacy Law Firm, LLC |
| | Attn: Daniel W. Stacy, Jr. |
| | 90 Wall Street, Unit B |
| | Pawleys Island, South Carolina 29585 |
| | Telephone: (843) 235-6747 |
| | Email: dstacy@oxnerandstacy.com |

b. <u>Attorneys' Fees.</u> In the event either Parting brings an action at law or other proceeding permitted under the terms of this Agreement against the other Party in order to enforce or interpret any of the terms, covenants or conditions hereof or any instrument executed pursuant to this Agreement or by reason of any bread or default hereunder or thereunder, the Party prevailing in any such action or proceeding shall be paid all reasonable costs and expenses, including without limitation reasonable attorneys' fees, by the non-prevailing party.

c. <u>Assignment; Binding Agreement.</u> Seller may not assign this Agreement without the written consent of Buyer. Buyer may assign this Agreement to an affiliate or any interest herein with the consent of Seller which will not be unreasonably withheld. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and assignees. This Agreement constitutes the entire agreement between the Parties, and supersedes any and all prior agreements, arrangements and understanding between the Parties. This Agreement may only be amended by a written agreement executed by all of the Parties.

D-<u>BROKERS AND COMMISSIONS.</u> SELLER SHALL PAY ALL BROKER FEES AND COMMISSIONS AT CLOSING PURSUANT TO THE TERMS OF A SEPARATE AGREEMENT. SELLER INDEMNIFIES BUYER AGAINST, AND SHALL HOLD BUYER HARMLESS FROM, ANY AND ALL SUITS, CLAIMS, DEMANDS, JUDGEMENTS, DAMAGES, COSTS AND EXPENSES OF OR FOR ALL SUCK BROKER FEES AND/OR COMMISSIONS, AND SHALL PAY ALL COSTS OF DEFENDING ANY ACTION OR LAWSUIT

BROUGHT TO RECOVER ANY FEES OR COMMISSIONS INCURRED BY BUYER, INCLUDING REASONABLE ATTORNEYS' FEES.

E.      Effect of Termination.  This Agreement shall be void and of no further force and effect upon any proper termination under the terms hereof (other than terms herein that specifically provide that they survive the termination of this Agreement).

F.      Multiple Counterparts.  This Agreement may be executed in one or more counterparts, and all so executed shall constitute one and the same agreement, binding upon the Parties, and notwithstanding that all of the Parties are not signatories to the same counterparts.

G. **CHOICE OF LAW.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE UNITEDS STATES OF AMERICA AND THE INTERNAL LAWS OF THE STATE OF SOUTH CAROLINA, WITHOUT REGARD TO ITS CONFLICT RULES. VENUE AND JURISDICTION FOR ALL CLAIMS UNDER THIS AGREEMENT SHALL BE EXCLUSIVELY IN GEORGETOWN COUNTY IN THE STATE OF SOUTH CAROLINA

H.      Severability. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable, and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or its severance from this Agreement. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement, a legal, valid and enforceable provision that is as similar in terms to such illegal, invalid or unenforceable provision as is possible.

I.      INDEPENDENT CONSIDERATION.  NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH HEREIN, ONE HUNDRED AND 00/100 DOLLARS ($100.00) OF THE DEPOSITED EARNEST MONEY SHALL BE DEEMED INDEPENDENT CONSIDERATION AND NON-REFUNDABLE AND RETAINED BY SELLER UNDER ALL CIRCUMSTANCES, FOR AND IN CONSIDERATION OF SELLER'S EXECUTION OF THIS AGREEMEN T.

J.      Complete Understanding. This Agreement represents the complete understanding between the Parties as to the subject matter hereof and supersedes all prior negotiations ,statements and agreements, either written or oral, between the Parties. No inducements, representations, statements or agreements have been made or relied upon in the making of this Agreement, except those specifically set forth in this Agreement. Neither Party has any right to rely on any other prior or contemporaneous statements and/or agreements made by anyone concerning this Agreement that are not set forth herein.

8.      **Tax Credit and Bond Provisions.** Notwithstanding anything to the contrary set forth in this Agreement or otherwise:

a.      Tax Credits and Bonds. The Parties hereby acknowledges that Buyer intends to (i) apply for, syndicate and sell certain low-income housing tax credits (whether under state or federal law, collectively, "Tax Credits") with the assistance of the appropriate housing agency of the state in which the Land is located (the "Housing Agency")

       Seller Cooperation. Seller hereby agrees to assist Buyer, at Buyer's sole cost and expense, in obtaining and submitting such information as is necessary to apply for or obtain the Tax Credits and/or the Bond Financing to the extent such information is available to Seller and not to Buyer.

9. **Environmental Review.** Notwithstanding any provision of this Agreement, if U.S. Department of Housing and Urban Development (HUD) funds are used, including, but not limited to HOME funds, the Parties agree and acknowledge that this Agreement does not constitute a commitment of funds or site approval, and that such commitment of funds or approval may occur only upon satisfactory completion of an environmental review and receipt of a release of funds notice from the U.S. Department of HUD under 24 CFR Part 58. The Parties further agree that the provision of any federal funds to this project is conditioned on the determination to proceed with, modify or cancel the project based on the results of a subsequent environmental review. If no HUD funds are utilized in regard to this property, this provision shall be considered null and void.

10. Notwithstanding any provision of this Agreement, the parties hereto agree and acknowledge that this Agreement does not constitute a commitment of funds or site approval, and that such commitment of funds or approval may occur only upon satisfactory completion of an environmental review and receipt by the SC State Housing Finance and Development Authority of a release of funds from the U.S. Department of Housing and Urban Development under 24 CFR Part 58. The parties further agree that the provision of any funds to the project is conditioned on the Authority's determination to proceed with, modify or cancel the project based on the results of a subsequent environmental review.

[Signatures begin on the next page]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

Buyer:                                WE DO GOOD WORK, LLC
                                      a SOUTH CAROLINA limited liability company

                                      By: *Gregory Wilkins*
                                      Name: Gregory Wilkins
                                      Its: Managing Member

                                      Date: 1/12/2020

Seller:                               GEORGETOWN MEMORIAL HOSPITAL

                                      By: *[signature]*
                                      Name: Bruce P. Bailey
                                      Its: CEO

                                      Date: 1.13.21