UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MST, LLC, | ) | C/A No. 2:22-cv-00874-DCN |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Versus | ) | **PLAINTIFF'S AND THIRD-PARTY** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| North American Land Trust and Georgetown | ) | **DEFENDANT GEORGETOWN** |
| Memorial Hospital, | ) | **MEMORIAL HOSPITAL'S** |
| | ) | **COUNTERCLAIM AND THIRD-PARTY** |
| Defendants. | ) | **COMPLAINT [ECF-30] AND** |
| | ) | **INCORPORATED MEMORANDUM OF** |
| Georgetown Memorial Hospital, | ) | **LAW IN SUPPORT** |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| Versus | ) | |
| | ) | |
| MST, LLC, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |
| Georgetown Memorial Hospital, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| Versus | ) | |
| | ) | |
| James Murren and Heather Murren, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

Plaintiff, MST, LLC ("MST"), and Third-Party Defendants, James Murren and Heather

Murren (jointly the "Murrens"), by and through their undersigned counsel, hereby move pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the dismissal of the claims in the

Counterclaim and Third-Party Complaint, [ECF-30], of Defendant/Third-Party Plaintiff

Georgetown Memorial Hospital ("GMH" or the "Hospital").  As the moving parties, MST and the Murrens submit this Memorandum of Law in Support of their Motion to Dismiss.

The grounds for this Motion to Dismiss are that the 2008 Amendment to the Conservation Easement was ineffective in extinguishing the 1995 Conservation Easement on the Hospital Property as a matter of law, thereby entitling MST to dismissal of the Hospital's Counterclaim for a declaratory judgment that the 2008 Amendment was legally effective in removing the 1995 Conservation Easement from the Hospital Property.  Because the 2008 Amendment did not extinguish the Conservation Easement on the Hospital Property as a matter of law, MST and the Murrens are entitled to dismissal of the four other claims against them that all depend on the 2008 Amendment being legally effective in extinguishing the Conservation Easement on the Hospital Property.  As a further ground for dismissal of the Third-Party Complaint, the claims asserted therein against the Murrens do not fall within the type authorized by Rule 14, FRCP, because the Murrens are not vicariously responsible to the Hospital for the declaratory claim asserted in the Complaint.

For the reasons explained herein, this Motion to Dismiss should be granted.

## **PROCEDURAL HISTORY**

MST commenced this action against the Hospital and North American Land Trust ("NALT") with the filing of the Complaint on March 16, 2022. [ECF-1].  Both the Hospital and NALT moved to dismiss the complaint, asserting that MST lacked standing.  See [ECF-14 &15]. By order dated November 8, 2022, this Court denied their motions.  [ECF-29].  Thereafter, GMH filed an Answer, Counterclaim and Third-Party Complaint [ECF-30], and NALT filed an Answer and Counterclaim [ECF-31].

MST's Complaint seeks a declaration from this Court that the 2008 Amendment purporting to extinguish the perpetual Conservation Easement on the Hospital Property was legally ineffective and invalid. [Compl. ECF-1, at ¶39]. In its responsive pleading, the Hospital asserted what is effectively a mirror counterclaim against MST seeking the *opposite* declaration from this Court -- that the 2008 Amendment was legally effective in removing the Hospital Property from the Conservation Easement. [ECF-30 at ¶88]. But the Hospital does not stop there. It has ginned up a barrage of claims, almost all entirely "upon information and belief," that MST and the Murrens intentionally made false statements to the effect that the Conservation Easement was not extinguished on the Hospital Property and conspired with other members of the public to do the same, in response to an effort by the Hospital to have the property rezoned for development by Georgetown County. [see, e.g., ECF-30 at ¶¶ 68-84]. Based on these unsubstantiated allegations, the Hospital asserts claims for slander of title, intentional interference with prospective contractual relations, civil conspiracy, and unjust enrichment against not only the Plaintiff, MST, but also the Murrens personally even though they do not own Weehaw and there is no record whatsoever of their individual participation in the rezoning process.

By this Motion, MST and the Murrens seek dismissal of the alleged causes of action in the Hospital's Counterclaim and Third-Party Complaint.

## BACKGROUND AND ALLEGATIONS IN GMH'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT

On December 29, 1995, Larry and Judy Young ("Larry and Judy"), granted a Conservation Easement and Declaration of Restrictive Covenants (the "Conservation Easement") to Defendant NALT on their large property known as "Weehaw" just outside of Georgetown.

[ECF-30, Answer ¶¶ 7-8, Counterclaim, ¶ 22]; see [ECF Entry No. 1-1] (the "Conservation Easement").

To permanently preserve and protect the conservation values of the entire property encumbered by the Conservation Easement (the "Property"), and to obtain significant federal and state tax deductions for doing so, Larry and Judy imposed covenants and restrictions in the Conservation Easement protecting the conservation values of the Property "in perpetuity." [ECF-1-1, ¶13]. Consistent with this purpose and controlling federal law, the Conservation Easement recites that "… Grantor [the Youngs] and Grantee [NALT] desire to *perpetually* conserve the natural, scientific, educational, open space, and scenic resources of the Property." [ECF-1-1, 2] (double emphasis added). Larry and Judy again acknowledged the perpetual restriction of the Property in Article F(15)(d): "Grantor has been represented by counsel of Grantor's selection, and fully understands that Grantor is *permanently* relinquishing property rights which would otherwise permit the Grantor to have the full use and enjoyment of the Property." [ECF-1-1,11] (double emphasis added). In Article F (2), the Conservation Easement expressly states the parties' intent that it be construed restrictively: "The parties intend that this Declaration, which is by nature and character primarily prohibitive (in that the Grantor has restricted and limited the rights inherent in ownership of the Property[)], shall be construed at all times and by all parties to effectuate its purposes." [ECF-1-1, 8]

Additionally, Article F (10) of the Conservation Easement expressly states that:

… all of the covenants, easements and restrictions [therein] shall. . . be binding upon the parties hereto *and their respective heirs, successors and assigns. The term 'Grantor' used herein shall mean and include the above-named Grantor and any of its successors or assigns that are the legal owners of the Property or any part thereof*.

