**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MST, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:22-cv-00874-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| NORTH AMERICAN LAND TRUST and | ) | |
| GEORGETOWN MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| GEORGETOWN MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MST, LLC, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| _____ | ) | |
| | ) | |
| GEORGETOWN MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES MURREN and HEATHER MURREN, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |

This matter is before the court on plaintiff MST, LLC ("MST") and third-party defendants James Murren and Heather Murren's (the "Murrens") (collectively with MST, the "movants") motion to dismiss. ECF No. 37. For the reasons set forth below, the court grants the motion to dismiss without prejudice.

1

## I.  BACKGROUND

MST brought this action for a declaratory judgment against Georgetown Memorial Hospital (the "Hospital") and defendant North American Land Trust ("NALT") (collectively, "defendants") regarding property in Georgetown County, South Carolina known as Weehaw Plantation ("Weehaw").  ECF No. 1, Compl. ¶¶ 6–7.

MST purchased Weehaw from Kyle N. Young and Jaqueline M. Young on June 16, 2010.  Compl. ¶ 6.  Fifteen years earlier, on December 29, 1995, the prior owners of Weehaw, Larry and Judy Young (the "Youngs"), granted NALT a Conservation Easement and Declaration of Restrictive Covenants (the "Conversation Easement").  Id. ¶ 7.  The Conservation Easement perpetually encumbers Weehaw, as well as approximately 56.75 acres currently owned by the Hospital (the "Hospital Easement Property") that was subdivided from Weehaw prior to MST's ownership.  Id. ¶ 8.  The Conservation Easement recites the environmental, conservation, and open space values of the encumbered property, and includes its important role as an ecologically stable habitat for flora and fauna, as well as for the endangered Red-cockaded Woodpeckers.  Id. ¶¶ 10–12.  The owners of the property recognized it as a valid easement—the Youngs claimed a qualified conservation contribution on their state and federal tax return, which reduced their taxable income and hence their income taxes, on the basis that the Conservation Easement met the requirements of state and federal law, including 26 C.F.R. § 1.1170A–14, Treas. Reg. § 1.170A-14.  Id. ¶ 16.

Years later, the Youngs and NALT attempted to release the Hospital Easement Property from the Conservation Easement by an amendment dated December 19, 2008 (the "Amendment").  Id. ¶ 17.  Defendants assert this release was in exchange for further

encumbering approximately thirty-five acres of waterfront property in Weehaw and giving up the right to develop five homesites, which were originally permitted to be constructed under the Conservation Easement.  ECF No. 14 at 3.  Shortly before that amendment, Georgetown County zoned the hospital's property (the "Hospital Tract"), including the Hospital Easement Property, as a planned development district that permits only hospital and medical related uses.  Compl. ¶ 20.  In Spring 2021, the Hospital sought to amend the zoning of the planned development district to allow a large multifamily affordable housing project on part of the Hospital Tract, including a portion of the Hospital Easement Property.  Id. ¶ 21.  MST asserts that the Hospital no longer intends to develop the Hospital Tract for hospital or medical offices; instead, it entered a purchase and sale agreement with a multifamily development company, FourSix Development, to sell it sixteen acres of the Hospital Tract, including a portion of the Hospital Easement Property, contingent upon the property's rezoning.  Id. ¶ 23.  MST and neighboring properties opposed the rezoning and on May 25, 2021, at the third public reading of the zoning amendment, the amended rezoning failed to pass.  ECF No. 14 at 4.  As a result, the Hospital's contract to sell the hospital property for affordable housing fell through. Id. at 5.

On March 16, 2022, MST filed a complaint seeking a declaratory judgment to establish that the Conservation Easement, once granted, encumbers the property in perpetuity as a matter of law.  Compl.  On November 22, 2022, the Hospital answered the complaint and filed a third-party complaint against the Murrens[1] and a counterclaim

---

[1] The Hospital alleges that the Murrens are members of MST, the limited liability company that owns Weehaw.  ECF No. 30, at 9, 3d Party Compl. ¶¶ 5–6.

against MST.  ECF No. 30.  That same day, NALT also answered the complaint and filed

a counterclaim against MST.  ECF No. 31.  On February 3, 2023, MST and the Murrens

filed a motion to dismiss the Hospital's counterclaim and third-party complaint,

respectively.  ECF No. 37.  On March 3, 2023, the Hospital responded in opposition,

ECF No. 43, as did NALT, ECF No. 44, which only MST replied to on March 20, 2023,

ECF No. 48.  The court held a hearing on the motions on May 10, 2023.  ECF No. 52.

As such, the motion is fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be

granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588

F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v.

Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule

12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the

plaintiff can prove no set of facts that would support his claim and would entitle him to

relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When

considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded

allegations and should view the complaint in a light most favorable to the plaintiff.

Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999).  "To survive a motion to dismiss,

4

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

MST and the Murrens move this court to dismiss the Hospital's claims in its counterclaim and third-party complaint, ECF No. 30, for failure to state a claim. ECF No. 37. Specifically, the movants argue that since the Amendment did not extinguish the Conservation Easement on the Hospital Property as a matter of law, the court must dismiss the claims stemming from that incorrect premise.[2] Id. at 15–23. As an alternative ground for relief, the Murrens argue that because claims against the Murrens do not fall within the type authorized by Fed. R. Civ. P. 14, the third-party complaint must be dismissed. Id. at 24–25. The court starts by examining the Murrens' procedural argument before considering whether the Hospital has plausibly stated a claim for relief for each of its counterclaims and third-party claims.

### A. Fed. R. Civ. P. 14

The Murrens argue that the third-party complaint levied claims beyond the scope of Fed. R. Civ. P. 14 such that all third-party claims against the Murrens are barred. ECF

---

[2] Movants challenge all counterclaims and third-party claims raised by the Hospital: (1) a declaratory judgment against MST that the Amendment is valid and released the encumbered acres of the Hospital Property, ECF No. 30 ¶¶ 57–66; (2) slander of title brought against MST and the Murrens, id. ¶¶ 67–72; (3) intentional interference with prospective contractual relations brought against MST and the Murrens, id. ¶¶ 73–79; (4) civil conspiracy brought against MST and the Murrens, id. ¶¶ 80–84; and (5) unjust enrichment brought against MST and the Murrens, id. ¶¶ 85–88.

