**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MST, LLC, | ) | No. 2:22-cv-00874-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MOTION TO EXCLUDE** |
| | ) | **AFFIRMATIVE EXPERT OPINIONS** |
| North American Land Trust and | ) | **OF TRAVIS FOLK** |
| Georgetown Memorial Hospital, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Georgetown Memorial Hospital ("**GMH**") respectfully files this Motion to Exclude Affirmative Expert Opinions of Travis Folk ("**Motion**") under Rule 26(a)(2)(D) and Rule 6 of the Federal Rules of Civil Procedure, requesting that this Court exclude all but a small portion of the opinions of Travis H. Folk, Ph.D. ("**Dr. Folk**"), an individual identified in Plaintiff's Rule 26(a)(2) Expert Witness Disclosure [ECF No. 101] as an individual whom Plaintiff MST, LLC ("**MST**") plans to offer for expert testimony in this action. In support of this Motion, GMH hereby states the following.

**INTRODUCTION**

1. This Court should exclude nearly all of the expert opinions to be offered by Dr. Folk because MST failed to disclose Dr. Folk or provide his affirmative expert opinions by MST's May 6, 2024 deadline to disclose affirmative experts. MST chose not to meet its affirmative expert disclosure deadline and instead delayed filing any expert disclosure until September 26, 2024—MST's deadline to disclose *__rebuttal__* experts. Yet, the expert opinions of Dr. Folk served by MST on September 26, 2024 set forth almost entirely *__affirmative__* expert opinions—opinions which MST must offer in its case-in-chief. In doing so, MST attempted to circumvent this Court's scheduling

order and flip the expert disclosure procedure of Rule 26(a)(2)(D) on its head. MST should therefore be prohibited from utilizing any of the affirmative opinions of Dr. Folk (which MST has improperly characterized as "rebuttal" opinion in this case).

2.  First, MST withheld any affirmative expert disclosure from GMH; then, MST received GMH's timely expert disclosure and report; finally, and with the improper benefit of GMH's expert material, MST served its own affirmative expert disclosure and report— impermissibly characterized as "rebuttal" material. In doing so, MST stripped GMH of the right to respond to MST's expert disclosure and report when preparing GMH's own expert opinions. Accordingly, this Court should exclude all of the affirmative expert opinions to be offered by Dr. Folk—which includes everything except Dr. Folk's critique of GMH's expert, Alton Brown. *See WPS Inc. v. Am. Honda Motor Co. Inc.*, No. 3:16-CV-2525-CMC, 2017 WL 4216159, at *3 (D.S.C. Sept. 22, 2017) ("While Plaintiff argues the June reports are rebuttal material in a general sense, as they rebut [defendant's] experts' overarching opinion . . . , it appears clear to the court [that] the majority of [one plaintiff expert] and all of [another plaintiff expert]'s [purportedly rebuttal] reports do not rebut the specifics of [defendant]'s expert reports. . . . Plaintiff's experts' [purportedly rebuttal] reports are excluded with the exception of [one paragraph involving legitimate rebuttal material]. Plaintiff may not utilize the information in the June reports, other than [the sole legitimate rebuttal paragraph], as evidence in this case."); *see also Strata Solar, LLC v. Fall Line Constr., LLC*, No. 4:22-CV-106, 2023 WL 9198194, at *3–4 (E.D. Va. Oct. 4, 2023) (similar); *Wise v. C. R. Bard, Inc.*, No. 2:12-CV-01378, 2015 WL 461484, at *4 (S.D.W. Va. Feb. 3, 2015) (similar).

## BACKGROUND

3.  MST filed this declaratory judgment action on March 16, 2022. (*See generally* ECF No. 1.) In this action, MST seeks a declaration that a 2008 amendment ("**Amendment**") to a 1995 conservation easement on certain property now owned by GMH ("**Hospital Property**") was ineffective. (*Id.* ¶ 33.)

4.  According to MST, the 1995 conservation easement ("**Conservation Easement**") at issue "serves several conservation purposes, including, *inter alia*, the preservation of the valuable scenic vistas, which are observable from Highway 701 and Wedgefield Road, and the protection of the property's environmental systems, which provide an important, ecologically stable habitat for flora and fauna." (*Id.* ¶ 11.)

5.  In its Complaint, MST affirmatively contends that the Hospital Property "is at risk of being sold to a third party for uses that violate the terms and conditions of the Conservation Easement and would defeat the conservation purposes stated in the Conservation Easement, including the preservation of scenic vistas observable from Highway 701 and Wedgefield Road, as well as protection and enhancement of environmental systems that are, today, now constituting critical habitat for the Red-Cockaded Woodpecker among other species." (*Id.* ¶ 30.)

