### UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| MST, LLC, | ) ) ) ) | No. 2:22-cv-00874-DCN |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM IN SUPPORT** |
| North American Land Trust and Georgetown Memorial Hospital, | ) ) ) | **OF SUMMARY JUDGMENT** |
| Defendants. | ) ) ) ) ) | |

Defendant Georgetown Memorial Hospital ("**GMH**") respectfully submits this memorandum in support of its Motion for Summary Judgment ("**Motion**") under Rule 56 of the Federal Rules of Civil Procedure on the declaratory judgment action asserted by Plaintiff MST, LLC ("**MST**") in its Complaint (ECF No. 1).

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    UNDISPUTED FACTS ...................................................................................... 2

       A.    The Youngs Acquire Weehaw Plantation and Execute a Conservation
             Easement Thereon in 1995 ..................................................................... 2

       B.    In 2008, GMH Purchases a Portion of Weehaw Plantation after the
             Youngs and NALT Remove the Restrictions of 1995 Conservation
             Easement from that Portion. ................................................................... 4

       C.    In 2010, MST Purchases the Remaining Balance of Weehaw
             Plantation from the Youngs. ................................................................... 7

       D.    In 2021, GMH Seeks to Rezone the Hospital Property and Sell It to an
             Affordable Housing Developer. .............................................................. 8

III.   PROCEDURAL BACKGROUND ..................................................................... 9

IV.    LEGAL STANDARD ....................................................................................... 10

V.     ARGUMENT .................................................................................................... 11

       A.    GMH Is Entitled to Summary Judgment Because MST Lacks
             Standing to Bring Its Claim. ................................................................ 12

       B.    GMH Is Entitled to Summary Judgment Because MST Stands in the
             Shoes of the Youngs—Who Granted the 2008 Amendment—and
             Thus Must Be Estopped from Denying the Effectiveness Thereof. ....... 13

       C.    GMH Is Entitled to Summary Judgment Because MST Purchased
             MST's Property Subject to and with Full Knowledge of the 2008
             Amendment and Thus Must Be Estopped from Denying the
             Effectiveness Thereof. .......................................................................... 18

       D.    GMH Is Entitled to Summary Judgment Because MST's Claim Is
             Time Barred under the Doctrine of Laches............................................ 23

       E.    GMH Is Entitled to Summary Judgment Because GMH Is a Bona Fide
             Purchaser for Value............................................................................... 26

       F.    GMH Is Entitled to Summary Judgment Because the 2008
             Amendment Is Valid. ............................................................................ 30

VI.    CONCLUSION................................................................................................. 35

## I. __INTRODUCTION__

This case is about MST's attempt to assert dominion and control over GMH's property by seeking to invalidate a 2008 amendment to a conservation easement that formerly encumbered GMH's property. In its efforts to invalidate the amendment, MST ultimately seeks to enforce the restrictions of the original conservation easement on GMH's property to prevent that property from being developed. In other words, through this lawsuit MST seeks to control what can and cannot be done on GMH's property, despite the undisputed fact that MST does not own, and has never owned, the property. Moreover, through this lawsuit, MST impermissibly seeks to invalidate the actions of its own predecessors-in-interest, who, along with the North American Land Trust, executed the 2008 amendment releasing GMH's property from the restrictions imposed by the original conservation easement. For the reasons detailed herein, GMH is entitled to summary judgment on MST's claim.

As a threshold issue, because MST has never had any interest in GMH's property, MST lacks standing to bring this action over a conservation easement formerly existing on GMH's property. Yet, ___even if___ MST were to have standing, GMH still would be entitled to summary judgment for multiple additional reasons. First, MST must be estopped from challenging the validity of the 2008 amendment because the former owners who sold GMH its property and executed that amendment also sold MST its own separate property in 2010; MST thus stands in the shoes of its predecessors-in-interest to MST's property—*i.e.*, the same couple who also sold the property at issue to GMH and executed the 2008 amendment in order to secure GMH's purchase of that property. Separately, MST also must be estopped from denying the validity of the 2008 amendment because MST itself purchased its own property expressly "___subject to___" and with full knowledge of that 2008 easement amendment and its effect. What's more, MST's failure

to raise any objections to the validity of that 2008 amendment after purchasing its own property in 2010 render its current claims (not initiated ***until 2022***) barred by the doctrine of laches. Additionally, because GMH is a bona fide purchaser for value with respect to the property it purchased, GMH took title thereto without any encumbrance from the prior conservation easement—***even if*** the 2008 amendment were deficient.  Finally, GMH is entitled to summary judgment because the 2008 amendment is valid as a matter of law and fully effected the removal of the prior conservation easement's restrictions on GMH's property.  Accordingly, GMH is entitled to summary judgment on MST's claim.

## II.   UNDISPUTED FACTS

### A. The Youngs Acquire Weehaw Plantation and Execute a Conservation Easement Thereon in 1995.

In 1988, Larry and Judy Young acquired 932.56 acres of land in Georgetown, South Carolina commonly known as Weehaw Plantation ("**Weehaw Plantation**"), outlined in red below:[1]

---

[1] Two separate tracts (Tract 1 and Tract 2, both detailed in the image below) originally comprised Weehaw Planation.  Tract 2 is irrelevant for the purposes of this case and will not be discussed.



(Mot. Ex. A at 71; Mot. Ex. B (transferring Weehaw Plantation to Larry Young); Mot. Ex. C (transferring half-interest in Weehaw Planation to Judy Young).)

Years later, on December 29, 1995, Larry and Judy granted North American Land Trust ("**NALT**") a conservation easement on a subset of Weehaw Planation (the "**1995 Conservation Easement**") by way of an executed Declaration of Restrictive Covenants (Mot. Ex. A at 22–34). (*See* Mot. Ex. D ¶ 7.)  The 1995 Conservation Easement encumbered approximately 788 acres (highlighted in yellow below) of Weehaw Plantation's total 932.56 acres:



(Mot. Ex. A at 41 (highlighting added).)  Thereafter, Larry and Judy conveyed Weehaw Plantation

to their son Kyle Young and his wife Jacqueline Young (the "**Youngs**").  (Mot. Ex. D ¶ 7.)

### B.  In 2008, GMH Purchases a Portion of Weehaw Plantation after the Youngs and NALT Remove the Restrictions of 1995 Conservation Easement from that Portion.

Beginning around 2008, an exhaustive study of possible sites for the new Georgetown

public hospital was conducted.  (Mot. Ex. E 10:4–18, 13:7–16.)  Due to various site selection

criteria (including wetland areas, elevation, and other infrastructure considerations, *see id.* 13:17–

15:11), it was determined that a portion of Weehaw Plantation was the best site for a potential

hospital development.  (*See id.* 16:1–17:1.)  GMH subsequently approached the Youngs to inquire

about purchasing approximately 65 acres of Weehaw Plantation to construct a new hospital

campus.  (*Id.* 17:13–18:1, 21:4–22:10.)  On November 10, 2008, while the Youngs and GMH were

negotiating GMH's purchase of 65 acres of Weehaw Plantation, Georgetown County passed

Ordinance No. 2008-65. (Mot. Ex. F.) That ordinance rezoned portions of Weehaw Plantation from residential and general commercial uses and placed them in a new Georgetown Memorial Hospital Weehaw Campus Planned Development (the "**Planned Development**"). (*Id.*)

On December 19, 2008, the Youngs and NALT executed an amendment to the 1995 Conservation Easement (the "**2008 Amendment**") in order to release the 56.75 acres of upland property (the "**Hospital Property**"; highlighted below in blue) from the original restrictions contained in the 1995 Conservation Easement (highlighted below in yellow):



(Mot. Ex. G at 12 (highlighting added).) [2] NALT executed the 2008 Amendment in exchange for the Youngs agreeing to further encumber approximately 35 acres of more culturally and ecologically significant property in Weehaw Plantation by extinguishing their reserved right to

_____

[2] The remaining 8.25 acres of the Hospital Property were never encumbered by the 1995 Conservation Easement. (*Id.* at 2.)