[ECF-1-1, 10] (double emphasis added).

Thus, the Hospital, as the successor to the Youngs, is bound by all of the covenants, easements, and restrictions in the Conservation Easement.

Article F (9) of the Conservation Easement provides that it may be amended upon mutual agreement of the Grantor and Grantee but only if the amendment meets certain criteria. [ECF-30, ¶27; ECF 1-1, p. 9-10]. The Conservation Easement contains two critical caveats with respect to any amendment:

> . . . [1] Grantee and Grantor shall mutually have the right. in their sole discretion, to agree to amendments to this Declaration **which are not inconsistent with the basic purpose of the Declaration** as stated in this document, provided [2] Grantee shall have no right or power to agree to any amendments hereto that would result in the [Conservation Easement] failing to qualify as a valid conservation easement under the Act, as the same may be hereafter amended, **or Section 170(h) of the Code as hereafter amended**.

[Id.] (double emphasis added).

As explained more fully below, the purported Amendment violated both prerequisites for amendments by violating the federal statute and regulations governing a conservation easement for it to qualify as a charitable conservation contribution (See, 26 U.S.C.A. § 170(h) and 26 C.F.R. § 1.170A–14) **and** by being entirely inconsistent with the basic purpose of the Conservation Easement, both as a matter of law.

In 2003, Larry and Judy Young conveyed approximately 680 acres of Weehaw including the land encumbered by the Conservation Easement to Sand Dunes Ocean Front Resort, LLC that, in turn, conveyed the property to Kyle and Jacqueline Young ("Kyle and Jacqueline" or the "Youngs") in 2004. [ECF-30, ¶ 28]. In 2008, Kyle and Jacqueline agreed to sell, and the Hospital agreed to buy, 56.75 acres of the property encumbered by the Conservation Easement that included almost all the acreage of the protected land along Highway 701 and Wedgefield Road that is visible to the public from the adjoining highways (the "Hospital Property").

To accommodate their business deal, the Youngs and NALT purported to release the 56.75 acres of the Property from the restrictions contained in the Conservation Easement. [ECF-30, ¶32]. The Hospital alleges the purported extinguishment of the Conservation Easement on the Hospital Property was supposedly "in exchange for further encumbering approximately 35 acres of waterfront property in Weehaw by giving up the right to develop five homesites, which were originally permitted to be constructed under the 1995 Conservation Easement." [ECF-30, ¶32] [ECF Entry No. 1-3]. As the allegation states and a review of the Amendment reveals, the Youngs did not encumber 35 acres of new land with the Conservation Easement but instead eliminated the reserved right to have five homesites within the Property already encumbered by the Conservation Easement. [ECF Entry No. 1-3].

On December 19, 2008, the Youngs, as owners of the Property and as "Grantor" of the Conservation Easement, and NALT, as "Grantee" of the Conservation Easement, executed an instrument titled Amendment to Conservation Easement and Declaration of Restrictive Covenants (the "Amendment") to accomplish these modifications to the Conservation Easement including its purported extinguishment on the Hospital Property. [ECF-30, ¶32; ECF-1-3]. The Youngs then conveyed the Hospital Property to the Hospital. Although the Amendment contains the recital that "it has been determined to the greatest degree of certainty possible, that neither the Grantor nor the Hospital nor Grantee will obtain any economic benefit from the accomplishment of the foregoing" [ECF Entry No. 1-3, p.3], the records of the Register of Deeds for Georgetown County reveal the Youngs in fact sold the Hospital Property to the Hospital, purportedly free of the easement restrictions, for $3,301,513.

In its Counterclaim and Third-Party Complaint, the Hospital seeks a declaratory judgment that the Amendment is valid and that the 56.75 acres of the Hospital Property were

6

released from the "easements covenants, restrictions, and prohibitions" set forth in the Conservation Easement. [ECF-30, Counterclaim ¶59]. The Hospital asserts that no provision of the Amendment results in the Conservation Easement failing to qualify as a valid conservation easement under the South Carolina Uniform Conservation Easement Act or Section 170(h) of the Code. [ECF-30, Counterclaim ¶66].

In addition to its counterclaim seeking a declaratory judgment that the arrangement of the Hospital, the Youngs, and NALT to try to extinguish the Conservation Easement on the Hospital Property was legally effective and valid, the Hospital counterclaims against MST and third-party claims against the Murrens for slander of title, interference with prospective contractual relations, civil conspiracy, and unjust enrichment. As explained herein, the Amendment purporting to extinguish the Conservation Easement is invalid as matter of law. Therefore, because the Amendment is invalid as matter of law, the Court should dismiss GMH's claim seeking a judicial declaration that the extinguishment of the Conservation Easement on the Hospital Property is valid. Furthermore, because the purported extinguishment is invalid as a matter of law, GMH's other claims, all of which are predicated upon the validity of the Amendment, also fail.