No. 37 at 24.  First, the Murrens explain that Rule 14 requires the Hospital to show derivative or secondary liability, meaning if properly pleaded, the third-party defendants—the Murrens—are liable to the defendant Hospital for such damages for which the defendant may be liable to the plaintiff MST.  Id. at 25.  But that is not the case here since the Hospital seeks to recover its own damages from the Murrens, not for its alleged liability for MST's damages.  Id.  Second, the Murrens emphasize that the underlying complaint does not seek monetary damages but rather a declaratory judgment, meaning there is not a clear scenario where the Hospital may be "liable" to MST.  Id. at 24 n.3.  The Murrens argue that since there are no damages from which secondary liability may be derived, third-party claims should be barred.  Id.

In response, the Hospital appears to concede that its third-party claims were not properly brought pursuant to Rule 14 and instead explains that "misjoinder of parties is not a ground for dismissing an action," citing to Rule 21.  ECF No. 43 at 20 (citing Fed. R. Civ. P. 21).  Specifically, the Hospital argues that though it agrees that its claims against the Murrens are not technically third-party claims under Rule 14, it argues that they are nevertheless valid counterclaims under Rules 13(h) and 20(a)(2) and therefore should not be dismissed.[3]  Id.  In reply, the Murrens argue that precedent from the Fourth Circuit holds that third-party claims not based in derivative or secondary liability must be dismissed.  ECF No. 48 at 17–18.  Moreover, to the extent that the Hospital has cited

---

[3] In explanation, Fed. R. Civ. P. 13(h) explains that Rules 19 and 20 govern the addition as a party to a counterclaim or crossclaim and Fed. R. Civ. P. 20(a)(2) sets forth that "persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  To reiterate, the Murrens are purportedly members of the limited liability corporation MST.

caselaw saying otherwise, that caselaw is from a district court outside of this circuit and concerns facts that are easily distinguishable from the instant case. Id. (describing Crew Tile Distrib., Inc., v. Porcelanosa L.A., Inc., 2016 WL 8608448 (D. Colo. June 23, 2016)). As such, the Murrens reiterate that all third-party claims brought against them must be dismissed.

Rule 14 of the Federal Rules of Civil Procedure provides that a defendant, "as a third-party plaintiff," may bring an action upon a "person not a party to the action who is or may be liable to the third-party plaintiff for all or part of plaintiff's claim." Fed. R. Civ. P. 14(a). This rule is to be "liberally construed" to achieve its purpose of "accomplish[ing] in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." United States v. Acord, 209 F.2d 709, 712 (10th Cir. 1954). A third-party defendant's liability under Rule 14 must be secondary or derivative to the defendant's liability to the plaintiff. Scott v. PPG Indus. Inc., 1990 WL 200655, *3 (4th Cir. Dec. 13, 1990); LM Ins. Corp. v. Contingent Res. Sols., LLC, 2015 WL 12843180, at *2 (D.S.C. Apr. 2, 2015) ("[A] third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied."). The Murrens are correct: the Hospital's third-party claims do not state any legal or factual grounds under which the Murrens would be liable for indemnification, subrogation, contribution, express or implied warranty, or any other theory that would support a third-party action under Rule 14.

Importantly, the Hospital's response in opposition concedes that its claims were improperly brought pursuant to Rule 14 and asks the court to construe them as if they were properly pleaded pursuant to Rules 13(h) and 20(a)(2).  ECF No. 43 at 20–22.  In support of this request, the Hospital cites a case from the District of Colorado, Crew Tile, 2016 WL 8608448, and provides a footnote which includes a string cite of cases—including one from the District of Maryland—in which courts purportedly also construed claims improperly brought under Rule 14 as claims under Rules 13(h) and 20(a).  Id. at 21 n.17 (citing, inter alia, Pa. Mfrs. Ass'n Ins. Co. v. Fed. Realty Inv. Tr., 2000 WL 964771, at *2 (D. Md. June 6, 2000)).  "[T]hrough Rule 13(h), there is a mechanism for a defendant to make a counterclaim against a plaintiff, and then also join to that counterclaim an absent party who the defendant thinks should be a counterclaim co-defendant."  Terratec, Inc. v. ARCO Murray Constr. Co., Inc., 2020 WL 12787703, at *3 (D.S.C. June 23, 2020) (quoting Bonumose Biochem LLC v. Zhang, 2018 WL 3733651, at *9 (W.D. Va. Aug. 6, 2018)) (emphasis in original).  In the instant case, each of the claims brought against the Murrens are simultaneously counterclaims brought against MST, which would allow the Hospital to bring those claims pursuant to Rule 13(h) if properly pleaded.  See ECF 30 ¶¶ 67–88; Fed. R. Civ. P. 13(h).

The court grants the Hospital leave to file a motion to amend its pleadings to reflect the proper procedural mechanism by which the third-party defendants should be joined.  The federal rules are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, and "joinder of claims, parties and remedies is strongly encouraged," with courts "entertaining the broadest possible scope of action consistent with fairness to the parties,"

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).  Indeed, "the main purpose of Rule 13(h) is to dispose of an action in its entirety and to grant complete relief to all the concerned parties," and courts have construed the rule "liberally in an effort to avoid multiplicity of litigation, minimize the circuity of actions, and foster judicial economy."  Wright, Miller & Kane, Federal Practice & Procedure § 1434.  The rules, read in full, would permit the claims against the Murrens to proceed alongside the counterclaims brought against MST had the Hospital brought them pursuant to Rule 13(h).  See Fed. R. Civ. P. 13(h).  Therefore, the court grants the Hospital leave to file a motion to amend its pleadings, to the extent such an amendment would not be futile, to reflect the proper procedural mechanism by which the Murrens should be joined.  See Wired Fox Techs., Inc. v. Estep, 2015 WL 13791844, at *7–8 (D.S.C. Sept. 21, 2015) (granting the third-party plaintiff leave to amend its pleadings to properly join a third-party defendant to its counterclaims against the plaintiff pursuant to Rule 13(h)).  But amendments may not be permitted if they would be futile, and an amended complaint brought under Rule 13(h) would be futile if the claims against MST should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  As such, the court next considers whether the claims survive the motion to dismiss.