6.  Moreover, in its Motion to Dismiss GMH's counterclaims, MST affirmatively argued that the 2008 Amendment to the Conservation Easement is invalid because the Amendment is inconsistent with the basic purpose of the Conservation Easement: to "protect the conservation values of the real property to which the [Conservation Easement] initially attached." (ECF No. 37 at 15.)

## PROCEDURAL HISTORY

### I. The Court Sets Expert Disclosure Deadlines for the Parties.

7.     On November 16, 2023, this Court issued its first Consent Amended Scheduling Order (ECF No. 57). Under that original scheduling order, the deadline for MST to file any affirmative expert disclosure and certify service of any affirmative expert report was April 5, 2024. (ECF No. 57 ¶ 2.) The deadline for GMH to file any expert disclosure and certify service of any expert report was May 6, 2024. (*Id.*) The deadline for MST to file any rebuttal expert disclosure and certify service of any rebuttal expert report was June 6, 2024. (*Id.*)

8.     Later, on March 27, 2024, this Court issued another Consent Amended Scheduling Order (ECF No. 65). Under that modified scheduling order, the deadline for MST to file any affirmative expert disclosure and certify service of any affirmative expert report was **May 6, 2024**. (ECF No. 65 ¶ 2.) The deadline for GMH to file any expert disclosure and certify service of any expert report was June 6, 2024. (*Id.*) The deadline for MST to file any rebuttal expert disclosure and certify service of any rebuttal expert report was July 5, 2024. (*Id.*)

9.     Then, on May 20, 2024, this Court issued a further Consent Amended Scheduling Order (ECF No. 83). That scheduling order did not modify, alter, or extend MST's deadline to file its affirmative expert disclosure and certify service of any affirmative expert report; on the contrary, MST's affirmative expert deadline remained May 6, 2024. (*Compare* ECF No. 83, *with* ECF No. 65 ¶ 2.) However, that scheduling order did extend GMH's deadline to file any expert disclosure and certify service of any expert report to August 6, 2024. (ECF No. 83 ¶ 2.) It also extended MST's deadline to file any rebuttal expert disclosure and certify service of any rebuttal expert report to September 5, 2024. (*Id.*)

4

10. Finally, on July 18, 2024, this Court issued another Consent Amended Scheduling Order (ECF No. 90). Once again, that scheduling order did not modify, alter, or extend MST's deadline to file any affirmative expert disclosure and certify service of any affirmative expert report; thus, once again, MST's affirmative expert deadline remained May 6, 2024. (*Compare* ECF No. 90, *with* ECF No. 65 ¶ 2.) However, the final modified scheduling order did again extend GMH's deadline to file any expert disclosure and certify service of any expert report to **August 27, 2024**. (ECF No. 90 ¶ 1.) It also extended MST's deadline to file any rebuttal expert disclosure and certify service of any rebuttal expert report to **September 26, 2024**. (*Id.*)

## II. MST Fails to Meet Its Affirmative Expert Deadline, but GMH Meets Its Own Expert Deadline.

11. MST did not file any affirmative expert disclosure on May 6, 2024—its deadline to do so. Nor did MST serve any affirmative expert report on that day.

12. Nevertheless, GMH timely filed its expert disclosure (ECF No. 98) on August 27, 2024—its deadline to do so. That expert disclosure identified Mr. Alton Brown ("**Mr. Brown**") as GMH's planned expert witness.

13. GMH then timely served the expert report of Mr. Brown ("**Brown Report**"), attached hereto as **Exhibit A**. The 9-page Brown Report (excluding appendix material) contained the following contents:

   a. an introduction (Ex. A at 2);

   b. Mr. Brown's relevant professional qualifications and compensation (*id.* at 2–3);

   c. a factual background (*id.* at 3);

   d. Mr. Brown's assessment and opinions (*id.* at 4–9); and

   e. appendices (including relevant case documents, Mr. Brown's curriculum vitae, and the like) (*id.* at 9–214).

5

### III. MST Files an Expert Disclosure and Serves an Expert Report on MST's Rebuttal Expert Deadline, but that Report Contains Almost No Rebuttal Material.