5

develop five homesites (which were originally unencumbered and permitted to be developed under the 1995 Conservation Easement). (*Id.* at 2.) Before executing the 2008 Amendment, NALT determined, and the Youngs agreed, that amending the 1995 Conservation Easement in this manner would "have a greater ecological benefit and further advance and protect the Conservation Purposes of the Conservation Easement." (*Id.*) The Youngs, NALT, and GMH were each represented by separate counsel during the amendment process. (*See* Mot. Ex. E 8:20–9:1, 35:1–36:5.) Each of their counsel determined that the 2008 Amendment was valid and that it removed the restrictions placed on the Hospital Property by the 1995 Conservation Easement. (*See id.* 34:3–36:5, 53:13–54:19.)

On December 30, 2008, GMH purchased the Hospital Property from the Youngs. (Mot. Ex. H.)[3] The 2008 Amendment was recorded with the Georgetown County Register of Deeds the same day. (Mot. Ex. G.) The 2008 Amendment made clear that, at the time GMH purchased the Hospital Property, GMH "need[ed] to relocate its Georgetown Memorial Hospital campus due to the inability to expand in its current location due to geographic restraints." (*Id.* at 2.) The 2008 Amendment also made clear that GMH intended to build a new hospital campus on the Hospital Property. (*Id.*) However, neither the 2008 Amendment nor any other instrument restricted GMH's use of the Hospital Property. (*See id.*; *see also* Mot. Ex. N 278:21–279:8.) GMH was free to use, develop, and/or sell the Hospital Property for any purpose, subject to the appropriate zoning. (*See* Mot. Ex. G.)

---

[3] Although the Youngs initially conveyed the Hospital Property to Georgetown Hospital System (*id.* at 1), Georgetown Hospital System subsequently executed a corrective deed transferring the Hospital Property to GMH. (Mot. Ex. P at 4.)

### C. In 2010, MST Purchases the Remaining Balance of Weehaw Plantation from the Youngs.

On June 16, 2010, MST purchased from the Youngs the remaining balance of Weehaw Plantation (as reduced after sale of the Hospital Property to GMH, *inter alia*)—a tract approximately 687.20 acres in size (the "**Weehaw Balance**"). (Mot. Ex. I.) The deed transferring title of the Weehaw Balance from the Youngs to MST expressly stated that MST purchased that property "***subject to***" the 1995 Conservation Easement and the 2008 Amendment. (*See id.* at 2 (emphasis added).) Thus, as Jim Murren ("**Murren**," the principal[4] of MST) testified, when MST purchased the Weehaw Balance, MST had notice of both the 1995 Conservation Easement and the 2008 Amendment—the latter of which removed 56.75 acres of GMH's Hospital Property from the 1995 Conservation Easement and stated GMH's intent to develop the Hospital Property. (*See id.*; Mot. Ex. J 97:11–99:23.)

Moreover, MST's attorney reviewed the 1995 Conservation Easement and the 2008 Amendment with Murren and Murren's wife (Heather) prior to MST's purchase of the Weehaw Balance, and he represented to them that the 2008 Amendment removed the restrictions on the Hospital Property and that there might be future development on that parcel. (Mot. Ex. E 62:25–66:8.) Murren himself testified that he understood the 2008 Amendment to remove MST's right to develop five building envelopes and to remove the restrictions imposed by the 1995 Conservation Easement on the Hospital Property. (Mot. Ex. J 99:13–20.) And, with full

---

[4] Murren is the trustee and sole beneficiary of the trust owning MST. (Mot. Ex. J 46:10–19, 46:22–47:24, 78:3–22.)

knowledge of those two consequences of the 2008 Amendment, Murren moved forward with MST's purchase of the Weehaw Balance. (*Id.* 99:21–23, 128:9–19.).

Significantly, MST's purchase price on the Weehaw Balance reflected the surrendered development rights on the property—as the purchase price likely would have been higher if the Weehaw Balance had included those development rights.

### D. In 2021, GMH Seeks to Rezone the Hospital Property and Sell It to an Affordable Housing Developer.

Despite GMH's original intentions in 2008, GMH ultimately was unable to develop a hospital upon the Hospital Property. (Mot. Ex. E 66:17–67:5.) Indeed, due to the fallout of the 2008 financial crisis, GMH was forced to change its long-term strategic plan and focus resources on higher-growth areas in northern Georgetown County and Horry County. (Mot. Ex. O at 2–3.) Thus, rather than develop a hospital on the Hospital Property, GMH instead renovated its existing hospital campus in Georgetown. (*Id.*; *see also* Ex. E 66:17–67:5.) Thereafter, GMH designated the Hospital Property as "surplus" property that needed to be offloaded from its portfolio via sale. (Mot. Ex. E 67:19–68:2.)

To achieve that end, on February 19, 2021, GMH ultimately applied to Georgetown County for a modification to the Planned Development governing the Hospital Property. (Mot. Ex. K.) At that time, GMH hoped to sell the property to an affordable housing developer so that GMH and other businesses in Georgetown could attract and recruit lower- to middle-income skilled workers necessary for their businesses to operate; for this reason, GMH's application to Georgetown County sought to allow for multifamily housing on the Hospital Property. (*See id.* at 6.) Following the announcement of GMH's application, MST's counsel wrote a letter to the Georgetown County Council claiming that GMH's Hospital Property could not be rezoned to allow for multifamily housing because the 2008 Amendment was invalid and thus the Hospital Property was still fully

encumbered by the 1995 Conservation Easement. (Mot. Ex. L.) GMH's proposed modification to the planned development then failed to pass during its final reading—despite receiving unanimous approval in its prior two readings. (*See* Mot. Ex. D ¶¶ 27–28.)

### III. PROCEDURAL BACKGROUND

Following Georgetown County Council's failure to pass the proposed modification to the Planned Development, MST filed this lawsuit on March 16, 2022. (*See generally* Mot. Ex. D.) MST brings a single cause of action for declaratory judgment therein and demands relief that is specifically tied to GMH's use of its property. (*Id.* ¶¶ 31–39.) MST seeks a declaration that the 2008 Amendment "is invalid as a matter of law because the [1995] Conservation Easement requires that the property encumbered by the Conservation Easement be encumbered in perpetuity." (*Id.* ¶ 33.) More specifically, MST argues that the 1995 Conservation Easement prevents NALT from activity "that would result in [the easement] failing to qualify as a valid conservation" under 27 U.S.C. § 170(h), and that conservation easements are valid under 27 U.S.C. § 170(h) only if they are "granted in perpetuity." (*Id.* ¶¶ 34–36.) MST asks this Court to decide that "the Conservation Easement still encumbers the Hospital Easement Property" and for a judgment that "the Hospital Easement Property is still subject to and encumbered by all the terms and conditions of the Conservation Easement." (*Id.* ¶¶ 39 *et seq.*)

After filing unsuccessful motions to dismiss MST's claim (ECF Nos. 14 and 15, *denied by* ECF No. 29), GMH and NALT filed answers on November 22, 2022. (ECF Nos. 30, 31.) In its answer, GMH pleaded counterclaims against MST and third-party claims against the individuals associated with MST, James and Heather Murren, but this Court dismissed those counterclaims on May 19, 2023. (ECF No. 53.)

On March 28, 2024, GMH and NALT moved this Court for reconsideration of its prior

order (ECF No. 29) denying GMH's and NALT's motions to dismiss (ECF No. 14, ECF No. 15). (ECF Nos. 63, 66.)  GMH then successfully moved to amend its answer (ECF No. 72, *granted by* ECF No. 73) and filed an amended answer pleading third-party claims against Kyle and Jacqueline Young (ECF No. 77).  Jacqueline Young answered (ECF No. 96), but default was entered against Kyle Young (ECF No. 108).  This Court held a hearing on GMH's and NALT's motions for reconsideration on March 4, 2025 (ECF No. 111) and issued a text order on March 5, 2025 advising the parties that it was taking the Motions for Reconsideration under advisement (ECF No. 112).