## STANDARD OF REVIEW

To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. Twombly, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Id. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal

quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citation and quotation marks omitted).

This Court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support [the legal conclusion]." Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001).

## LAW AND ARGUMENT

1. The Court should dismiss GMH's declaratory judgment claim because the purported extinguishment of the Conservation Easement on the Hospital Property by the Amendment is invalid as a matter of law.

GMH's Counterclaim seeks a declaratory judgment that the Amendment to the Conservation Easement is valid and released the 56.75 acres of land of the Hospital Property from the permanent restrictions of the 1995 Conservation Easement. [ECF-30, ¶88(b)]. According to the Hospital's allegations, the Amendment purports to make a swap. In return for the elimination of some of the reserved rights on approximately 35 acres already encumbered by the Conservation Easement, the Amendment purported to extinguish the Conservation Easement on the 56.75 acres. [ECF-30, ¶32(b)]. However, federal law is clear that a conservation easement cannot be extinguished on land in exchange for the further encumbrance of land already covered by the Conservation Easement or even through the encumbrance of new land via an agreement of

the parties; rather, the only means for removing land from a conservation easement is through a judicial proceeding.

The United States Court of Appeals for the Fourth Circuit has squarely addressed whether the Section 170(h) of the Internal Revenue Code allows land encumbered by a qualified conservation easement to be removed by merely amending the easement even where the amendment substitutes allegedly equivalent land that was previously unencumbered land. Belk v. Comm'r, 774 F.3d 221 (4th Cir. 2014). The Fourth Circuit unequivocally held the method NALT and the Youngs used to purportedly extinguish the Conservation Easement on the 56.75 acres is invalid and ineffective as a matter of law because it purported to eliminate the mandatory perpetuity of the Conservation Easement on the Hospital Property. Id. at 227 ("In short, the Code and Treasury Regulations together make clear that § 170(h)(2)(C) means what it says: a charitable deduction may be claimed for the donation of a conservation easement only when that easement restricts the use of the donated property in perpetuity."). The Fourth Circuit also explained that federal law provides only one method for extinguishing a conservation easement: a judicial proceeding.

In Belk, a married couple, the Belks, claimed a tax deduction of more than ten million dollars for donating a conservation easement over 184 acres of a golf course owned by their limited liability company (the "LLC"). Id. at 223. The LLC granted the conservation easement over the golf course in perpetuity but reserved certain rights, including the right of the LLC, as grantor, "to 'substitute an area of land owned by [it] which is contiguous to the Conservation Area for an equal or lesser area of land comprising a portion of the Conservation Area.'" Id. at 223. The conservation easement placed the following three conditions on the substitution right of the LLC: First, the grantee, a land trust, must agree that "the substitute property is of the same

or better ecological stability." Id. Second, the grantee must agree that "the substitution shall have no adverse effect on the conservation purposes." Id. Third, the grantee must agree that the fair market value of the substituted property is at least equal to that of the property originally subject to the Easement. Id. The Fourth Circuit explained this language "permits [the LLC], if the [Land] Trust agrees (and it cannot unreasonably withhold agreement), to swap land in and out of the Easement." Id. at 223. The court remarked that, in so doing, the conservation easement allowed the LLC "[to] shift the use restriction from one parcel to another, provided the Easement continues to cover at least 184 acres and to advance its stated conservation purpose." Id. 224.

The conservation easement also contained what the Belks described as a "savings clause," which circumscribed the ability of the land trust to agree to amendments to the conservation easement, stating: "the [Land] Trust 'shall have no rights or power to agree to any amendments … that would result in this Conservation Easement failing to qualify … as a qualified conservation easement under Section 170(h) of the Internal Revenue Code and applicable regulations." Id. at 224. As is evident, this "savings clause" is virtually identical to the wording in Article F (9) of the Conservation Easement in this case setting forth the two caveats for a valid amendment. [ECF-1-1, 8].

The IRS notified the Belks several years after they took the significant tax deduction that the conservation easement did not satisfy the requirements of Section 170 of the Internal Revenue Code and corresponding Treasury Regulations. Belk, 774 F.3d at 224. Id. The basis for the IRS's disqualification was the easement did not meet the fundamental legal requirement of perpetuity in 26 U.S.C. 170(h). The Tax Court (twice) reached the same conclusion as the IRS: "'because the conservation easement permits [the Belks] to change what property is subject

to the conservation easement, the use restriction was not granted in perpetuity,' as required by § 170(h)(2)(C)." Id.  The Belks then appealed directly to the Fourth Circuit, arguing that "the Code requires only a restriction in perpetuity on some real property, rather than the real property governed by the original easement."  Id. at 225.  "[B]ecause any property removed from the Easement must be replaced with property of equal value that is then subject to the same use restrictions," the Belks contended that the conservation easement satisfied the perpetuity requirement.  Id.

Affirming the Tax Court, the Fourth Circuit held that the easement in Belk did not qualify as a qualified conservation easement, "because the real property contributed to the Trust is not subject to a use restriction in perpetuity."  Id. at 226.  With respect to the Belks' argument that the Internal Revenue Code requires only a restriction in perpetuity on some real property, the court explained that "[t]he plain language of the Code belies this contention.  For the Code expressly provides that a 'qualified property interest' includes 'a restriction (granted in perpetuity) on the use which may be made of the real property.'"  Id. at 225 (emphasis in original). According to the Fourth Circuit,

> [t]he placement of the article 'the' before 'real property' makes clear that a
> perpetual use restriction must attach to a defined parcel of real property rather
> than simply some or any (or interchangeable parcels of) real property. For 'the' is
> a definite article, which lends to the noun that follows it a specific rather than
> general identity.