### B.  Declaratory Judgment Regarding Validity of Amendment

The parties spend most of their briefs putting the cart before the horse and arguing about the validity of the Amendment, rather than any of the other counterclaims.  Consequently, the court begins by examining those claims and arguments related to the counterclaim seeking declaratory judgment.

Initially, movants explain that "the Hospital asserted what is effectively a mirror counterclaim against MST seeking the opposite declaration from this Court—that the Amendment was legally effective in removing the Hospital Property from the Conservation Easement."  ECF No. 37 at 3 (citing ECF No. 30 ¶ 88).  For some reason, the movants do not seek dismissal for lack of jurisdiction of a mirror counterclaim but rather delve into the substance of the claim to explain that the Hospital has failed to state a claim for relief as a matter of law.  Previously the court briefly examined the state of the easement in its order on a motion to dismiss brought by the Hospital and NALT.  ECF No. 29.  In essence, the court found that it was debatable whether the Amendment was a valid modification of the Conservation Easement.  That analysis was provided solely to assist the court in determining whether MST was a successor in interest of the grantor such that it had standing to bring this suit against NALT and the Hospital.  Movants now bring this motion to dismiss to refocus on whether the granted Conservation Easement was invalid and, if so, movants seek to dismiss all third-party claims and counterclaims that are premised on the Conservation Easement's validity.

Movants argue that the Amendment was legally defective and failed to properly amend the easement pursuant to the language of the Conservation Easement for two reasons.  ECF No. 37 at 5.  First, movants argue that the amendment to the Conservation Easement was "inconsistent with the basic purpose of the [Conservation Easement]," which was a requirement to validly amend the Conservation Easement.  Id. (citing ECF No. 30 ¶ 27; ECF No. 1-1 at 9–10).  Second, movants argue that the amendment failed to qualify as a valid amendment under [26 U.S.C. § 170(h)] as interpreted by the Fourth Circuit, which was a prerequisite to the amendment under the plain language of the

Conservation Easement.  Id.; see Belk v. Comm'r of Internal Revenue, 774 F.3d 221 (4th Cir. 2014).  Movants mention that the declaratory judgment counterclaim essentially operates as a mirror counterclaim but do not move to dismiss on that ground.  Id. at 3.

As the Fourth Circuit has explained, a court should entertain declaratory judgment actions "when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation marks omitted).  Many district courts have dismissed counterclaims that are duplicative of affirmative defenses.  See, e.g., XL Specialty Ins. Co. v. Truland, 2014 WL 7345200, at *2 (E.D. Va. Dec. 23, 2014) (dismissing an amended counterclaim because the affirmative defense and the counterclaim were repetitious); Biltmore Co. v. NU U, Inc., 2016 WL 7494474, at *2 (W.D.N.C. Dec. 30, 2016) ("Pursuant to its discretion, a court may dismiss a declaratory counterclaim that is the 'mirror image' of the Complaint."); Penn Mut. Life Ins. Co. v. Berck, 2010 WL 3294305, at *3 (D. Md. Aug. 20, 2010) ("This type of double pleading is not the purpose of a declaratory judgment."); Penn Mut. Life Ins. Co. v. Greatbanc Tr. Co., 2010 WL 2928054, at *5 (N.D. Ill. July 21, 2010) ("[C]ounterclaims that mimic affirmative defenses are no less duplicative [than] counterclaims that mirror the plaintiff's request for declaratory relief."); Boone v. MountainMade Found., 684 F. Supp. 2d 1, 12 (D.D.C. 2010) (compiling cases supporting dismissal of duplicative counterclaims).  This court has examined this issue before and found that where the declaratory judgment counterclaims simply re-assert and are parallel to the defendant's affirmative defenses to the plaintiff's claims, it is proper for the court

11

to refuse to exercise jurisdiction over the counterclaim.  <u>Friends of DeReef Park v. Nat'l Park Serv.</u>, 2015 WL 12807800, at *10 (D.S.C. May 27, 2015); <u>Yacht Basin Provision Co., Inc. v. Inlet Provision Co.</u>, 2022 WL 17068795, at *8 (D.S.C. Nov. 17, 2022).

The declaratory judgment counterclaim here is clearly a mirror counterclaim that the court may refuse to exercise jurisdiction over.  Plaintiff MST brought the lawsuit asking the court to issue a declaratory judgment "that the Amendment is null, void, and unlawful and affirming that the Conservation Easement still encumbers the Hospital Easement Property without amendment of any sort."  Compl. ¶ 39.  The Hospital's first counterclaim seeks a declaratory judgment "that the Amendment is valid and that the 56.75 acres of the Hospital Property at issue in this lawsuit were released from the easement, covenants, restrictions, and prohibitions set forth in the Conservation Easement."  ECF No. 30 ¶ 59.  Both challenge whether the Amendment was valid and the resolution of one would resolve the other.[4]  As such, the court refuses to exercise jurisdiction over the declaratory judgment counterclaim and dismisses it for lack of jurisdiction.[5]

### C.  Slander of Title

The Hospital brings a counterclaim for slander of title.  ECF No. 30 ¶¶ 67–72. "South Carolina law requires a party pleading slander of title to support its claim by properly alleging six elements: '(1) the publication, (2) with malice, (3) of a false

---

[4] The court finds that NALT's brief in particular—and its emphasis on the resolution of the declaratory counterclaim impacting its own affirmative defenses—weighs heavily in favor of finding the Hospital's declaratory judgment counterclaim to be a mirror-image counterclaim that seeks adjudication of the core issue of the underlying litigation.  ECF No. 44 at 4, 13.