14.     MST then filed a document entitled "Plaintiff's Rule 26(a)(2) Expert Witness Disclosure" on September 26, 2024 (ECF No. 101), attached hereto as **Exhibit B**. That day was the deadline for MST to file its *rebuttal* expert disclosure. The Expert Disclosure designated Dr. Folk as MST's planned expert witness and stated that "a written report will be prepared upon the conclusion of Defendants' expert witness' depositions." (*Id.*)

15.     On December 4, 2024, MST served the expert report of Dr. Folk ("**Folk Report**") upon GMH. The 39-page Folk Report contained the following contents:

   a. an introduction (Ex. B at 1);

   b. a site description of the Hospital Property and Weehaw Plantation (*id.* at 2–7);

   c. a summary of the Conservation Easement and the 2008 amendment thereto (*id.* at 7–8);

   d. Dr. Folk's relevant professional qualifications and compensation (*id.* at 8–11);

   e. Dr. Folk's "[e]valuation" of the Hospital Property and "changes in ecological and viewshed values" (*id.* at 12–14);

   f. Dr. Folk's "[e]valuation of 5 relinquished house parcels within Weehaw [Plantation] and changes in ecological and viewshed values" (*id.* at 14–31);

   g. a "[c]omparison of ecological values and viewshed benefits before and after the 2008 amendment" (*id.* at 31–33);

   h. a "**[c]ritique of expert opinions offered by [Dr.] Brown**" (*id.* at 34–38 (emphasis added)); and

   i. a bibliography (*id.* at 38–9).

16.     Critically, although submitted on MST's *rebuttal* expert deadline and thus purportedly a rebuttal expert report, only a single section (and only 4 pages total) of the Folk Report even attempts to engage the opinions of Mr. Brown, GMH's expert. (*See id.* at 34–38.)

6

17. Indeed, Dr. Folk himself admitted as much during his deposition testimony (relevant portions of which are attached hereto as **Exhibit C**):

> Q. I want to go back to something you testified to previously, and please correct me if I misstate this, okay. But you testified that you -- it's your opinion, one of your opinions, that the ecological benefits of the [2008] [A]mendment do not outweigh the ecological detriments as a result from that amendment; is that correct?
>
> A. Yes.
>
> Q. And then separately you provide a -- a critique of Alton Brown in your report; is that correct?
>
> A. Correct.
>
> Q. Okay. **Which portions of your report specifically relate to your critique of Mr. Brown as opposed to your analysis of the ecological values of the amendment?**
>
> A. **Towards the end critique -- starting on page 34, critique of expert opinions offered by Alton Brown**.

(Ex. C at 129:5–24 (emphasis added).)

18. Instead, outside of pages 34 to 38, the Folk Report contains straightforwardly *affirmative* expert opinions of Dr. Folk relating to MST's own affirmative claim that the Amendment did not protect the conservation values of the property to which the Conservation Easement initially attached—a claim that MST will need to offer in its case-in-chief at trial.

19. Indeed, before ever engaging Mr. Brown's opinions, the Folk Report expressly states that Dr. Folk seeks to "provide an assessment of the substantiation of the 2008 amendment to the 1995 NALT held conservation easement on Weehaw Plantation" and "present the specific substantiation in the 2008 NALT amendment and then . . . provide [his] opinion as to the accurateness of the statement." (Ex. B at 31–32.) Dr. Folk then repeatedly offers his affirmative expert opinions—opinions necessary for MST to submit in its case-in-chief:

> a. "Benefit to the public would be better served through conservation of less common habitats which support populations of declining or rare floral and faunal species." (*Id.* at 32.)

7

    b. "[The 2008 amendment] suggests that all 5 (actually 6, including the Recreation Area) site[s] had the same scenic value from the Pee Dee River, Black River and Intracoastal Waterway. This cannot be substantiated." (*Id.* at 32.)

    c. "Critical marsh habitat is not near all of the 6 relinquished building envelops." (*Id.* at 33.)

    d. "I found no visible, morphological, nor recorded evidence that the 6 relinquished building envelopes ha[ve] archeological value above and beyond any other area on Weehaw Plantation." (*Id.*)

    e. "[I]t is my opinion that the loss of habitat on the Hospital [Property] was of greater negative impact tha[n] the small positive impact of foregoing the building of 5 houses on common habitat." (*Id.*)

    f. "It is my opinion that the conservation values of the 1995 conservation easement were not maintained nor improved upon by the 2008 amendment but in fact were significantly diminished. . . . In my opinion, the significant traffic and resulting diminishment of the viewshed from US Highway 710 and Wedgefield Road far outweighs the possible nominal improvement to the viewshed from the rivers from the elimination of the five dwelling sites and the recreational area." (*Id.* at 34.)

20.     GMH now moves to exclude all expert opinions of Dr. Folk except those legitimately rebutting the expert opinions of Mr. Brown (set forth in pages 34 to 38 of the Folk Report).