## IV.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

"The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion."  *Britt v. Sorin Grp. Deutschland GMBH*, No. 6:18-CV-03117-DCC, 2023 WL 5757306, at *2 (D.S.C. Sept. 6, 2023) (original citation sentences omitted).

"A litigant cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## V. ARGUMENT

GMH is entitled to summary judgment for multiple independent reasons. As a threshold issue, GMH is entitled to summary judgment because MST lacks standing to bring its claim under S.C. Code Ann. § 27-8-40. Yet, ***even if*** MST were to have standing, GMH still would be entitled to summary judgment on MST's claim. Standing in the shoes of its predecessors-in-interest, the Youngs, MST must be estopped from challenging the validity of the 2008 Amendment and seeking to enforce the restrictions of the 1995 Conservation Easement on the Hospital Property, as the Youngs themselves executed the 2008 Amendment attesting to the validity of the same. MST further must be estopped from denying the validity of the 2008 Amendment because MST purchased the Weehaw Balance expressly "***subject to***" and with full knowledge of the 2008 Amendment's effects. And MST's failure to raise any objections to the validity of the 2008 Amendment, despite that full knowledge, until 2022 render its claim barred by the doctrine of laches. Additionally, because GMH is a bona fide purchaser for value with respect to the Hospital Property, even if the 2008 Amendment is invalid or legally unenforceable, GMH took title to the Hospital Property free of any restrictions or encumbrances imposed by the 1995 Conservation Easement. Finally, GMH is entitled to summary judgment because the 2008 Amendment is valid and fully effected the removal of the 1995 Conservation Easement's restrictions on the Hospital Property.

### A. GMH Is Entitled to Summary Judgment Because MST Lacks Standing to Bring Its Claim.

As set forth in GMH's and NALT's Motions to Dismiss (ECF Nos. 14, 15) and Motions for Reconsideration (ECF Nos. 63, 66) (including all briefing submitted in relation to the same, ECF Nos. 23, 24, 79, 80),[5] GMH is entitled to summary judgment because MST lacks standing to bring this case. The South Carolina Conservation Easement Act of 1991 (the "Act") strictly limits the persons entitled to bring "[a]n action affecting a conservation easement." S.C. Code Ann. § 27-8-40(a). Under that Act, such actions "may be brought by:

(1) an owner of an interest in the real property burdened by the easement;

(2) a holder of the easement;

(3) a person having a third-party right of enforcement; or

(4) a person otherwise authorized by law."

*Id.* § 27-8-40(a)(1)–(4). As this Court already determined, MST is neither "a holder of the easement," "a person having a third-party right of enforcement," nor "a person otherwise authorized by law." (ECF No. 29 at 18 ("Neither of these provisions, (A)(2)–(3), grant MST standing to bring this action . . . ."); *id.* at 22 ("MST does not have standing under (A)(4).").) Thus, as this Court previously indicated, MST's only conceivable authority for standing is Section 27-8-40(A)(1) as "an owner of an interest in the real property burdened by the easement" (*id.* at 21)— and *only because* the Court found that MST is a successor-in-interest to the grantor of the 1995 Conservation Easement (*id.* at 18–19).

However, MST does not own and has never owned the Hospital Property. Thus, MST is not "an owner of an interest" in the 1995 Conservation Easement with respect to the Hospital

---

[5] GMH reincorporates the arguments raised in these filings, and those articulated to the Court at the March 4, 2024 hearing as if fully set-forth herein.

Property under basic principles of South Carolina law, and as articulated by the South Carolina Court of Appeals in *Floyd v. Dross*. 442 S.C. 79, 95–96, 897 S.E.2d 191 199–200 (Ct. App. 2024) (finding that one can be a successor in title *only with respect to* the property he or she receives from the grantor and preventing the plaintiff from attempting to enforce a conservation easement on a neighboring piece of property which the plaintiff did not own and in which the plaintiff did not have any interest).  Accordingly, MST lacks standing to bring this case, and GMH is entitled to summary judgment on this issue.  Nevertheless, even if MST were to have standing—which GMH expressly denies for the foregoing reasons—the only way in which MST could conceivably have standing would be as a successor-in-interest to the Youngs. (ECF No. 29 at 21.)  But, as a successor-in-interest to the Youngs, MST is estopped from challenging the validity of the 2008 Amendment or otherwise seeking to impose the restrictions of the 1995 Conservation Easement on the Hospital Property.  (*See* Section V.B and C, *infra*.)

   **B.  GMH Is Entitled to Summary Judgment Because MST Stands in the Shoes of the Youngs—Who Granted the 2008 Amendment—and Thus Must Be Estopped from Denying the Effectiveness Thereof.**

   GMH is separately entitled to summary judgment because MST is estopped from challenging the effect of the 2008 Amendment—an amendment undertaken for the benefit of GMH and NALT by MST's predecessors-in-interest, the Youngs, in whose shoes MST now stands.

   "Estoppel is an equitable doctrine, essentially flexible, and therefore to be applied or denied as equities between the parties may preponderate."  *Landing Dev. Corp. v. City of Myrtle Beach*, 285 S.C. 216, 221, 329 S.E.2d 423, 425 (1985).  "The essential elements of an equitable estoppel as related to the party claiming the estoppel are:  (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party

estopped; and (3) the action based thereon was of such a character as to change prejudicially the position of the party claiming the estoppel." *Id*. at 219, 329 S.E.2d at 424.

Importantly—and especially relevant to the facts present in this case—a successor-in-interest is estopped from asserting any position which its predecessor-in-interest is estopped from asserting. *See Watson v. Watson*, 172 S.C. 362, 174 S.E. 33, 36 (1934) (explaining that successors "stand exactly in the shoes of the [predecessor], and that they therefore are estopped to question anything that the [predecessor] was estopped from asserting."); *Thompson v. Hudgens*, 161 S.C. 450, 159 S.E. 807, 811 (1931) (opinion of circuit judge affirmed on appeal "for the reasons stated therein") ("How far does the estoppel go? . . . The answer is[,] generally, that all those in privity with him are also estopped by reason of his conduct in the premises.")*; Holley v. Glover*, 36 S.C. 404, 15 S.E. 605, 613 (1892) (finding that grantor's conveyance of property placed grantee in the shoes of grantor, invested him with the same seisin, subject to the same qualifications, with which grantor had previously been invested); *Brown v. Moore*, 26 S.C. 160, 2 S.E. 9, 12 (1887) (finding that the grantee stands in the shoes of the grantor, and "can make no denial that he could not make")*.

The policy goal undergirding the principle of estoppel in the real property context—which in essence makes the actions of a predecessor-in-interest binding on its successors-in-interest—is grounded in practicality. *See* 28 AM. JUR. 2D *Estoppel and Waiver* § 1 (Jan. 2025 update). Indeed, if a successor-in-interest to real property could challenge or seek to invalidate the acts of its predecessors, purchasers of real property would have no certainty about the rights they had acquired in the real property that they purchased—or what restrictions could be imposed on the property that they purchased. *See id.* ("The doctrine of estoppel is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to their

14

detriment. The purpose of the doctrine is to forbid one to speak against their own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon. The purpose of estoppel is to protect those who have been misled by that which upon its face was fair or those who have been misled by false and inconsistent statements."). This type of uncertainty would stifle the real estate market and mire transfers of real property in inordinate amounts of litigation.