Id. at 225 (citing American Bus Ass'n v. Slater, 231 F.3d 1, 4–5 (D.C. Cir. 2000); Webster's Third New International Dictionary 2368 (1993)).  Additionally, the Fourth Circuit found that "[r]eading § 170(h)(1) and (2) together further makes clear that the defined parcel of land identified by the phrase 'the real property' is the real property to which the donated conservation easement initially attached."  Id. at 226 (double emphasis added).  "Thus, in order to qualify as a

qualified conservation contribution," remarked the court, "the parcel in which use must be restricted in perpetuity is 'the parcel' that must be contributed 'to a qualified organization … exclusively for conservation purposes." Id. at 226.

Turning to the specific easement before it, the Fourth Circuit found that the easement "fails to meet this requirement because the real property contributed to the Trust is not subject to a use restriction in perpetuity." Id. The court explained that "[t]he Easement purports to restrict development rights in perpetuity for a defined parcel of land, but upon satisfying the conditions in the substitution provision, the taxpayers may remove land from that defined parcel and substitute other land." Id. "Thus, while the restriction may be perpetual," the Fourth Circuit reasoned, "the restriction on 'the real property' is not." Id. The court concluded that, "[f]or this reason, the Easement does not constitute a qualified conservation contribution under § 170(h) . . . ." Id.

The Fourth Circuit explained that there is only one way to extinguish a qualified conservation easement. Id. at 225. The exclusive method is found in the Treasury Regulations.

> In the event that a 'subsequent unexpected change in the conditions surrounding the property ... make[s] impossible or impractical the continued use of the property for conservation purposes, the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding and all of the donee's proceeds ... from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution.

Id. (quoting Treas. Reg. § 1.170A–14(g)(6)(i) (emphasis in original)). "[A]bsent these 'unexpected' and extraordinary circumstances," said the Fourth Circuit, "real property placed under easement must remain there in perpetuity…" Id.[1]

---

[1] The Fourth Circuit also explained that permitting a taxpayer to claim a deduction for the donation of a conservation easement that permits substitutions would enable taxpayers to bypass several other requirements critical to the statutory and regulatory schemes governing the

Thus, under federal law, the only method for extinguishing a conservation easement on real property to which the easement initially attached is through a judicial proceeding where it is established that subsequent unexpected changes in the conditions surrounding the property have made impossible or impractical the continued use of the property for conservation purposes. Article F, Paragraph 6 of the Conservation Easement incorporates this judicial procedure for extinguishment. [ECF-1-1 at 8].

In the present case, the Hospital does not allege in its Counterclaim and Third-Party Complaint that the continued use of the Hospital Property for conservation purposes was made impossible or impractical by a subsequent unexpected change in conditions or that the restrictions on the Hospital Property were extinguished by judicial proceedings. Rather, the Hospital alleges that, via the consensual Amendment, the Youngs and NALT released 56.75 acres from the Conservation Easement, in exchange for eliminating five reserved building sites within the encumbered Property. [ECF-30 at ¶32]. NALT unilaterally "determined that amending the Conservation Easement in this manner would 'have a greater ecological benefit and further advance and protect the Conservation Purposes of the Conservation Easement than any loss of such from removal of the Hospital Parcel from the Conservation Easement....'" [ECF-30 at ¶34 (quoting the Amendment, ECF-1-3, at 2)]. This self-serving "finding" is not enough to validate the removal of the real property from the Conservation Easement as a matter of law.

---

deduction. Id. at 226. For example, permitting the parties to agree to substitutions would render "meaningless" the requirement that a taxpayer obtain a qualified appraisal to substantiate the easement's value at the time of its donation because the appraisal would no longer be an accurate reflection of the value of the donation. *Id*. The Fourth Circuit emphasized that it did not matter that the Belk easement required that the removed property be replaced with property that the land trust holding the easement deemed to be of "equal or greater value" because "the purpose of the

The Hospital's pleading admits that the purported extinguishment of the Conservation Easement on the Hospital Property in the Amendment was not the result of the process set forth in Treasury Regulation Section 1.170A–14(g)(6)(i), which the Fourth Circuit recognizes as the exclusive method for extinguishing a conservation easement on real property encumbered by it. The Amendment purports to do exactly what the Fourth Circuit held to be unlawful – the extinguishment of the Conservation Easement on 56.75 acres with the approval of the holder, rather than in a judicial proceeding where it is determined that continued use of the property for conservation purposes has become impossible or impractical.  [ECF-30 at ¶32].

The extinguishment supposedly effected by the 2008 Amendment would render the Conservation Easement similar to the easement in Belk, which the Fourth Circuit held "does not constitute a qualified conservation contribution under § 170(h)."  As such, NALT was not authorized to agree to the Amendment because, as the Hospital recognizes in its pleading, the Conservation Easement plainly states that "'. . . Grantee shall have no right or power to agree to any amendments hereto that would result in the [Conservation Easement] failing to qualify as a valid conservation easement under . . . Section 170(h) of the Code as hereafter amended.'" [ECF-30 at ¶27].  As a matter of law, NALT did not have the power to agree to the Amendment, and the purported extinguishment of the Conservation Easement by the Amendment was invalid and did not remove the Hospital's 56.75 acres from the Conservation Easement.  For this reason, the Hospital's counterclaim for declaratory judgment that the Amendment legally accomplished the removal of the Hospital Property from the Conservation Easement must be dismissed for failure to state a claim upon which relief can be granted.