[5] Thus, the court need not reach the parties' respective arguments regarding the Amendment's validity at this juncture.

statement, (4) that is derogatory to plaintiff's title, and (5) causes special damages, (6) as a result of diminished value of the property in the eyes of third parties.'" Tuauto MC, LLC v. Textron Specialized Vehicles, Inc., 2021 WL 10131581, at *7 (D.S.C. Jan. 4, 2021) (quoting Pond Place Partners, Inc. v. Poole, 567 S.E.2d 881, 892 (S.C. Ct. App. 2002)).

The Hospital brought its slander of title counterclaim to allege that, "MST acting through or at the directions of the Murrens, published false statement to the Georgetown County Council (the "Council") and other members of the public that the Amendment violated the federal law governing conservation easements and was entirely invalid and ineffective" such that "the 56.75 acres of land that made up the majority of the Hospital Property remain fully restricted and encumbered by the Conservation Easement." ECF No. 30 ¶ 68 (internal quotation marks omitted for clarity). Movants explain that they "will vigorously dispute all these allegations," and further claim that the Hospital's slander of title claim must fail as a matter of law because it has not identified any false statements made by either MST or the Murrens. ECF No. 37 at 17. Rather, MST and the Murrens "communicated their position in this lawsuit—that the Conservation Easement was not validly removed from the Hospital Property—to the Council and members of the public." Id. at 16. Movants contend that such alleged statements, had they occurred, would be true as a matter of law. Id. at 17. The court, taking the facts in the light most favorable to the non-moving party, finds that the Hospital has not adequately stated facts that plausibly show the necessary elements of malice or falsity.

First, "slander of title is not a strict liability tort; its intent requirement is malice." Blank v. Timmons, 2022 WL 17335651, at *3 (S.C. Ct. App. Nov. 30, 2022). "In slander

of title actions, the malice requirement may be satisfied by showing the publication was made in reckless or wanton disregard to the rights of another, or without legal justification." Id. (citation omitted). "Malice merely means a lack of legal justification and is to be presumed if the disparagement is false, if it caused damage, and if it is not privileged." Solley v. Navy Fed. Credit Union, Inc., 723 S.E.3d 597, 603 (S.C. Ct. App. 2012).

The Hospital has not provided the court with any arguments in its response in opposition that explain why its slander of title claim should survive movants' motion to dismiss beyond its reiteration of its arguments surrounding the validity of the Amendment. See generally ECF No. 43. Relevant to the intent requirement, the Hospital has not provided any additional information that might possibly support an inference of malice. Rather, from the pleadings it is apparent that MST seeks a declaratory judgment that the Amendment was invalid—with which the Hospital vehemently disagrees—and MST has an interest in resolving that issue because its own land is encumbered by the Conservation Easement. MST brings this lawsuit based on a reasonable, if contested, interpretation of law at the core of this litigation. Cf. Greene v. Griffith, 2004 WL 6248971, at *3 (S.C. Ct. App. Jan. 29, 2004) (finding the malice element met because the defendant admitted he owned no interest in the disputed land and that he never thought he held any interest in the land but nevertheless he recorded his interest in the land); Huff v. Jennings, 459 S.E.2d 886, 891–92 (S.C. Ct. App. 1995) (finding the malice element met because a jury could conclude that the defendant's interpretation of the law was unreasonable and that the defendant only filed the lien against the property after learning that the plaintiff was purchasing the interest in the property); but see Oak Pointe

Homeowners' Ass'n, Inc. v. Peffley, 2018 WL 1531505, at *2 (S.C. Ct. App. Mar. 28, 2018) (reversing and remanding the trial court's granting of summary judgment because there were disputed material facts regarding whether plaintiff wrongfully recorded the Notice of Lien by filing it on the same day the check for the principal payment was negotiated and nine days after defendant remitted payment for the principal debt and informed plaintiff's president of the payment). In contrast with cases where a court has found the malice element satisfied, here the Hospital has not shown that MST subjectively knew or recklessly believed that the Amendment was valid, nor does the Hospital claim MST rests its arguments on an objectively unreasonable interpretation of the law. As such, the court finds that the Hospital has failed to plead facts that meet the malice requirement for a claim of slander of title and that alone allows the court to grant movants' motion to dismiss the slander of title claim.

As an alternative argument for dismissal of the slander of title claim, movants emphasize the Hospital's purported failure to show the required element of falsity. ECF No. 37 at 16–17. Specifically, movants argue that the contested statements—alleged claims that the Conservation Easement still applied to the Hospital Property and that the Amendment was legally ineffective to extinguish it—are true as a matter of law. Id. As such, the Hospital failed to allege any statements made by MST or by the Murrens that is or was false. Id. At most, the Hospital alleges that movants "knowingly and maliciously published these false statements as pretext to prevent the Weehaw [Planned Development] from being amended." ECF No. 30 ¶ 69. Those claims are barebones allegations unsupported by any factual matter whatsoever concerning malicious intent, subjective knowledge of falsity, or reckless disregard of those claims' falsity. Cf. Solley,

723 S.E.2d at 606 ("Recording a mortgage that is a nullity should be considered a false statement derogatory to [plaintiff's] title.").  Moreover, since the declaratory judgment at the core of this case is far from a clear-cut issue, it would be difficult to show that any representations by MST and the Murrens to the Council protesting the proposed zoning modification were made with either knowledge of or reckless disregard of the falsity of such statements.[6]

Consequently, the court grants movants' motion to dismiss the Hospital's slander of title claim for failure to state a plausible claim for relief.  To reiterate, the court finds that the Hospital has not plausibly shown movants' statements were made with malice, nor has the Hospital plausibly shown that the statements were false.  Either conclusion, standing alone, warrants dismissal of the claim.