## LEGAL STANDARD

21.     Rule 26(a)(2)(D) governs expert disclosure deadlines. *See* Fed. R. Civ. P. 26(a)(2)(D). If a party fails to comply with the procedure of Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

22.     "The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Maltese v. Smith Transp., Inc.*, No. 3:19-CV-00060, 2021 WL 4394319, at *3 (W.D. Va. Sept. 24, 2021) (quoting *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017)).

23. "The Fourth Circuit has articulated five factors to determine whether the nondisclosure is substantially justified or harmless and whether exclusion of the evidence is warranted: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *WPS*, 2017 WL 4216159, at *3 (citing *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003)).

## ARGUMENT

24. Nearly all of Dr. Folk's expert opinions should be excluded because MST's service of those affirmative expert opinions was untimely. Dr. Folk's expert opinions are almost exclusively affirmative opinions masquerading in a "rebuttal" report. MST's attempt to flout this Court's scheduling order and sidestep Rule 26(a) is neither substantially justified nor harmless.

### I. MST's Expert Disclosure Is Untimely Because Dr. Folk's Expert Opinions Are Almost Entirely Affirmative Opinions Masquerading as "Rebuttal" Opinions.

25. MST's disclosure of Dr. Folk and MST's service of the Folk Report are untimely because nearly all of Dr. Folk's expert opinions are affirmative opinions masquerading as "rebuttal" opinions.

26. Rule 26(a) distinguishes affirmative expert testimony from rebuttal expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). "In general, a testifying expert qualifies as either an initial or affirmative expert or a rebuttal expert. An initial or affirmative expert serves to establish a party's case-in-chief, while a rebuttal expert provides 'evidence offered to disprove or contradict the evidence presented by an opposing party.'" *Strata Solar*, 2023 WL 9198194, at *4 (quoting BLACK'S LAW DICTIONARY 702 (11th ed. 2019)). Rebuttal expert testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." *See*

9

*id.* Put simply, rebuttal evidence is "evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party." *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) (original brackets omitted) (quoting BLACK'S LAW DICTIONARY 1267 (6th ed. 1990)).

27. "Expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." *WPS*, 2017 WL 4216159, at *2 (quoting *Boles v. United States*, No. 1:13CV489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015)). "Rebuttal reports 'may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.'" *Funderburk v. S.C. Elec. & Gas Co.*, No. 3:15-CV-04660-JMC, 2019 WL 3406814, at *4 (D.S.C. July 9, 2019) (quoting *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013)). Moreover, "rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *WPS*, 2017 WL 4216159, at *2 (original brackets omitted) (quoting *Boles*, 2015 WL 1508857, at *2). In other words, "[a] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Id.* (quoting *Wise*, 2015 WL 461484, at *2).

28. "This restriction is required, and indeed necessary, because 'rebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief.'" *Funderburk*, 2019 WL 3406814, at *4 (original brackets omitted) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)); *see Allen v. Prince George's Cty., Md.*, 737 F.2d 1299, 1305 (4th Cir. 1984) ("Ordinarily, rebuttal evidence may be introduced only to counter new facts presented in the defendant's case in chief. . . . Permissible rebuttal evidence also includes evidence unavailable earlier through no fault of the plaintiff.").

10

29. All but four pages of the Folk Report provide opinions on matters necessary for MST to establish in its case-in-chief—principally, "that the conservation values of the 1995 conservation easement were not maintained nor improved upon by the 2008 amendment but in fact were significantly diminished." (Ex. B at 34.) To reiterate, this issue is the very heart of MST's case, and was raised in both MST's Complaint and Motion to Dismiss GMH's counterclaims. MST claims that the Amendment is inconsistent with the basic purpose of the Conservation Easement, and that the Hospital Property "is at risk of being sold to a third party for uses that violate the terms and conditions of the Conservation Easement and would defeat the conservation purposes stated in the Conservation Easement, including the preservation of scenic vistas observable from Highway 701 and Wedgefield Road, as well as protection and enhancement of environmental systems that are, today, now constituting critical habitat for the Red-Cockaded Woodpecker among other species." (ECF No. 37 at 15; ECF No. 1 ¶ 30.)

30. MST must offer Dr. Folk's opinions in its case-in-chief. MST waived its right to do so by declining to disclose Dr. Folk as an affirmative expert and provide his opinions on or before MST's affirmative expert deadline. *See Funderburk*, 2019 WL 3406814, at *4 ("[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." (citation omitted)); *WPS*, 2017 WL 4216159, at *2 ("A party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." (citation omitted)); *id.* ("Rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." (citation omitted)).