The South Carolina Supreme Court's opinion in *Kerr v. City of Columbia* is instructive. 232 S.C. 405, 102 S.E.2d 364 (1958). In 1953, the Town of Eau Claire zoned the *Kerr* plaintiff's property for business use, and town officials subsequently represented the property as such. *Id.* at 408–09, 102 S.E.2d at 365. Based on this understanding, in 1955, the plaintiff arranged to sell her property to a company for redevelopment as a gas station and sought a building permit therefor. *Id.* at 409, 102 S.E.2d at 365. The Eau Claire town council refused the permit on the basis that the plaintiff's property was "zoned for residents." *Id.* Shortly thereafter, the Town of Eau Claire merged with the City of Columbia; when the plaintiff then reapplied for a building permit from Columbia, she received another rejection on the same basis. *Id.* at 409, 102 S.E.2d at 365–66. On appeal, the South Carolina Supreme Court ordered the City of Columbia to issue the building permit to plaintiff—finding that the City of Columbia, standing in the shoes of the Town of Eau Claire, was estopped from denying the property's business zoning since Eau Claire town officials had represented it as such and the plaintiff had relied upon that status. *Id.* at 411–12, 102 S.E.2d at 367.

Here, the Youngs themselves would be estopped from challenging the validity of the 2008 Amendment. In 2008, the Youngs and NALT executed the 2008 Amendment to the 1995 Conservation Easement. (Mot. Ex. G.) Within the 2008 Amendment, the Youngs voluntarily

15

extinguished their own valuable development rights to the Weehaw Balance, in furtherance of the conservation purposes of the 1995 Conservation Easement, and in exchange for the release of the Hospital Property from the easement's restrictions.  (*See id.* at 1–3.)  The Youngs, NALT, and GMH were each represented by separate counsel during the amendment process.  (*See* Mot. Ex. E 8:20–9:1, 35:1–36:5.)  Each of their counsel determined that the 2008 Amendment was valid and that it removed the restrictions placed on the Hospital Property by the 1995 Conservation Easement in exchange for extinguishing the Youngs' development rights by encumbering five home sites on the Youngs' remaining property, the Weehaw Balance.  (*See id.* 34:3–36:5, 53:13–54:19.)

Consequently, the Youngs would be estopped from now challenging the validity or enforceability of the 2008 Amendment.  Indeed, the Youngs ***executed*** the 2008 Amendment, acknowledging and agreeing to its terms—an act by the Youngs which expressly conveyed that the restrictions articulated in the 1995 Conservation Easement no longer encumber the Hospital Property.  Nevertheless, MST has now filed this lawsuit to contest this reality.  The Youngs executed the 2008 Amendment precisely for the purpose of securing GMH's purchase of the Hospital Property.  And yet, MST now claims that the 2008 Amendment did not accomplish the result which the Youngs (as predecessors-in-interest to MST) held out to GMH.  GMH lacked knowledge or the means to obtain knowledge of the 2008 Amendment's alleged ineffectiveness.  Indeed, GMH relied on its legal counsel who worked with counsel for the Youngs and NALT to ensure that the 1995 Conservation Easement was amended such that the Hospital Property could be developed.  (*See* Mot. Ex. E 35:1–36:5.)  Counsel for GMH, the Youngs, and NALT each determined that the 2008 Amendment was valid and that it removed the restrictions placed on the Hospital Property by the 1995 Easement (s*ee id.* 34:3–36:5, 53:13–54:19)—a fact to which the Youngs attested when they executed the 2008 Amendment on December 19, 2008.  (Mot. Ex. G

at 3 (stating that the Hospital Parcel is released from and no longer subject to the easements, covenants, prohibitions, and restrictions set forth in the Conservation Easement).)  GMH, therefore, not only relied on the Youngs' representations and conduct related to the 2008 Amendment, but undertook prejudicial action based upon that conduct—namely, purchasing the Hospital Property for approximately $3.3 million for a purpose dependent upon the efficacy of the 2008 Amendment.  (*See* Mot. Ex. M 45:3–18 (testifying that GMH's purchase of the Hospital Property was contingent on the Amendment validly removing the Hospital Parcel from the restrictions imposed by the Conservation Easement)).[6]  Under these facts, the Youngs would be estopped from challenging the validity of the 2008 Amendment and seeking to enforce the restrictions imposed by the 1995 Conservation Easement on the Hospital Property.  *See Landing Dev.*, 285 S.C. at 219, 329 S.E.2d at 425 (estopping the city from enforcing a zoning ordinance to prevent short-term rentals where (1) the defendant informed the city's zoning coordinator of its intent to rent the at-issue property on a weekly or possibly daily basis, (2) the City's zoning coordinator represented that such rentals were permitted by the ordinance, and (3) defendant spent tens of thousands of dollars in reliance on the zoning coordinators' statements interpreting the ordinance; concluding that, "[t]o allow the City to repudiate its former interpretation of permissible rentals and the statements of its zoning director, based upon a re-assessment of the meaning of an undefined term in the ordinance would be ***unconscionable***" (emphasis added)).

Because the Youngs would be estopped from challenging the 2008 Amendment's validity and seeking to enforce the restrictions of the 1995 Conservation Easement on the Hospital Property, MST—as the Youngs' successor-in-interest to the Weehaw Balance—is likewise

---

[6] Further, the parties incurred substantial time and expense in studying the ecological effects of the 2008 Amendment as well as negotiating, preparing, and executing the 2008 Amendment.  (Mot. Ex. N 246:24–248:8, 269:2–275:17.)

estopped from doing so.  *See Kerr*, 232 S.C. at 411–12, 102 S.E.2d at 367.  Accordingly, MST cannot now challenge the actions of its predecessor—the Youngs—as it relates to the 2008 Amendment, and therefore, GMH is entitled to summary judgment on MST's claim.

   **C. GMH Is Entitled to Summary Judgment Because MST Purchased MST's Property Subject to and with Full Knowledge of the 2008 Amendment and Thus Must Be Estopped from Denying the Effectiveness Thereof.**

   GMH is separately entitled to summary judgment based on the doctrine of "estoppel by deed" because MST purchased the Weehaw Balance subject to and with the full knowledge of the 2008 Amendment and thus must be estopped from denying the effectiveness thereof.  Under basic principles of estoppel and equity (including, in particular, estoppel by deed), a party to a deed or its privy cannot contradict the express provisions of the deed while, at the same time, seeking to benefit therefrom:

> Estoppel by deed is a bar that precludes one party to a deed and their privies from asserting as against the other party and their privies any right or title in derogation of the deed or from denying the truth of any material facts asserted in it. . . . Generally, the doctrine of estoppel by deed provides that equity will not permit a grantor, or one in privity the grantor, to assert anything in derogation of an instrument concerning an interest in real or personal property as against the grantee or the grantee's successors. . . . The principle is that[,] when a person has entered into a solemn engagement by deed, that person will not be permitted to deny any matter that they have asserted therein[,] for a deed is a solemn act[,] to any part of which the law gives effect as the deliberate admission of the maker; to the maker[,] it stands for truth, and in every situation in which the maker may be placed with respect to it, it is true as to them.

28 AM. JUR. 2D *Estoppel and Waiver* § 5 (Jan. 2025 update);[7] 7 S.C. JUR. *Estoppel and Waiver* § 7 (Feb. 2025 update); *see also Gibson v. Lyon*, 115 U.S. 439, 447–48 (1885) ("[A plaintiff] certainly

---

[7] *See also* 28 AM. JUR. 2D *Estoppel and Waiver* § 12 (Jan. 2025 update) ("Estoppel by deed binds not only the grantor but also those in privity with the grantor . . . . The well-established general principle is that a grantor and the grantor's privies are estopped as against the grantee and those in privity with the grantee from asserting anything in derogation of the grant or from denying the truth of any material facts stated in the conveyance.").

cannot be permitted to claim both *under* and *against* the same deed; to insist upon its efficacy to confer a benefit and repudiate a burden with which it has qualified it; to affirm a part and reject a part." (emphasis added)); *Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 151, 425 S.E.2d 764, 776 (Ct. App. 1992) (estopping property owner from complaining of fact "expressly provide[d]" in deed); *Long Grove at Seaside Farms, LLC v. Long Grove Property Owners' Ass'n, Inc.*, No. 2009-CP-10-06746, 2012 WL 10890587, at *15 (S.C. Ct. Com. Pls. July 23, 2012) ("[T]he [property owners association] and unit owners are estopped as a matter of law from disclaiming or collaterally attacking the validity of the assumption of liability, disclaimers, and releases that are contained in the instruments of record applicable to their property.").[8]  In other words, where a party (such as MST) acquires property pursuant to a deed, it cannot subsequently challenge the rights, restrictions, or other conditions conveyed in that deed, or otherwise attack (or seek to invalidate) the prior conveyances which that deed incorporates.