---

appraisal requirement is to enable the [IRS] Commissioner, *not* the donee or donor, to verify the value of a donation." Id.

Finally, and in the alternative, the Amendment fails for a second separate reason because extinguishment of the Conservation Easement on the Hospital Property would be inconsistent with the basic purpose of the Conservation Easement as a matter of law. The basic purpose of the Conservation Easement is "to preserve the Property predominantly in its present condition, and to protect or enhance the Property's environmental systems." Article B (9) [ECF 1-2, p. 5] (emphasis added). The Property's present condition includes but is not limited to "important, ecologically stable habitat for flora and fauna," and "valuable scenic vistas." See [ECF 1-2, pp. 1-2].

A purported "amendment" that releases 56.75 acres of the Property from the Conservation Easement to allow for its development and consequent destruction of its "important, ecologically stable habitat for flora and fauna," and "valuable scenic vistas" is fundamentally inconsistent with the basic purpose of the Conservation Easement and is therefore prohibited. The basic purpose of the Conservation Easement (and, indeed, any federally deductible perpetual conservation easement) is to protect the conservation values of "the real property to which the donated conservation easement initially attached," and to do so unless and until it can be shown to the satisfaction of a court in a judicial proceeding that continuing to use the property for conservation purposes has become impossible or impractical. See Belk at 225-26.

### 2. GMH's remaining counterclaims and third-party claims are predicated on the incorrect assertion that the Amendment is valid and should be dismissed.

In addition to its declaratory judgment action, GMH asserts four claims against MST LLC and the Murrens. Its claims include slander of title, [ECF-30 at ¶¶67-72], intentional interference with prospective contractual relations, [id. at ¶¶73-79)], civil conspiracy, [id. at

¶¶80-84], and unjust enrichment [Id. ¶¶85-88].  Each claim is predicated upon GMH's incorrect assertion that the Amendment was valid.  Those claims should be dismissed, accordingly.

> **A.**    **GMH fails to state a slander of title claim because it does not allege a false statement as a matter of law.**

According to the Hospital, MST and, upon information and belief, the Murrens communicated their position in this lawsuit — that the Conservation Easement was not validly removed from the Hospital Property – to the Georgetown County Council and members of the public.  Specifically, the Hospital alleges, "MST acting through or at the directions of the Murrens, published false statements to the Georgetown County Council and other members of the public that the Amendment 'violated the federal law governing conservation easements and was entirely invalid and ineffective' and that the 56.75 acres of land that made up the majority of the Hospital Property 'remain fully restricted and encumbered by the Conservation Easement.'" [ECF-30 at ¶68].  The Hospital contends that these statements were pretextual, that they were intended to prevent rezoning of the district that encompasses the Hospital's land encumbered by the Conservation Easement, and that they were made by MST and the Murrens "for their own economic benefit in an effort to have the Amendment declared invalid so that they could develop five dwellings on the Weehaw property and to prevent any perceived loss in property value that would result in the Hospital Property being developed . . . ."  [ECF-30 at ¶¶69-70].  By publishing the statements, the Hospital alleges that MST and the Murrens have "clouded title to the Hospital Property," "discouraged potential buyers," and "diminished [the] value of the Hospital Property in the eyes of third parties . . . ."  [ECF-30 at ¶¶72].  Upon these allegations, the Hospital asserts a claim against MST and the Murrens for slander of title.  [ECF-30 at ¶¶67-72].

While MST and the Murrens will vigorously dispute all these allegations, including the assertion of the involvement of the individual Murrens, which is completely false, if the Court were to allow the slander of title and other claims of the Hospital to proceed, for purposes of this Motion the well pleaded allegations must be taken as true. Even so, they do not state a claim.

To state a cognizable claim for slander of title under South Carola law, the plaintiff must allege, inter alia, that the defendant made a false statement. See Huff v. Jennings, 319 S.C. 142, 149, 459 S.E.2d 886, 891 (Ct. App. 1995) (including a false statement as an element of the common law action for slander of title). The slander of title claim is predicated on alleged statements that the Conservation Easement still applied to the Hospital Property and the Amendment was legally ineffective to extinguish it. Such alleged statements had they occurred would be true as a matter of law. Therefore, the Hospital does not allege a statement made by MST or the Murrens that is false. MST's claim against them for slander of title must be dismissed for failure to state a claim.

**B.    GMH fails to state a claim for intentional interference with prospective contractual relations as a matter of law because it has not alleged an improper purpose or method and because the First Amendment to the United States Constitution fully protects the alleged statements of MST and the Murrens concerning a zoning matter to be acted upon by local government.**

The Hospital alleges that it had entered into a contract to sell 16 acres of the Hospital Property contingent on rezoning of the Hospital Weehaw PD. [ECF-30 at ¶¶ 74-75]. At the third reading of an application to rezone the property, the Hospital contends that MST and the Murrens allegedly published the same statements discussed above, regarding the invalidity and ineffectiveness of the Amendment, and "conspired and encouraged" other members of the public to do the same, in an effort to stop the rezoning. [ECF-30 at ¶¶76-77]. The Hospital alleges, again, that MST and the Murrens "engaged in these actions for their own economic benefit . . . ."