### D.  Intentional Interference with Prospective Contractual Relations

The Hospital brings a claim for intentional interference with prospective contractual relations.  ECF No. 30 ¶¶ 73–79.  Intentional interference with prospective contractual relations requires a plaintiff to prove: "(1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose

---

[6] This analysis of falsity similarly impacts the remaining counterclaims of intentional interference with prospective contractual relations and civil conspiracy because both claims rely on the false statements made to the Council to meet the basic elements of the claims.  Thus, the falsity element is similarly not met for each of the remaining claims—however, the court proceeds to evaluate each of the remaining claims and finds that other required elements are lacking for each of the remaining claims.  Thus, the court grants the motion to dismiss each claim for failure to state a claim for failing to prove a false statement and for failure to state facts to meet the required elements for each of the remaining claims—each failure to state plausible facts serves as an independent basis for granting the motion to dismiss.

or by improper methods; (3) causing injury to the plaintiff." Crandall Corp. v. Navistar

Int'l Transp. Corp., 395 S.E.2d 179, 180 (S.C. 1990).

Movants claim that the Hospital's intentional interference with prospective

contractual relations claim must fail as a matter of law because the Hospital does not and

cannot show that the alleged interference was done for an improper purpose or by

improper methods, and consequently the second element is not met. ECF No. 37 at 18.

First, the purpose was purportedly proper because MST's property is similarly

encumbered by the Conservation Easement. Thus, MST's challenge to the Amendment

was properly made because a change to the easement which impacts the conservation

purposes in that easement would necessarily affect MST's land. Id. at 19. Second, the

method was proper because the alleged interference arose from MST and the Murrens'

comments at a public meeting—namely the Council's public consideration of the

proposed zoning change—and such comments are free speech protected by the First

Amendment of the United States Constitution. Id. As such, movants claim that the

Hospital has failed to state a claim for intentional interference with prospective

contractual relations and request this court dismiss said claim.

In response, the Hospital explains that while "parties may pursue their contractual

rights and advance their interests," they may not do so by publishing false statements.

ECF No. 43 at 13–14. Rather, "parties are liable for intentionally publishing false

statements that (by design) interfere with a claimant's prospective contractual relations."

Id. at 14. Moreover, the Hospital disagrees with movant's First Amendment argument

and explains that "the Fourth Circuit [] long ago concluded that the Noerr-Pennington

doctrine does not protect deliberately false statements to the government." ECF No. 43 at

17

15 (citing Hosp. Bldg. Co. v. Trs. of Rex Hosp., 691 F.2d 678, 687 (4th Cir. 1982)).

Consequently, the Hospital argues that movants' First Amendment argument does not

prevent a court from finding that the Hospital has alleged facts that rise to the level of

constituting improper methods.  In reply, movants explain that the Hospital's tortious

interference with prospective contractual relations claim is solely premised on the

allegation that movants alleged false statements about the invalidity of the Amendment.

ECF No. 48 at 14.  Thus, if the statements were in fact true, the claim must fail as a

matter of law.  Id.  Further, movants argue that even if the Court were to disagree and

find that the Hospital had pleaded facts that plausibly show movants made false

statements, "the Hospital has not pleaded any factual matter demonstrating that an

alleged statement [regarding the validity of the Amendment] satisfies the objective

baselessness requirement of the sham exception to the Noerr-Pennington doctrine," and

therefore the doctrine immunizes movants from civil liability.  Id. at 15.  The court

examines the arguments in turn.

### 1. Improper Purpose

"[A]n essential element . . . requires that the interference be for an improper

purpose or by improper methods."  Eldeco, Inc v. Charleston Cnty. Sch. Dist., 642 S.E.2d

726, 732 (S.C. 2007).  "Generally, there can be no finding of intentional interference with

prospective contractual relations if there is no evidence to suggest any purpose or motive

by the defendant other than the proper pursuit of its own contractual rights with a third

party."  Id. (quoting S. Contracting, Inc., v. H.C. Brown Constr. Co., 450 S.E.2d 602, 606

(S.C. Ct. App. 1994)).  "If a defendant acts for more than one purpose, [its] improper

purpose must predominate in order to create liability." Crandall Corp., 395 S.E.2d at 180.

The court finds Santoro v. Schulthess, 681 S.E.2d 897 (S.C. Ct. App. 2009), instructive in its analysis because the facts of Santoro resemble aspects of the instant case. In that case, the Santoros placed their home and three lots on the market with a realtor and the listing showed that the property extended ten feet into an adjoining lake. Id. at 900. Upon seeing the real estate listing, Schulthess, the owner of the lake, wrote letters to the Santoros' realtor and to the Santoros. Id. That letter expressed disagreement with the representation that the Santoros' property extended ten feet into his lake and stated that the property line between the lake and many of the abutting properties was determined by the lake's high-water level—his letter expressed concern that prospective purchasers of the Santoros' property would have the wrong impression as to the plot purchased. Id. The realtor revised the advertisement and explained to the Santoros that the claims in the letter had to be revealed to any prospective buyers. Id. The Santoros later engaged a different realtor to list their property and again Schulthess wrote a letter explaining the same concern. Id. Almost two years later, the Santoros still had not sold their property and they filed a complaint against Schulthess asserting, inter alia, a claim for interference with prospective contractual relations based on Schulthess's letters to their realtors. Id. at 901. Relevant to the instant case, the court agreed with Schulthess and found that he could not be found liable for intentional interference because he was merely asserting his property rights. Id. at 904. The court found no evidence on the record to suggest any purpose or motive by Schulthess other than the pursuit of his own legal rights. Id. The court further explained that "even if some of the

legal claims in Schulthess's letters were inaccurate, there is no evidence to support the []

implicit finding that Schulthess knew that the claims were inaccurate when he made

them." Id. at 905.