## II. MST's Delay in Disclosing Dr. Folk's Affirmative Opinions Is neither Substantially Justified nor Harmless.

31. MST's delay in disclosing Dr. Folk's affirmative opinions is neither substantially justified nor harmless. As noted above, "[t]he Fourth Circuit has articulated five factors to

determine whether the nondisclosure is substantially justified or harmless and whether exclusion of the evidence is warranted: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *WPS*, 2017 WL 4216159, at *3 (citing *S. States Rack And Fixture*, 318 F.3d at 596). "The balance of the factors favors" GMH here. *See id.* at *4.

32. First, Defendant GMH "submitted its reports first, so Plaintiff [MST]'s experts had those when preparing their initial reports." *See id.* As the defendant, GMH should have received Plaintiff MST's expert material first and been given the opportunity to formulate its response thereto. Instead, MST's untimely submission flipped that procedure on its head: MST improperly received GMH's expert material first, and then MST improperly formulated its affirmative opinions with the benefit of GMH's expert material. *See id.*

33. Second, none of the scheduling orders issued in this case gave GMH the opportunity to submit its own rebuttal reports responsive to MST's rebuttal reports. Thus, GMH not only "was justifiably surprised by the inclusion of new opinions not constituting rebuttal or supplemental evidence" in the Folk Report, but GMH's prejudice could not be cured. *See id.*

34. Third, to cure GMH's prejudice would "require reopening of the period for rebuttal reports by [GMH]'s expert[s], as well as extension of the discovery deadline." *See id.* at *5. Thus, even if "it d[id] not appear likely [that] allowing the evidence would disrupt the trial," doing so still would be improper. *See id.*

35. The fourth factor, "importance of the evidence, weighs in [GMH]'s favor." *See id.* The expert opinions at issue are critical for MST to establish in its case-in-chief and critical for

12

GMH to defend in its own case. Through its unjustifiable delay, MST has robbed GMH of the ability to fully rebut these important opinions.

36. Fifth and finally, "Plaintiff [MST]'s explanation for its failure to disclose the opinions in [] initial expert reports, does not reflect a need to add information not available at that time or necessary to correct inaccuracies." *See id.* "[I]t is clear from the language and content of [the Folk Report] that [all but four pages' worth of opinions therein] are not true rebuttals or supplements as defined by the Federal Rules and case law." *See id.* MST chose not to disclose the opinions. MST should not be rewarded for ignoring the Federal Rules of Civil Procedure or this Court's own scheduling orders. After all, "[a] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Jordan v. E.I. du Pont de Nemours & Co.*, 867 F. Supp. 1238, 1250 (D.S.C. 1994), *quoted in Eichin v. Ethicon Endo-Surgery, Inc.*, No. 4:21-CV-03274-JD, 2024 WL 4564611, at *6 (D.S.C. Oct. 24, 2024) (denying untimely motion to amend scheduling order to permit submission of expert testimony and granting summary judgment).

37. In light of its unjustifiable delay, MST cannot be permitted to offer the expert opinions and testimony of Dr. Folk in its case-in-chief. Nor can it seek to assert Dr. Folk's affirmative opinions as rebuttal to GMH's expert witness testimony. Indeed, what MST has done here is the equivalent of a products liability plaintiff refraining from offering his expert's affirmative testimony regarding negligence or design defect, waiting to receive and review a defendant manufacturer's own expert testimony, and then offering his real affirmative opinions under the guise of rebuttal opinions which the defendant manufacturer could not rebut. No Court would permit such actions, and MST should not be permitted to do the same in this instance.

38.     Based on the foregoing reasons and the attachments to this Motion, GMH respectfully requests that this Court (1) prohibit Dr. Folk from testifying or otherwise offering his opinions in MST's case-in-chief at trial, and (2) limit Dr. Folk's testimony in rebuttal to his opinions that expressly critique MST's expert Alton Brown (specifically those contained on pages 34–38 of Dr. Folks expert report).

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Wesley T. Moran*
Wesley T. Moran
Federal Bar No. 12797
E-Mail: wes.moran@nelsonmullins.com
Susan P. MacDonald
Federal Bar No. 0984
E-Mail: susan.macdonald@nelsonmullins.com
3751 Robert M. Grissom Parkway / Suite 300
Post Office Box 3939 (29578-3939)
Myrtle Beach, SC 29577-6412
(843) 448-3500

***Attorneys for Defendant Georgetown Memorial Hospital***

Myrtle Beach, South Carolina
April 1st, 2025