In 2010, MST purchased its own portion of Weehaw Plantation (the Weehaw Balance) from the Youngs for approximately $3.4 million—a price that reflected the value of the Weehaw Balance being subject to the 1995 Conservation Easement and the 2008 Amendment.  Indeed, the deed transferring title of the Weehaw Balance from the Youngs to MST expressly stated that MST purchased the property ***subject to*** the 1995 Conservation Easement ***and*** the 2008 Amendment.

---

[8] *See also Keller v. Parish*, 196 N.C. 733, 147 S.E. 9 (1929) ("[B]ecause they accepted their deed subject to the mortgages, the grantees were estopped to deny that the mortgages were valid."); *J.H. Williams Oil Co. v. Harvey*, 872 So. 2d 287, 289 (Fla. Dist. Ct. App. 2004) ("The language of the reservation agreement [between the Trust and Chevron] expressed the intention of the Trust and Chevron that the title to the property be taken subject to this reservation.  Likewise, it is clear from the face of the deed that Chevron was conveying title [to Chevron's successor-in-interest] subject to the reservation.  The deed not only included a description of the reservation but also cited the location in the public records where a copy of the reservation could be found.  [Chevron's successor-in-interest] therefore is estopped from denying the reservation as it had appropriate notice from the face of the deed by which it took title and from the public records.").

(*See* Mot. Ex. I.) Thus, when MST purchased its portion of Weehaw Plantation, MST had notice of both the 1995 Conservation Easement and the 2008 Amendment—the latter of which (1) removed 56.75 acres of GMH's Hospital Property from the 1995 Conservation Easement in exchange for further encumbering the Weehaw Balance by extinguishing the reserved development rights for the five homesites on the property and (2) expressly stated GMH's intent to develop the Hospital Property.

Both MST (through Murren) and its attorney for the 2010 purchase testified that they knew MST's purchase of the Weehaw Balance was subject to the 2008 Amendment—and that the 2008 Amendment removed the restrictions imposed by the 1995 Conservation Easement on the Hospital Property. At his deposition, Murren unambiguously testified to his knowledge of the 2008 Amendment and its effect at the time of MST's 2010 purchase:

> Q. Okay. Now, I believe I asked just a minute ago what your understanding was of how the conservation easement and amendment potentially impacted Weehaw Plantation. Did you have an understanding?
>
> A. Yes, a rough understanding.
>
> Q. Okay. And what was that rough understanding at the time you purchased the property?
>
> A. That the property could not be developed outside of the contours of what was previously agreed to with the North American Land Trust.
>
> Q. And what was your understanding of how the amendment potentially impacted the development of Weehaw Plantation?
>
> A. I didn't focus on the amendment, but I -- it -- to my recollection, the amendment took away some building lots that were on the Weehaw property originally, and that had no bearing on my decision to buy Weehaw.
>
> **Q. Okay. And were you also aware at the time that you purchased Weehaw that the hospital parcel had been removed from the conservation easement?**
>
> **A. I was.**

*     *     *

Q.  But you understood that the amendment removed rights to develop five building envelopes on Weehaw when you purchased it, right?

A.  I did understand, yes.

**Q.  And you understood that it removed the hospital property from the conservation easement on Weehaw; is that correct?**

**A.  That's what I understood, yes.**

**Q.  And even knowing those two things you decided to purchase Weehaw?**

**A.  I did.**

*     *     *

Q.  Okay.  Now, when you purchased 687.2 acres of Weehaw from the Youngs, you did so with the understanding that it was subject to the conservation easement and the 2008 amendment, correct?

A.  That is correct.

**Q.  And you made the decision to purchase Weehaw for $3.4 million with the understanding, again, that it was subject to the conservation easement and the 2008 amendment; is that right?**

**A.  That is correct.**

(Mot. Ex. J 97:16–98:16, 99:13–23, 128:9–19 (emphasis added).)  Relatedly, MST's attorney for the 2010 purchase likewise testified to his knowledge and discussions with MST about the 2008 Amendment's effect:

Q.  Now, did you go over this provision with the members of MST and explain to them what it meant from a legal standpoint?

A.  **I would have gone over the entirety of the title notes with this parcel** especially with the fact that the Murrens at the time had not bought a piece of property subject to a conservation easement. . . . **I would have absolutely discussed the terms and conditions of the easement.**

Q.  And understanding that you don't recall word for word what you discussed with them, do you recall having that conservation with them specifically?

. . .

21

Q.  And **did you discuss how the amendment, if at all, impacted their use and enjoyment of Weehaw Plantation?**

A.  **We talked quite a bit about** what the first -- the original agreement provided for the developability of these waterfront sites and how that was no longer possible, and the restrictions of the easement were now fully encumbering those, and **that he would have a neighbor that would potentially be a hospital adjacent to him.** Because at that point in time he was my client.  He needed to know that.

Q.  And at that point in time, **did Mr. Murren raise any concern to you of there potentially being a -- a hospital on the site next door?**

A.  **He proceeded to close, so I'm assuming he got comfortable with it or they, not him.**

(Mot. Ex. E 64:7–66:8 (emphasis added).)  Therefore, both MST and its attorney knew of the 2008 Amendment and its effect; more particularly, MST's attorney specifically counseled MST that GMH had arranged for the right to develop the Hospital Property.  (*See id.*)

Accordingly, MST must be estopped from denying the effectiveness of the 2008 Amendment.  Not only does the deed transferring title of the Weehaw Balance from the Youngs to MST expressly state that MST purchased the property ***subject to*** the 1995 Conservation Easement and the 2008 Amendment, MST itself (through Murren) understood that, when it purchased the Weehaw Balance in 2010, it was subject to the 1995 Conservation Easement and 2008 Amendment; that the restrictions imposed by the 1995 Conservation Easement no longer applied to the Hospital Property; that the Hospital Property could be developed; and that MST was purchasing the Weehaw Balance for $3.4 million subject to that understanding.

MST is, therefore, estopped from now seeking to challenge the validity of the 2008 Amendment and seeking to impose the restrictions of the 1995 Conservation Easement on the Hospital Property because it purchased the Weehaw Balance for $3.4 million in 2010 expressly subject to and understanding these conditions.  In other words, MST now seeks to (1) invalidate the 2008 Amendment to gain greater property rights in the Weehaw Balance than it purchased (*i.e.*, the right to develop the restricted building envelopes) and (2) to impose the restrictions of the 1995

22

Conservation Easement on the Hospital Property as a way of exercising dominion and control over a piece of property which it does not own and has never owned. However, because MST purchased the Weehaw Balance subject to the 1995 Conservation Easement and 2008 Amendment (*per* the express language of the deed conveying title of the Weehaw Balance to MST and according to MST's own understanding), and because it paid consideration of $3.4 million for the Weehaw Balance specifically subject to these conditions, MST is estopped from now challenging the effectiveness of the 2008 Amendment and seeking to impose the restrictions of the 1995 Conservation Easement on the Hospital Property (which the 2008 Amendment expressly released according to its plain language and to MST's own understanding of the 2008 Amendment prior to purchasing the Weehaw Balance). GMH is therefore entitled to summary judgment on MST's claim.