[ECF-30 at ¶78]. As a result of their actions, the Hospital contends that its contract to sell the Hospital Property was terminated. [ECF-30 at ¶79]. Based on these allegations, the Hospital asserts a claim against MST and the Murrens for intentional interference with contractual relations. [ECF-30 at ¶¶73-79].

Once again, MST and the Murrens stand ready to show that these assertions are unfounded, inaccurate, and false, but recognize for purposes of their Motion they must be accepted as alleged.

To state a claim for intentional interference with prospective contractual relations, a plaintiff must allege the following elements: "(1) the intentional interference with the plaintiff's potential contractual relations, (2) for an improper purpose or by improper methods, and (3) causing injury to the plaintiff." United Educ. Distributors, LLC v. Educ. Testing Serv., 350 S.C. 7, 14, 564 S.E.2d 324, 328 (Ct. App. 2002). "Generally, there can be no finding of intentional interference with prospective contractual relations if there is no evidence to suggest any purpose or motive by the defendant other than the proper pursuit of its own contractual rights with a third party." Southern Contracting, Inc. v. H.C. Brown Constr. Co., 317 S.C. 95, 102, 450 S.E.2d 602, 606 (Ct.App.1994); see also Eldeco, Inc. v. Charleston County School Dist., 642 S.E.2d 726, 732, 372 S.C. 470, 482 (2007) (explaining that the exercise of a legal right does not constitute an improper motive or improper purpose and stating that there was no evidence to suggest any purpose or motive by the defendant other than the protection of his rights).

Here, the Hospital's pleadings are devoid of any allegation showing an improper purpose or method. The Hospital's contention that MST and the Murrens made statements that the Amendment was invalid and ineffective in extinguishing the Conservation Easement on the Hospital Property, and encouraged others to do the same, does not constitute an allegation of

improper purpose or methods.   The purported removal of the Conservation Easement on the Hospital Property through the Amendment was ineffective as a matter of law.   Accordingly, the Hospital's unsubstantiated allegation that MST and Murrens publicly contested the validity of the Amendment is nothing more than an allegation that they exercised their legal rights to speak out and to advance the conservation purposes of the Conservation Easement that covers both the Hospital Property and MST's property.   A party's pursuit of its own contractual rights with a third party, here MST's rights under the Conservation Easement with NALT, cannot be the basis for a claim for tortious interference with prospective contractual relations.   Eldeco, Inc. v. Charleston County Sch. Dist., 372 S.C. 470, 482, 642 S.E.2d 726, 732 (2007).   Nor can the Hospital establish improper purpose or improper motive since the Amendment did not extinguish the Conservation Easement on the Hospital Property as a matter of law.

Finally, any alleged comments at a public meeting or to persuade persons to be in favor of or against an item being considered by a public body, such as Georgetown County Council's consideration of the zoning change, are free speech fully protected by the First Amendment of the United States Constitution.   See U.S. Const., am. I ("Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances").   The United States Supreme Court has held that individual citizens and private organizations are immune from liability associated with their petitioning of governmental bodies.   See City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 366, (1991).   For example, a neighborhood civic association that actively lobbies local government is immune from liability associated with their petitioning of governmental bodies.   Gibson v. City of Alexandria, 855 F. Supp. 133, 135 (E.D. Va. 1994).   In making this

point, the District Court in <u>Gibson</u> discussed <u>Christian Gospel Church, Inc. v. San Francisco</u>, 896

F.2d 1221 (9th Cir. 1990):

> In <u>Christian Gospel Church</u>, a neighborhood civic association lobbied a local planning commission to deny a use permit to the plaintiff church. The church [] sued the city planning and zoning commissions and other governmental entities, as well as the neighborhood association and one of its individual members, for violating the church's civil rights. In rejecting this cause of action, the Ninth Circuit noted that the neighborhood association was ***doing what citizens should be encouraged to do***, taking an active role in the decisions of government. This right to petition is so important to our system of government that the courts have shielded citizens from liability even when the position promoted was wrongful.

<u>Gibson,</u> at 135 (internal citations and quotations omitted) (double emphasis added).

Thus, for these reasons, the Hospital's claim of intentional interference with prospective

contractual relations fails as a matter of law.

### C.    The Hospital fails to state a claim for civil conspiracy because the allegations merely reallege other claims asserted by the Hospital

The Hospital alleges a conspiracy claim based on recycled allegations that MST and the

Murrens stated that the Amendment was invalid because it violated federal law governing

conservation easements and encouraged other residents to make similar statements.  <u>See</u> [ECF-

30 at ¶81].  GMH again contends that the purpose of the conspiracy was to injure the Hospital by

preventing the sale of the Hospital Property, [ECF-30 at ¶82], and that MST and the Murrens

engaged in the conspiracy to develop five dwellings on Weehaw and protect its property value.

[ECF-30 at ¶83].  As a result, the Hospital alleges that it lost its contract to sell its property,

which has suffered diminished value.  [ECF-30 at ¶84].