Upon review of the Hospital's third-party complaint and counterclaims, the court

is similarly confronted with facts that do not support the implicit finding that either MST

or the Murrens knew that the claims were inaccurate when they made them to the

Council. See generally ECF No. 30. The letter sent to the Council was written by

movants' counsel and included the same legal basis and explanation underlying this

declaratory judgment action, which does not support a finding of movants' subjective

knowledge that their claims were baseless.[7] See ECF No. 1-4. The court takes the facts

most favorable to the Hospital and construes the movants' motives as primarily based on

the goal of thwarting the development of affordable housing to protect their own property

values—an allegation supported by inference, namely, movants' delayed opposition to

the land's development. Id. ¶¶ 4–10; 48–50. It is difficult to say that even under that

interpretation there is any purpose suggested other than pursuit of movants own legal

rights since their land would be impacted—either by the projected drop in property

values or by the amended encumbrance of the Conservation Easement which would

impact movants' rights of development.[8] The Hospital does not explain how this is an

---

[7] At the hearing, the court asked counsel for the Hospital whether it was implying that counsel for MST knowingly filed a frivolous lawsuit in this court in violation of Fed. R. Civ. P. 11, since the arguments advanced both in this forum and before the Council have substantial overlap. ECF No. 52. Counsel for the Hospital denied any interest in leveling such an accusation. Thus, the Hospital avers one argument is knowingly false in one forum but not the other. Such a conclusion is illogical and supports dismissal of claims premised on such a contradiction.

[8] Even by using a fine-toothed comb on the third-party complaint and counterclaims, the court is confronted by the scarcity of factual allegations—at most the

improper purpose—instead focusing solely on perceived improper methods—and the court finds it implausible to arrive at an improper purpose sufficient to meet the second element of this claim even relying solely on the Hospital's facts in its counterclaims and third-party complaint.  See ECF No. 43 at 13–14.  As such, the court turns to the parties' alternative arguments that the second element of the claim is met because movants intentionally interfered with prospective contractual relations through an improper method.

## 2.  Improper Methods

"As an alternative to establishing an improper purpose, the plaintiff may prove the defendant's method of interference was improper under the circumstances."  United Educ. Distribs., LLC v. Educ. Testing Serv., 564 S.E.2d 324, 328 (S.C. Ct. App. 2002) (quoting Crandall, 395 S.E.2d at 180).  "Methods of interference considered improper are those means that are illegal or independently tortious."  Focused Sys., Inc. v. Aerotek, Inc., 2011 WL 2162729, at *4 (D.S.C. June 2, 2011).  Examples of this include: "violations of statutes, regulations, or recognized common-law rules.  Improper methods

---

Hospital makes claims that are not backed by facts.  For example, the Hospital alleges that MST's "real purpose" is "to have the Amendment declared invalid so that MST and the Murrens[] will have the ability to build five dwellings on Weehaw, which will greatly increase the value of the Weehaw property."  ECF No. 30 ¶ 4.  Yet the Hospital points to no evidence that suggests either movant is in fact interested in developing those five dwellings, beyond their objections to the Amendment itself—which movants purportedly based on their goal of protecting the environmental, conservation, and open space values reflected in the Conservation Easement.  Id.  An alternative explanation for movants objections to the Amendment is that "MST also seeks to thwart the potential development of the Hospital Property and prevent the property from being used in a manner that MST and other neighboring landowners perceive will lower their own property values."  Id.  This is more plausible since movants have purportedly known about the Hospital's plans to develop the property since 2010, but movants only recently objected to those plans upon their discovery that the development would not be a hospital but affordable housing.  Id. at 5–6.

may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." Duggins v. Adams, 360 S.E.2d 832, 837 (Va. 1987), cited with approval in Crandall, 395 S.E.2d at 180; see also Love v. Gamble, 448 S.E.2d 876, 883 (S.C. Ct. App. 1994) (citing to Duggins and listing the same improper methods).

The Hospital challenges MST's method of "sen[ding] a letter to every member of the Georgetown County Council opposing the modification to the Hospital Weehaw [Property Development] and falsely claim[ing] that the 2008 Amendment to the Conservation Easement 'violated the federal law governing conservation easement and was entirely invalid and ineffective.'" ECF No. 30 ¶ 52. Moreover, the Hospital claims that movants "made other similar representations to members of the Georgetown County Council and members of the public and encouraged other nearby landowners to raise the Conservation Easement as an issue to oppose the modification to the Hospital Weehaw [Property Development]." Id. ¶ 53. The Hospital explains that due to MST's representations to the Council, the change to the zoning of the Hospital Property did not pass during its third public reading at a Council Meeting "despite the Planning Commission previously recommending the modification and the County Counsel [sic] unanimously approving the modification during the first and second public readings." Id. ¶ 54. As a direct consequence of the modification failing to pass, "[the Hospital's] contract to sell the Hospital Property for an affordable housing development fell through, and the property was not sold." Id. ¶ 55. Under this counterclaim, the Hospital

challenges movants' methods resulting in the proposed zoning change failing.  Id. ¶¶ 76–79.

Initially, it is unclear how these methods—writing to the Council concerns about a prospective zoning amendment to a property during a time when the Council is receiving public comment—are "illegal or independently tortious."  See Focused Sys., Inc., 2011 WL 2162729, at *4.  The Hospital argues that publishing false statements that interfere with a claimant's prospective contractual relations meets that threshold, and the Hospital cites a series of cases purportedly holding as much.  See ECF No. 43 at 14 (citing S. Indus. Contractors, LLC v. O'Brien & Gere, Inc., 2019 WL 7811308, at *2–3 (D.S.C. Oct. 17, 2019); Gyro-Trac Corp. v. Vermeer Mfg. Co., 2012 WL 13002180, at *6 (D.S.C. Dec. 21, 2012); cf. Bakala v. Krupa, 2021 WL 2313632, at *11 (D.S.C. Mar. 5, 2021)).  There are two important distinctions between those cases and the instant facts.