### D. GMH Is Entitled to Summary Judgment Because MST's Claim Is Time Barred under the Doctrine of Laches.

GMH is separately entitled to summary judgment because MST's claim is time barred under the doctrine of laches. "Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Richey v. Dickinson*, 359 S.C. 609, 612, 598 S.E.2d 307, 309 (Ct. App. 2004) (quoting *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 296, 519 S.E.2d 583, 598 (Ct. App. 1999)) (holding that doctrine of laches barred plaintiff from asserting claim after failing to pursue it for 11 years). "Under the doctrine of laches, if a party who knows his rights does not timely assert them, and by his delay, causes another party to incur expenses or otherwise detrimentally change his position, then equity steps in and refuses to enforce those rights." *Id.* (quoting *Muir*, 336 S.C. at 296, 519 S.E.2d at 599). "The party asserting laches has the burden of showing negligence, the opportunity to act sooner, and material prejudice." *Id.* (quoting *Muir*, 336 S.C. at 297, 519 S.E.2d at 599).

23

For the same reasons detailed above in Section V.C *supra*, the doctrine of laches bars MST from now challenging the effectiveness of the 2008 Amendment. MST purchased the Weehaw Balance in 2010; the deed transferring title to MST expressly stated that MST purchased the property ***subject to*** the 1995 Conservation Easement and the 2008 Amendment. Thus, when MST purchased its portion of Weehaw Plantation, MST had notice (and actual knowledge) of both the 1995 Conservation Easement and the 2008 Amendment. Both MST and its attorney for the 2010 purchase concede that they knew MST's purchase of the MST Property was subject to the 2008 Amendment—and that the 2008 Amendment removed the conservation easement for the Hospital Property. (*See* Mot. Ex. J 97:11–99:23; Mot. Ex. E 62:25–66:8.) Nevertheless, despite full knowledge and awareness, MST waited until 2022 to commence this action challenging the validity of the 2008 Amendment—a nearly 12-year delay, triggering the doctrine of laches. *See Richey*, 359 S.C. at 612, 598 S.E.2d at 309. MST had the opportunity to act immediately at the time of its 2010 purchase, or within any reasonable time-frame thereafter, yet it chose not to do so. GMH relied upon the efficacy of the 2008 Amendment, and it has suffered material prejudice from MST's complete silence by detrimentally changing its position and incurring significant expense as a result of MST's newfound contentions. (Mot. Ex. M 94:5–97:10 (explaining that, due to MST's recent reversal, GMH cannot sell the Hospital Property despite express interest therein by potential buyers—including a $3.5 million letter of intent to purchase the Hospital Property).) More specifically, in February 2021, GMH undertook multiple steps to prepare the Hospital Property to sell for use by an affordable housing developer so that GMH and other businesses in Georgetown could attract and recruit lower- to middle-income skilled workers necessary for their businesses to operate. (*See id.*) Yet, following MST's unexpected about-face, GMH was prevented from completing these plans. (*See id.*) As the result of MST's unjustifiable

laxity, GMH now has "a $3.3 million rock around [its] neck while [it's] trying to tread water." (*Id.* 95:5–7.)

In addition to the prejudice GMH has suffered by not being able to sell the Hospital Property due to MST's delayed challenge of the 2008 Amendment, GMH and the other parties' ability to defend this case has also been materially impacted by MST's delay: Simply put, documents and witnesses that would have previously been able to shed light on the issues present in this case are no longer available. Indeed, Andrew Johnson, NALT's former president, who was the person at NALT most involved in the 2008 Amendment process, died in 2021; he therefore cannot testify about key contentions raised by MST in this case, nor provide certain documents related to MST's claims, such as some of the studies referenced in the 2008 Amendment demonstrating NALT's conclusion that the substantial ecological benefits of the 2008 Amendment outweighed any detriments. (*See* Mot. Ex. N 103:14–140:13, 149:15–150:23, 229:13–231:14.) Moreover, NALT suffered a massive data breach in 2016 which may have resulted in stolen or lost records related to Weehaw and the 2008 Amendment process. (*Id.* 224:12–225:5.) Further, Dan Stacy, the attorney who (1) represented GMH in its purchase of the Hospital Property, (2) guided GMH through the 2008 Amendment process, and (3) represented MST in its purchase of the Weehaw Balance, destroyed his paper files related to these transactions in 2015 and 2017 respectively (which is within the requisite record-keeping requirements for South Carolina attorneys under Rule 1.15(a), RPC, Rule 407, SCACR, and Rule 417(1), SCACR), and has only been able to provide limited documentary evidence related to the issues in this case that he maintained on his backup computer systems. (*See* Mot. Ex. E 30:2–16, 30:20–31:5.) GMH also testified that MST's delay has negatively impacted its ability to defend itself in this litigation. Witnesses can no longer remember certain key facts at issue, and documents relating to the subject

matter of the litigation are no longer available, as this case was brought by MST long after GMH's documents at issue in this case were destroyed subject to its own retention policies. (*See* Mot. Ex. M 94:6–95:7.) This is the exact type of prejudice that the doctrine of laches is designed to prevent. *E.g.*, *Russell v. Todd*, 309 U.S. 280, 287 (1940) ("In the application of the doctrine of laches it recognized that prejudice may arise from delay alone, so prolonged that in the normal course of events evidence is lost or obscured . . . ."); *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 305 (4th Cir. 2012) ("Evidentiary prejudice encompasses such things as lost, stale or degraded evidence or witnesses whose memories have faded or who have died.").

MST's neglectful delay has further prejudiced the parties as they have operated under the 2008 Amendment and have been forced to pay to defend its validity. Specifically, NALT has expended significant time and expense associated with its yearly monitoring reports operating under the 2008 Amendment. (Mot. Ex. N 245:14–246:7.) Also, NALT has incurred substantial legal fees to defend this litigation, which is a suit that has caused unnecessary uncertainty in NALT's amendment practice. (*See* Mot. Ex. J 311:9–13; Mot. Ex. N 235:11–242:4.)

Accordingly, the doctrine of laches bars MST from now bringing this case seeking to invalidate the 2008 Amendment and impose the restrictions of the 1995 Conservation Easement on the Hospital Property ***almost 12 years after*** MST should have done so.

### E. GMH Is Entitled to Summary Judgment Because GMH Is a Bona Fide Purchaser for Value.

GMH is separately entitled to summary judgment because GMH is a bona fide purchaser for value with respect to the Hospital Property. "A purchaser may assert a plea in equity of a bona fide purchaser for value, without notice of defect in his title, by showing (1) he has actually paid in full the purchase money (giving security for the payment is not sufficient, nor is past indebtedness a sufficient consideration); (2) he purchased and acquired the legal title, or the best

right to it; and (3) he purchased bona fide, *i.e.*, in good faith and with integrity of dealing, without notice of a lien or defect. The bona fide purchaser must show all three conditions—actual payment, acquiring of legal title, and bona fide purchase—occurred before he had notice of a title defect or other adverse claim, lien, or interest in the property." *Spence v. Spence*, 368 S.C. 106, 117, 628 S.E.2d 869, 874–75 (2006); *see also* S.C. Code Ann. § 30-7-10 ("All deeds of conveyance of lands . . . or instruments in writing . . . charging or encumbering [property] . . . are valid so as to affect the rights of . . . purchasers for valuable consideration without notice . . . ."). In such circumstances, the bona fide purchaser for value takes title to the property free of any purported defect therein. *See Goodwin v. Harrison*, 231 S.C. 243, 249, 98 S.E.2d 255, 258 (1957).