To state a cognizable claim for civil conspiracy, a plaintiff must plead the following

elements: (1) the combination or agreement of two or more persons, (2) to commit an unlawful

act or a lawful act by unlawful means, (3) together with the commission of an overt act in

furtherance of the agreement, and (4) damages proximately resulting to the plaintiff."  <u>Jinks v.</u>

Sea Pines Resort, LLC, No. 9:21-cv-00138-DCN, 2021 WL 4711408, at * 3 (D.S.C. Oct. 8, 2021) (citing Paradis v. Charleston Cty. Sch. Dist., 433 S.C. 562, 861 S.E.2d 774, 780 (S.C. 2021)).  Importantly, "a claim for civil conspiracy must allege additional facts in furtherance of a conspiracy rather than reallege other claims within the complaint."  Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (2009), overruled on other grounds by Paradis v. Charleston Cnty. Sch. Dist., 861 S.E.2d 774 (S.C. 2021)  Stated differently, "'[w]here the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.'"  Todd v. S.C. Farm Bureau Mut. Ins. Co., 278 S.E.2d 607, 612 (S.C. 1981) (quoting 15A C.J.S. Conspiracy § 33, at 718), overruled on other grounds by Paradis, 861 S.E.2d at 780; see also Kuznik v. Bees Ferry Assocs., 538 S.E.2d 15, 21 (S.C. Ct. App. 2001) ("Because [the third-party plaintiff] . . .  merely realleged the prior acts complained of in his other causes of action as a conspiracy action but failed to plead additional facts in furtherance of the conspiracy, he was not entitled to maintain his conspiracy cause of action.").  This rule, that additional facts in furtherance of the conspiracy must be pleaded, "is a unique feature of the tort of civil conspiracy."  Kuznik v. Bees Ferry Assocs., 342 S.C. 579, 610, 538 S.E.2d 15, 31 (Ct. App. 2000).[2]

---

[2]  In Land v. Barlow, the District Court explained that the Paradis decision abolished only the special damages element of a civil conspiracy claim, not the requirement that "a plaintiff must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged of in the complaint." No. 2:21-CV-1883-RMG, 2021 WL 5997984, at *5 (D.S.C. Dec. 20, 2021) (J. Gergel) (citing Jinks v. Sea Pines Resort, LLC, No. 9:21-CV-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021) ("The parties do not argue in their supplemental briefings that Paradis abolished this pleading requirement, and the court is satisfied that it did not.") and Paradis, 861 S.E.2d at 779–80 (explaining that the court in Todd "correctly concluded the civil conspiracy claim failed as a matter of law" where the "only wrongful acts alleged were those for which damages had already been sought" and "the plaintiff's repetition of the same acts as the prior claims was insufficient to salvage the claim")).

In the present case, the Hospital's civil conspiracy claim is based on alleged statements about the validity of the Amendment that the Hospital contends were made to halt the rezoning and sale of the Hospital Property, enable MST to build 5 homes on Weehaw, and protect Weehaw's property value.  As discussed above, the Amendment was legally invalid in removing the Hospital Property from the Conservation Easement and the allegations that statements to such effect were made do not constitute allegations of an unlawful act or a lawful act by unlawful means.  Moreover, the Hospital's conspiracy claim is based on the same prior acts of which the Hospital complains in support of its claims for slander of title and intentional interference with prospective contractual relations.  Compare [ECF-30 at ¶¶68, 76-77 to ¶¶81].  As such, the Hospital fails to state a claim for civil conspiracy because it alleges neither a combination or agreement among MST or the Murrens to commit an unlawful act, or a lawful act by unlawful means, nor additional facts in furtherance of the alleged conspiracy.

**D.    GMH's unjust enrichment claim fails because it has not alleged a benefit conferred by GMH upon MST or the Murrens.**

The Hospital alleges that, "[b]y making the false publications referenced above, MST and the Murrens have increased the value of Weehaw and simultaneously diminished the value of the Hospital Property."  See [ECF-30 at ¶86].  According to the Hospital, "it is inequitable and unjust for MST and the Murrens to realize the benefit of its false publications without compensating GMH for the benefit MST and the Murrens received and for the harm caused to GMH." Therefore, the Hospital asserts a claim of unjust enrichment against MST and the Murrens.

As this Court has explained.

"Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." Dema v. Tenet Physician Servs.-Hilton Head, Inc., 383 S.C. 115, 678 S.E.2d 430, 434 (2009). To succeed on an unjust enrichment claim, a plaintiff must prove: "(1) [a] benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." Myrtle Beach Hosp., Inc. v. City of Myrtle Beach, 341 S.C. 1, 532 S.E.2d 868, 872 (2000). "The South Carolina Supreme Court defines benefits as 'goods or services.'" Quintech Sec. Consultants, Inc. v. Intralot USA, Inc., 2011 WL 5105446, at *4 (D.S.C. Oct. 27, 2011) (citing Gignilliat, 684 S.E.2d at 764).

J.R. v. Walgreens Boots All., Inc., 470 F. Supp. 3d 534, 562 (D.S.C. 2020), aff'd, No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021).

Here, GMH does not allege that it conferred a benefit upon MST or the Murrens. Rather, GMH alleges that MST and the Murrens made public statements disagreeing with the validity and effectiveness of the Amendment to extinguish the Conservation Easement on the Hospital Property. The allegations do not concern a good or service and, therefore, no "benefit," as that term is viewed under South Carolina law. Further, assuming as true that such statements challenging the validity and effectiveness of the Amendment have increased the value of Weehaw, solely for purposes of the pending Motion, the Hospital did not confer that alleged increase in property value upon MST and the Murrens. Additionally, the Hospital does not allege that MST or the Murrens realized the benefit of the alleged increase in property value. Finally, should this Court determine that the Amendment was invalid in removing the Hospital Property from the Conservation Easement, it would not be inequitable for MST or the Murrens to retain any benefit flowing from the Court's ruling without paying the Hospital or, for that matter, any other party. Accordingly, the Hospital has failed to allege a claim for unjust enrichment.