### a.  Tortious Methods

First, those cases involved statements to third parties which clearly impacted the affected party's reputation and subsequent ability to contract.  To reiterate, to meet the improper methods prong of this claim, a plaintiff must show that the methods are "illegal or independently tortious."  See Focused Sys., Inc., 2011 WL 2162729, at *4.  To find those statements defamatory, a qualifying tort, the Hospital must also plead facts that show libel.  "If the trial judge can legally presume, because of the nature of the statement, that the [Hospital's] reputation was hurt as a consequence of its publication, then the libel is actionable per se."  Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 510–11 (S.C. 1998).  In other words, "[l]ibel is actionable per se if it involves written or printed words which tend to degrade a person, that is, to reduce his character or

23

reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous." Id. (internal quotation marks omitted). For example, in Southern Industrial Contractors, the court found a qualifying defamatory statement when the defendant told the property owner that the plaintiff was unable to install furnaces in compliance with requirements resulting in its loss of the prospective subcontract which was in the final stages of negotiation. 2019 WL 7811308, at *2. Or consider Gyro-Trac, where the defendant told all its dealers that the plaintiff could not sell any of its products to them, which was factually false since the agreement between the plaintiff and defendant only prohibited sales to a subclass of dealers. 2012 WL 13002180, at *6. In contrast, here the movants wrote to a governmental body considering a zoning amendment change to express their disagreement with that proposed plan, not to degrade or hurt the Hospital's reputation or to prohibit the sale of the property to a third party or make clearly false statements, but to emphasize that the property considered for rezoning might be encumbered—a statement that is not clearly defamatory. See ECF No. 1-4 (explaining that the Amendment to the Conservation Easement was invalid and therefore a change in zoning may violate South Carolina statutes but saying nothing whatsoever about the reputation or character of the Hospital). As such, it is implausible to find that the method was improper such that this element is met. This conclusion, alongside the court's previous conclusion in the improper purpose analysis, leads the court to conclude that the Hospital has failed to plausibly state the second element of the intentional interference with prospective contractual relations claim. As such, the court grants the motion to dismiss this counterclaim.

### b. First Amendment Immunity

Second, in contrast with the cited cases, the identified statements were made to a governmental body during notice and comment, and therefore additional speech protections apply under the First Amendment's right to petition.  See ECF No. 37 at 19–20 (citing U.S. Const., amend. I).

The Noerr-Pennington doctrine grants First Amendment immunity to those who engage in petitioning activity.  See United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965); E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961). This includes the pursuit of litigation, Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972), and, although originally developed in the antitrust context, the doctrine has now universally been applied to business torts.  See, e.g., Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 128–29 (3d Cir. 1999) (holding the doctrine applies to common law claims of malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition).  The application of Noerr-Pennington is a matter of law.  IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 310 (4th Cir. 2003).  The burden is on the party opposing application of Noerr-Pennington to allege facts sufficient to show that it does not apply.  Id. at 311.

Raising the Noerr-Pennington doctrine is an affirmative defense, which the court cannot reach on a motion to dismiss pursuant to Rule 12(b)(6) since that procedure "tests only the sufficiency of a complaint and cannot reach the merits of an affirmative defense . . . [unless] all facts necessary to the affirmative defense clearly appear on the face of the complaint."  Waugh Chapel S., LLC v. United Food & Com. Workers Union

Local 27, 728 F.3d 354, 359–60 (4th Cir. 2013) (quoting Goodman v. Praxair, Inc., 494

F.3d 458, 464 (4th Cir. 2007) (en banc)) (emphasis in original).  As such, the court finds

it needs not determine the applicability of the Noerr-Pennington doctrine on this motion.

Thus, the court finds that the Hospital has not stated facts that plausibly show

improper purpose or improper methods sufficient to establish the second element of an

intentional interference with prospective contractual relations claim.  The court grants the

motion to dismiss on that claim.

### E.  Civil Conspiracy

The Hospital brings a claim for civil conspiracy.  ECF No. 30 ¶¶ 80–84.  Civil

conspiracy requires a plaintiff to establish "(1) the combination or agreement of two or

more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3)

together with the commission of an overt act in furtherance of the agreement, and (4)

damages proximately resulting to the plaintiff."  Paradis v. Charleston Cnty. Sch. Dist.,

861 S.E.2d 774, 780 (S.C. 2021).  The Hospital's civil conspiracy claims reallege that

MST and the Murrens "encouraged and conspired" with others to publish statements that

the Amendment is invalid or ineffective.  ECF No. 30 ¶¶ 80, 83.  As a result of these

statements, the Hospital "suffered monetary harm from losing its contract to sell 16 acres

of the Hospital Property and from the diminished value of the Hospital Property" due to

the perception that the property is still encumbered by the Conservation Easement and

cannot be developed for any commercial purpose.  Id. ¶ 84.

Movants seek to dismiss the civil conspiracy claim for three reasons: first, the

statements were not false; second, the Hospital fails to allege a combination or

agreement; and third, the Hospital fails to allege additional acts in furtherance of the

conspiracy as is required by the claim.  ECF No. 48 at 16–17 ("The Hospital's civil conspiracy claims [] are based on the same allegation [] and merely reiterate the 'encouraged and conspired' allegation made in support of the tortious interference claims.").  Specifically, movants argue that the Hospital "fails to state a claim for civil conspiracy because it alleges neither a combination or agreement among MST or the Murrens to commit an unlawful act, or a lawful act by unlawful means, nor additional facts in furtherance of the conspiracy."  ECF No. 37 at 22.  In response, the Hospital alleges that its civil conspiracy claim is premised on the fact that MST and the Murrens conspired with members of the public to tell members of the Council and other members of the public that the Amendment was invalid which ultimately prevented the Hospital Weehaw Property Development from being modified and caused the contract for the affordable housing development to fall through.  ECF No. 43 at 16–18.