Here, GMH actually paid in full the purchase money for the Hospital Property, acquired legal title thereto, and purchased it in good faith with integrity of dealing and without any notice of the purported defect in the 2008 Amendment.[9] More specifically, when GMH purchased the Hospital Property from the Youngs in 2008, GMH paid the Youngs the full purchase price of $3,301,513.56 and acquired legal title to the property, as evidenced by the General Warranty deed transferring title from the Youngs to GMH. (Mot. Ex. H; Mot. Ex. P.) Moreover, GMH purchased the Hospital Property with the good faith belief that the 2008 Amendment was valid, and that it was purchasing the property free of the restrictions imposed by the 1995 Conservation Easement. Nothing in the record of title suggested otherwise, and the 2008 Amendment itself stated that the 56.75 acres of the Hospital Property that were previously subject to the 1995 Conservation Easement were "released from the easements, covenants, prohibitions, and restrictions set forth in

---

[9] To be clear, GMH disagrees with MST's contention that the 2008 Amendment is invalid (*see* Section V.F, *infra.*), but even if the 2008 Amendment was invalid, as a bona fide purchaser for value, GMH has title to the Hospital Property free and clear of the restrictions imposed by the 1995 Conservation Easement.

the Conservation Easement." (Mot. Ex. G at 3.) GMH relied on its legal counsel, Dan Stacy, to handle the 2008 Amendment Process. (Mot. Ex. M 91:22–25.) Mr. Stacy worked with counsel for NALT and the Youngs to do so, and counsel for each GMH, NALT, and the Youngs determined that the 2008 Amendment was valid and that it removed the restrictions placed on the Hospital Property by the 1995 Conservation Easement. (*See* Mot. Ex. E 34:3–36:5, 53:13–54:19.) Moreover, prior to the execution of the 2008 Amendment and GMH's purchase of the Hospital Property, Mr. Stacy communicated his legal opinion to GMH that the 2008 Amendment was valid and legally enforceable. (Mot. Ex. M 34:3–25.) GMH, at no point in time, was ever put on notice of any concern that the 2008 Amendment may be invalid or otherwise legally unenforceable. (*Id.* 92:9–17.) If any such concern were raised, GMH would not have purchased the Hospital Property. (*Id.* 92:18–24.)

Moreover, no legal guidance or authority existed at the time that could have otherwise put GMH on notice that the 2008 Amendment may be invalid. Indeed, nothing in Section 170(h) of the Internal Revenue Code or the corresponding regulations put GMH on notice that the Hospital Property could still be subject to the restrictions of the 1995 Conservation Easement following the execution of the 2008 Amendment, as those provisions deal specifically with a grantor's ability to claim a charitable deduction on his income taxes for the donation of a qualified conservation contribution. *See* 26 U.S.C. § 170(h). Additionally, the case of *Belk v. C.I.R.*, 774 F.3d 221 (2014) (which is the sole authority relied upon by MST in claiming that the 2008 Amendment did not effectively remove the restriction of the 1995 Conservation Easement from the Hospital Property) was not decided until 2014—almost ***6 years after*** the 2008 Amendment was executed and GMH had purchased the Hospital Property. The Amendment itself incorporates the law of the State of

28

South Carolina, which, under S.C. Code § 27-8-30(A), specifically allows conservation easements to be modified or altered just like any other easement instrument.

In short, GMH would not have purchased the Hospital Property if it had any reason to believe that the 2008 Amendment was invalid.  (Mot. Ex. M 92:9–17.)  GMH's counsel, NALT's counsel, and the Youngs' counsel each examined the 2008 Amendment and determined that it effectively released the Hospital Property from the restriction imposed by the 1995 Conservation Easement.  (*See* Mot. Ex. E 34:3–36:5, 53:13–54:19.)  And, GMH's counsel communicated this legal opinion to GMH.  (Mot. Ex. M 34:3–25.)  Under this set of facts, GMH cannot be found to have been on notice of the purported defect in title.  Therefore, when GMH purchased the Hospital Property, GMH did so as a bona fide purchaser for value.  *See* 77 AM. JUR. 2D *Vendor and Purchaser* § 379 (May 2023 update) ("For a purchaser to be charged with inquiry notice, when determining whether a purchaser of real property is a bona fide purchaser, a reasonable investigation must disclose a claim to the title of the property, and a possibility or probability is not sufficient to impute inquiry notice. ***A person is required to make a reasonable inquiry about title, not an exhaustive one, and it is reasonable for a person to accept the advice of counsel***." (emphasis added) (citing *In re Estates of Collins*, 205 Cal. App. 4th 1238 (3d Dist. 2012))).

As a result, GMH took title to the Hospital Property free of the restrictions imposed by the 1995 Conservation Easement, and any subsequent purchaser of the Hospital Property will stand in GMH's shoes and be entitled to the same protections.  *See Goodwin*, 231 S.C. at 250, 98 S.E.2d at 258 ("After property has passed into the hands of a bona fide purchaser, every subsequent purchaser stands in the shoes of such bona fide purchaser and is entitled to the same protection as the bona fide purchaser.")

### F. GMH Is Entitled to Summary Judgment Because the 2008 Amendment Is Valid.

Finally, GMH is entitled to summary judgment because the 2008 Amendment is valid. MST claims that the 2008 Amendment is invalid because it violates Article F ¶ 9 of the 1995 Conservation Easement. In contrast, Article F ¶ 9 of the 1995 Conservation Easement expressly allows for amendment, providing as follows:

> Grantee and Grantor shall mutually have the right, in their sole discretion, to agree to amendments to this Declaration which are not inconsistent with the basic purpose of the Declaration as stated in this document, provided however, that Grantee shall have no right or power to agree to any amendments hereto that would result in this Declaration failing to qualify as a valid conservation easement under the Act, as the same may be hereafter amended, or Section 170(h) of the Code as hereafter amended.

(*See* Mot. Ex. A at 31 art. F ¶ 9.) MST asserts that the 2008 Amendment fails to comply with this provision and is therefore invalid for two reasons: (1) the 2008 Amendment results in the Declaration failing to qualify as a valid Conservation Easement under Section 170(h) of the Internal Revenue Code; and (2) the 2008 Amendment is inconsistent with the basic purpose of the 1995 Conservation Easement.[10] MST is incorrect as to both arguments.

### 1. The Amendment Does Not Render the 1995 Conservation Easement Invalid under Section 170(h) of the Internal Revenue Code.

MST claims that NALT did not have the power to agree to the Amendment because the 2008 Amendment renders the 1995 Conservation Easement invalid under Section 170(h) of the Internal Revenue Code. *See* 26 U.S.C. § 170(h). In doing so, MST relies on the language of Article F ¶ 9 of the Conservation Easement that states in relevant part the following: "Grantee shall have no right or power to agree to any amendments hereto that would result in this

---

[10] MST has failed to timely put forth any expert opinion or testimony on this issue. *See* GMH's Motion to Exclude Affirmative Expert Opinions of Travis Folk. (ECF No. 114.)

Declaration failing to qualify as a valid conservation easement under the Act . . . or Section 170(h) of the Code . . . ." (Mot. Ex. A at 31 art. F ¶ 9.) However, the 2008 Amendment did not, and could not, render the 1995 Conservation Easement invalid under Section 170(h) because Section 170(h) of the Internal Revenue Code does not address the ***validity*** of conservation easements. Section 170(h) simply provides a definition of a "qualified conservation contribution" for the purposes of a landowner's ability to claim a charitable tax deduction related to the conservation easement. *See* 26 U.S.C. § 170(h). Section 170(h), however, does not define a "conservation easement." Section 170(h) also does not identify the elements of a valid "conservation easement." Nor could a provision of the United States Internal Revenue Code possibly define any such issue of state property law.

Conservation easements are real property interests governed by common law and the South Carolina Conservation Easement Act. *See* S.C. Code Ann. § 27-8-10 *et seq.* The validity of conservation easements under state law is not governed by the Internal Revenue Code. Rather, the Act itself defines a conservation easement:

> a nonpossessory interest of a holder in real property imposing limitations or affirmative obligations, the purposes of which include one or more of the following: (a) retaining or protecting natural, scenic, or open-space aspects of real property; (b) ensuring the availability of real property for agricultural, forest, recreational, educational, or open-space use; (c) protecting natural resources; (d) maintaining or enhancing air or water quality; (e) preserving the historical, architectural, archaeological, or cultural aspects of real property.

S.C. Code Ann. § 27-8-20(1). Under the Act, "a conservation easement may be created, conveyed, recorded, assigned, ***released***, ***modified***, terminated, or otherwise altered or affected in the same manner as other easements . . . ." *Id.* § 27-8-30 (emphasis added).