**3**.    **GMH's Third-Party Claims against the Murrens are not viable under Rule 14 because they do not allege derivative or secondary liability**.

The only claim asserted by MST in the Complaint is one for a declaratory judgment. [Compl., ECF-1 at ¶¶31-39].  MST seeks a judicial decree that "the Amendment is invalid and the Hospital Easement property is subject to and encumbered by all the terms and conditions of the Conservation Easement."  [Id. at ¶ 39(a)].  In response, the Hospital asserts four third-party claims against James and Heather Murren, whom the Hospital alleges are the members of Plaintiff MST, the limited liability company that owns Weehaw.  The Hospital asserts against the Murrens, as Third-Party Defendants, claims for slander of title, intentional interference with prospective contractual relations, civil conspiracy, and unjust enrichment.  In addition to the reasons explained supra, these claims must be dismissed because, as asserted against the Murrens, they are not proper third-party claims. [3]

Rule 14 of the Federal Rule of Civil Procedure provides that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Rule 14(a)(1), FRCP.  As explained by this District Court, Rule 14 requires derivative or secondary liability:

> The third-party statute does not contemplate an institution of a new cause of action against a third-party defendant in which the third-party defendant is liable to the defendant on a cause of action independent of the original cause of action; rather, the statute intends that the third-party defendant be liable to the defendant

---

[3] The Murrens contend that the Hospital's claims against them, as third-party defendants, are also improper because the underlying Complaint does not seek monetary damages but rather a declaratory judgment. As such, this case does not involve a claim in which the Hospital, as the original defendant, may be "liable" to Plaintiff MST, and therefore, the plain language of Rule 14 does not permit the Hospital to assert any third-party claims. While the Murrens recognize that in some cases certain third-party claims have been allowed in declaratory judgment actions, see Endurance Am. Ins. Co. v. HAT Invs. LLC, No. CV 7:18-3162-HMH, 2019 WL 13096092, at *3 (D.S.C. Nov. 13, 2019), this case is distinguishable from those cases. If the Murrens are not made a party to the action, an adverse ruling on the declaratory judgment claim cannot cause the Hospital to suffer a loss for which the Murrens are responsible.

for such damages for which the defendant may be liable to the plaintiff. See West Point–Pepperell, Inc. v. Bradshaw, 377 F.Supp. 154, 159 (D.C.Ala.1974). As such, a third-party defendant's liability under Rule 14 must be secondary or derivative to the defendant's liability to the original plaintiff. Scott v. PPG Indus. Inc., 920 F.2d 927, 1990 WL 200655, *3 (4th Cir.1990). Black's Law Dictionary defines derivative liability as "liability for a wrong that a person other than the one wronged has a right to redress." Black's Law Dictionary 926 (7th ed.1999). Secondary liability is defined as "liability that does not arise unless the primarily liable party fails to honor its obligation." Id. As a Virginia district court explained in Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstner Assoc., Inc., 117 F.R.D. 576 (E.D.Va.1987), a third-party claim is only viable "where a proposed third-party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third-party defendant is derivatively liable and must reimburse me for all or part ... of anything I must pay plaintiff.'" 117 F.R.D. at 578; see Tyner, 233 F.R.D. at 463.

Laughlin v. Dell Fin. Servs., L.P., 465 F. Supp. 2d 563, 566 (D.S.C. 2006).

In the present case, the Hospital does not allege that, to the extent the Hospital may be liable to Plaintiff MST, the Hospital's liability is derived from or secondary to James and Heather Murren's liability to MST.  Rather, the Hospital seeks to recover *its* alleged damages from the Murrens, not for its alleged liability for MST's damages.  The Hospital's damages are independent of the Plaintiff MST's single cause of action for declaratory judgment.  In other words, in asserting third-party claims against the Murrens, the Hospital is not saying, "If the Hospital is liable to MST, then its liability is only technical or secondary or partial, and the Murrens are derivatively liable and must reimburse the Hospital for all or part of anything it must pay MST."  To the contrary, the Hospital is saying, "the Murrens are liable to the ***Hospital*** because MST has challenged the Amendment."  The Hospital's third-party claims against the Murrens do not allege derivative or secondary liability.  As a matter of law, these claims are not viable under Rule 14 and must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, MST and the Murrens respectfully request that this Court grant their Motion to Dismiss and enter an Order dismissing Georgetown Memorial Hospital's counterclaim against MST and Third-Party Complaint against the Murrens with prejudice.

/s G. Trenholm Walker
**G. Trenholm Walker (Fed ID# 4487)**
Direct: (843) 727-2208
Email:  Walker@WGLFIRM.com
**John P. Linton, Jr. (Fed ID# 11089)**
Direct: (843) 727-2252
Email:  Linton@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct: (843) 727-2224
Email:  Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
<u>Mail:</u>    P.O. Drawer 22167, Charleston, SC 29413
<u>Office</u>: 66 Hasell Street, Charleston, SC 29401
<u>Phone</u>: (843) 727-2200

***ATTORNEYS FOR THE PLAINTIFF MST, LLC AND THIRD-PARTY DEFENDANTS JAMES MURREN AND HEATHER MURREN***

February 3, 2023
Charleston, South Carolina