First, "[c]ivil conspiracy requires a specific intent to injure the plaintiff." Sizemore v. Georgia-Pac. Corp., 1996 WL 498410, at *13 (D.S.C. Mar. 8, 1996) (citing Bivens v. Watkins, 437 S.E.2d 132, 134 (S.C. Ct. App. 1993)), aff'd sub nom. Sizemore v. Hardwood Plywood & Veneer Ass'n, 114 F.3d 1177 (4th Cir. 1997).  Some evidence that the alleged conspirators "acted with malice towards" the plaintiff is required. Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc., 992 F.2d 59, 63 (4th Cir. 1993) (applying South Carolina law).  "The focus on the inquiry is thus on the purpose of the agreement; 'the essential consideration is not whether lawful or unlawful acts or means are employed to further the conspiracy, but whether the primary purpose or object of the combination is to injure the plaintiff.'"  Sizemore, 1996 WL 498410, at *13 (quoting Lee v. Chesterfield Gen. Hosp., Inc., 344 S.E.2d 379, 383 (S.C. Ct. App. 1986),

overruled in part by Paradis, 861 S.E.2d at 780).  Where, for example, alleged
conspirators acted out of a general desire to make a profit rather than to harm the
plaintiff, a claim for civil conspiracy cannot lie.  Bivens, 437 S.E.2d at 136.  Thus, a
claim for civil conspiracy requires at least some degree of relationship between the
plaintiff and the alleged conspirators.

As explained above, supra III.C, the Hospital has not stated facts that support the
inference of malice—namely, it has not specified or alleged facts that support the
inference that movants acted with the specific intent to injure the Hospital.  At most, the
Hospital alleges that movants and their unnamed co-conspirators sought to have the
Amendment declared invalid "so that it [sic] could develop five dwellings on the
Weehaw property and also to protect against the perceived drop in its property values that
would result from an affordable housing development being built on the Hospital
Property."  ECF No. 30 ¶ 83.  Even viewed in the light most favorable to the Hospital,
these allegations show actions taken in movants own self-interest which incidentally may
have harmed the Hospital—the Hospital does not plausibly allege that these actions were
taken with the intent of harming the Hospital.  See id.  On this element alone the Hospital
has failed to plausibly state facts that demonstrate the requisite intent requirement for a
civil conspiracy.

Second, "[i]n a civil conspiracy claim, one must plead additional facts in
furtherance of the conspiracy separate and independent from other wrongful acts alleged
in the complaint, and the failure to properly plead such acts will merit the dismissal of the
claim."  Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 875 (S.C. Ct. App.
2009), overruled on other grounds by Paradis, 861 S.E.2d at 780.  Stated another way,

28

"'[w]here the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.'" Todd v. S.C. Farm Bureau Mut. Ins. Co., 278 S.E.2d 607, 612 (S.C. 1981) (quoting 15A C.J.S. Conspiracy § 33, at 718), overruled on other grounds by Paradis, 861 S.E.2d at 780; see also Kuznik v. Bees Ferry Assocs., 538 S.E.2d 15, 21 (S.C. Ct. App. 2001) ("Because [the third party plaintiff] . . . merely realleged the prior acts complained of in his other causes of action as a conspiracy action but failed to plead additional facts in furtherance of the conspiracy, he was not entitled to maintain his conspiracy cause of action."); Doe v. Erskine Coll., 2006 WL 1473853, at *17 (D.S.C. May 25, 2006) (granting defendant's motion for summary judgment on plaintiff's civil conspiracy claim because "the Complaint does not plead specific facts in furtherance of the conspiracy; instead the Complaint simply restates the alleged wrongful acts in relation to the plaintiff's other claims for damages.").

The Hospital argues that this claim is dissimilar from its other claims because the civil conspiracy claim is premised upon movants' alleged conspiracy with unidentified other persons who similarly publicized concerns about the validity of the Amendment.  In particular, the Hospital explains that this claim is distinct from its intentional interference with prospective contractual relations claim because that claim seeks to hold movants liable for their own actions to prevent the passage of the property's zoning whereas this claim seeks to hold the movants liable for their actions which prompted other residents of Georgetown County to act in a concerted manner.  ECF No. 43 at 18.  Specifically, the allegedly independent act in furtherance of the conspiracy is "the exchange of false

information between [m]ovants [] and members of the public [], and then the concerted effort of each of these parties together to publish false statements to the Council and other members of the public to cause the [zoning] modification and ultimately the affordable housing development to fall through." Id. at 18–19. Yet, those other persons are not named as defendants, nor is there any allegation that those unnamed persons wrote to the Council because of movants' actions beyond the conclusory allegations in the complaint. See ECF No. 30 ¶¶ 80–84. Based on the claim and the subsequent response in opposition, the Hospital's described facts are identical to those alleged in its intentional interference with prospective contractual relations claim. Thus, the Hospital's claim of civil conspiracy against movants fails and must be dismissed under this independent basis as well. See Coker v. Norwich Com. Grp., Inc., 2021 WL 4037472, at *6 (D.S.C. Sept. 3, 2021) (holding that the plaintiff's civil conspiracy failed because "he has merely reincorporated his previous claims and added conclusory allegations the Individual Defendants were engaged in a civil conspiracy").

The court finds that the Hospital has not plausibly stated facts that show either malice or facts independent from its intentional interference with prospective contractual relations claim. Thus, the court grants the motion to dismiss the Hospital's civil conspiracy claim against MST and the Murrens for failure to state a claim.

### F. Unjust Enrichment

The Hospital brings a claim for unjust enrichment. ECF No. 30 ¶¶ 85–88. However, in its response in opposition the Hospital consented to withdraw its claim for unjust enrichment. ECF No. 43 at 2 n.1. As such, the motion to dismiss the claim of unjust enrichment is moot.

30

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss without prejudice.  The court **GRANTS** the Hospital leave to file an amendment to its pleadings to join the Murrens as parties in this action pursuant to the Federal Rules of Civil Procedure, subject to the matters of law resolved in this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**May 19, 2023
Charleston, South Carolina**