"Parties to a bilateral contract—which is all a conservation easement is—can *always* agree after the fact to amend their agreement. . . ." *Pine Mountain Pres., LLLP v. Comm'r of Internal*

*Revenue*, 978 F.3d 1200, 1209–10 (11th Cir. 2020).[11]  That is exactly what happened here.  The Grantor (the Youngs) and the Grantee (NALT) of the 1995 Conservation Easement agreed to amend the 1995 Conservation Easement to release 56.75 acres of the Hospital Property from the restrictions imposed by the 1995 Conservation Easement.  (*See* Mot. Ex. G.)  Nothing about the 2008 Amendment caused the 1995 Conservation Easement to be invalid under the Act—because the Act expressly allows for conservation easements to be amended by agreement.  Nothing caused the 1995 Conservation Easement to become invalid under Section 170(h) of the Internal Revenue Code—because the Internal Revenue Code ***does not prescribe*** what makes a conservation easement valid or invalid.  Again, Section 170(h) merely addresses whether a charitable deduction can be claimed for a qualified conservation contribution.

Nonetheless, MST relies exclusively on *Belk v. C.I.R.*, 774 F.3d 221 (2014), to stand for the proposition that the 2008 Amendment caused the 1995 Conservation Easement to be invalid under Section 170(h) of the Internal Revenue Code because it removed property from the 1995 Conservation Easement, and therefore violated the perpetuity requirement set forth in that section. (*See* ECF No. 37 at 8–14).  MST, however, misapplies the holding of *Belk*.  *Belk* dealt solely with whether a landowner could claim a charitable tax deduction for property that was placed in a conservation easement when the land that was subject to the easement could be substituted for other land not subject to the easement.  *See id.* at 221–23.  *Belk* did not analyze whether a grantee was prohibited from agreeing to an amendment to the conservation easement—as is the issue in this case.  Rather, as MST points out, the *Belk* holding was limited to the following: "a *charitable*

---

[11] This Court previously cited *Pine Mountain* in its Order denying Defendants' motions to dismiss, noting that *Pine Mountain* held that "perpetuity" in the contest of Section 170(h) does not mean "inalienability, unreleasability, or unamendability" but rather "denotes only that the granted property will not automatically revert to the grantor, his heirs, or assigns."  (ECF No. 29 at 23.)

*deduction* may be claimed for the donation of a conservation easement only when that easement restricts the use of the donated property in perpetuity." *See id.* at 227 (emphasis added); *see also id.* at 228 ("[A]n easement that . . . grants a restriction for less than a perpetual term, *may be a valid conveyance under state law*, but is still *ineligible for a charitable deduction* under federal law." (emphasis added)).  In other words, *Belk* deals particularly with the tax consequences of the parties' agreement, and it has no bearing whatsoever on the real property ramifications of a voluntary, mutually agreed-upon modification to a conservation easement.

It should also be noted that, although MST claims that the 2008 Amendment is invalid based on the 1995 Conservation Easement's reference to Section 170(h) of the Internal Revenue Code and the 2014 holding in *Belk*, the IRS itself has never taken issue with the 2008 Amendment or NALT's other amendments to conservation easements—despite NALT reporting all of its amendments (***including the 2008 Amendment***) to the IRS, and despite the IRS having audited NALT on three occasions.  (*See* Mot. Ex. N 33:19–34:3, 236:11–238:8.)  In other words, the IRS has had knowledge of the 2008 Amendment since shortly after it was executed, but the IRS has not challenged or otherwise taken issue with 2008 Amendment during the almost 16 years in which the 2008 Amendment has been in effect.  In light of these circumstances, MST's argument that Section 170(h) of the Internal Revenue Code and *Belk* render the 2008 Amendment invalid rings hollow.

Based on the foregoing, MST's interpretation of the 1995 Conservation Easement (specifically the amendment provision set forth in Article F ¶ 9 of the same), Section 170(h) of the Internal Revenue Code, and *Belk* seeks to impermissibly expand the restrictions of the 1995 Conservation Easement on the Hospital Property beyond the plain language articulated in the easement itself.  And in South Carolina, "restrictions as to the use of real estate should be strictly

construed and all doubts resolved in favor of free use of the property." *See S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001) (quoting *Taylor v. Lindsey*, 332 S.C. 1, 4–5, 498 S.E.2d 862, 863–64 (1998)); *see also Cmty. Servs. Assoc's., Inc. v. Wall*, 421 S.C. 575, 808 S.E.2d 831 (S.C. Ct. App. 2017).  Accordingly, MST's argument that the 2008 Amendment is invalid under Article F ¶ 9 of the 1995 Conservation Easement, according to Section 170(h) and *Belk*, fails as a matter of law.  Therefore, this Court should grant summary judgment in GMH's favor on this point.

### 2.  The 2008 Amendment Is Not Inconsistent with the Basic Purpose of the 1995 Conservation Easement.

MST's argument that NALT did not have the right or power to agree to the Amendment pursuant to Article F ¶ 9 because it was inconsistent with the basic purpose of the 1995 Conservation Easement is also without merit.  The basic purpose of the 1995 Conservation Easement is to "preserve the Property predominantly in its present condition, and to protect or enhance the Property's environmental systems."  (Mot. Ex. A at 26 ¶ 9).  The 2008 Amendment which MST claims is invalid released 56.75 upland acres of 788 total acres from the restrictions imposed by the 1995 Conservation Easement, and in exchange for doing so, further encumbered Weehaw by eliminating the Grantor's reserved right to develop five homesites on approximately 35 acres of waterfront property.  (Mot. Ex. G.)  Before executing the 2008 Amendment, NALT— whose mission is to preserve open space, natural habitats, and cultural resources (Mot. Ex. N 268:2–9) determined that amending the 1995 Conservation Easement in the manner described therein would "have a greater ecological benefit and further advance and protect the Conservation Purposes of the Conservation Easement."  (Mot. Ex. G at 2.)

What MST conveniently ignores, however, is that NALT's sole interest—as Grantee—is to preserve and conserve the natural and environmentally sensitive areas that are the subject of the

1995 Conservation Easement for the benefit of the public. NALT stood to gain nothing from the 2008 Amendment other than ensuring that the 1995 Conservation Easement serves that charitable purpose, and NALT had every incentive to make sure that the 2008 Amendment would further the basic purpose of the 1995 Conservation Easement.[12] Accordingly, any argument that the 2008 Amendment is invalid because it was inconsistent with the basic purpose of the 1995 Conservation Easement is entirely inconsistent with the factual record in this case. Therefore, this Court should grant summary judgment in favor of GMH on this point.

## VI.  CONCLUSION

For the foregoing reasons, GMH is entitled to summary judgment on MST's claim against it. Accordingly, GMH respectfully requests that this Court enter judgment in its favor and against MST.

April 1, 2025

NELSON MULLINS RILEY & SCARBOROUGH LLP
By: */s/ Wesley T. Moran*
Wesley T. Moran
Federal Bar No. 12797
E-Mail: wes.moran@nelsonmullins.com
Susan P. MacDonald
Federal Bar No. 0984
E-Mail: susan.macdonald@nelsonmullins.com
3751 Robert M. Grissom Parkway / Suite 300
Post Office Box 3939 (29578-3939)
Myrtle Beach, SC 29577-6412
(843) 448-3500
*Attorneys for Defendant Georgetown Memorial Hospital*

---

[12] (*See* Mot Ex. N 268:10–269:1 (testifying that (1) one of NALT's key roles is to enforce the restrictions on conservation easements that it holds; (2) NALT would have had no incentive to execute the 2008 Amendment if it did not further the conservation benefits or purposes underlying the 1995 Conservation Easement; and (3) NALT would not have executed the 2008 Amendment if it had any concern that it was improper or did not further the conservation purposes and values of the underlying 1995 Conservation Easement).)