# Exhibit J

2:22-cv-00874-DCN   Date Filed 04/01/25   Entry Number 115-11   Page 2 of 10

James Joseph Murren
MST, LLC Vs. North American Land Trust, et al.
August 12, 2024

Page 1

```
 1              UNITED STATES DISTRICT COURT
                DISTRICT OF SOUTH CAROLINA
 2                  CHARLESTON DIVISION
 3   MST, LLC,
 4              Plaintiff,
 5         vs.      CASE NO. 2:22-cv-874-DCN
 6   NORTH AMERICAN LAND TRUST AND GEORGETOWN
     MEMORIAL HOSPITAL,
 7
                Defendants.
 8
     GEORGETOWN MEMORIAL HOSPITAL,
 9
                Third-Party Plaintiff,
10
           vs.
11
     KYLE YOUNG AND JACQUELINE YOUNG,
12
                Third-Party Defendants.
13
14   VIDEOTAPED VTC
     DEPOSITION OF:   JAMES JOSEPH MURREN
15
     DATE:            August 12, 2024
16
     TIME:            11:40 AM
17
     LOCATION:        NELSON MULLINS RILEY &
18                    SCARBOROUGH
                      151 Meeting Street
19                    Suite 600
                      Charleston, SC
20
     TAKEN BY:        Counsel for the Defendant and
21                    Third-Party Plaintiff,
                      GEORGETOWN MEMORIAL HOSPITAL
22
     REPORTED BY:     MICHAEL DAVID ROBERTS,
23                    Court Reporter
     _____
24
25
```

2:22-cv-00874-DCN   Date Filed 04/01/25   Entry Number 115-11   Page 3 of 10
James Joseph Murren                                    August 12, 2024
MST, LLC Vs. North American Land Trust, et al.

Page 46

1  the -- the family judge rule on how your assets
2  would be divided up; is that right?
3         A.   That is correct.
4         Q.   How was the decision made that you
5  would receive Weehaw in the divorce settlement, if
6  I'm correct in saying that?  Is that something that
7  you discussed?
8         A.   I didn't receive it in the divorce
9  settlement.
10        Q.   Okay.  So -- and thank you for that
11 clarification.  Post divorce you and Heather still
12 owned -- you owned 50 percent interest in Weehaw,
13 and Heather owned 50 percent interest; is that
14 right?
15        A.   That's correct.
16        Q.   Okay.  And then approximately two years
17 after your divorce, you purchased her 50 percent
18 interest in Weehaw in November of 2023?
19        A.   That's correct.
20        Q.   Okay.  What led to you purchasing her
21 50 percent interest in Weehaw?
22        A.   We had decided that we had two joint
23 assets.  We owned jointly the 50 percent interest
24 in Weehaw, and we jointly owned Long Point Farm in
25 Oxford, Maryland.  And when I sold my Las Vegas

2:22-cv-00874-DCN    Date Filed 04/01/25    Entry Number 115-11    Page 4 of 10
James Joseph Murren                              August 12, 2024
MST, LLC Vs. North American Land Trust, et al.

Page 47

1  home, we decided -- I decided -- I asked her, and
2  she agreed, for me to buy her out of Weehaw and
3  Long Point Farm.
4       Q.   And so now you are the sole owner of
5  Weehaw and Long Point Farm; is that right?
6       A.   That's correct.
7       Q.   Your trust is.  Is that more accurate
8  to say?
9       A.   More accurate to say.
10      Q.   And that's the -- the JM 2021
11 irrevocable trust; is that right?
12      A.   That's correct.
13      Q.   Now, you are the trustee of that trust,
14 correct?
15      A.   I don't know.
16      Q.   Who is the beneficiary of the trust?
17      A.   I am.
18      Q.   And if I -- there are documents where
19 you have signed as the trustee of the JM 2021
20 Irrevocable Trust, would you dispute that?
21      A.   No.
22      Q.   And are you the sole beneficiary of
23 that trust?
24      A.   I am.
25      Q.   Now, and I do anticipate we'll get into

2:22-cv-00874-DCN    Date Filed 04/01/25    Entry Number 115-11    Page 5 of 10
James Joseph Murren                                    August 12, 2024
MST, LLC Vs. North American Land Trust, et al.

Page 78

```
 1   signed this document?
 2        A.   None.
 3        Q.   Okay.  And this document is titled the
 4   Third Amendment to the Total Amendment and
 5   Restatement of the Operating Agreement Dated
 6   September 19th, 2013 of MST, LLC; is that right?
 7        A.   That is correct.
 8        Q.   Okay.  And if you look under the
 9   recitals here, this document makes clear that the
10   HM 2021 irrevocable trust is assigning its 50
11   percent interest in Weehaw to the JM 2021
12   Irrevocable Trust; is that right?
13        A.   That's correct.
14        Q.   Okay.  And that's pursuant to a
15   membership interest bill of sale, is that right?
16   And it was part of your separation agreement that
17   this was done?
18        A.   That is correct.
19        Q.   And so as of today, the JM 2021
20   Irrevocable Trust is the sole member of MST, LLC to
21   your knowledge; is that right?
22        A.   I believe so.
23        Q.   Okay.  Does MST -- and forgive me if
24   I've already asked this -- but does MST, LLC own
25   any assets other than Weehaw Plantation currently?
```

2:22-cv-00874-DCN     Date Filed 04/01/25     Entry Number 115-11     Page 6 of 10
James Joseph Murren                          August 12, 2024
MST, LLC Vs. North American Land Trust, et al.

Page 97

1      A.   That is correct.
2      Q.   Okay.  And Rhonda writes to Hampton,
3  Hampton, attached is the amendment to the
4  conservation easement.  Let us know if you need
5  anything else, correct?
6      A.   That's what it says.
7      Q.   And then the same day, April 9, 2010,
8  Hampton forwards that email to you with the
9  message, please see attached; is that right?
10     A.   That's what it says.
11     Q.   Okay.  And so based off this email, do
12 you have any reason to dispute that you received
13 the amendment to the conservation easement on
14 April 9th, 2010?
15     A.   I have no reason to dispute it.
16     Q.   Okay.  Now, I believe I asked just a
17 minute ago what your understanding was of how the
18 conservation easement and amendment potentially
19 impacted Weehaw Plantation.  Did you have an
20 understanding?
21     A.   Yes, a rough understanding.
22     Q.   Okay.  And what was that rough
23 understanding at the time you purchased the
24 property?
25     A.   That the property could not be

2:22-cv-00874-DCN     Date Filed 04/01/25     Entry Number 115-11     Page 7 of 10

James Joseph Murren                          August 12, 2024
MST, LLC Vs. North American Land Trust, et al.

Page 98

1  developed outside of the contours of what was
2  previously agreed to with the North American Land
3  Trust.
4      Q.   And what was your understanding of how
5  the amendment potentially impacted the development
6  of Weehaw Plantation?
7      A.   I didn't focus on the amendment, but
8  I -- it -- to my recollection, the amendment took
9  away some building lots that were on the Weehaw
10 property originally, and that had no bearing on my
11 decision to buy Weehaw.
12     Q.   Okay.  And were you also aware at the
13 time that you purchased Weehaw that the hospital
14 parcel had been removed from the conservation
15 easement?
16     A.   I was.
17     Q.   All right.  Now, you mentioned
18 conducting some due diligence prior to purchasing
19 Weehaw; is that right?
20     A.   Yes.
21     Q.   And what due diligence did you conduct?
22     A.   Just the title search and the
23 information that Hampton Peace delivered.
24     Q.   And when you refer to the information
25 that Hampton Peace delivered, what information was

2:22-cv-00874-DCN    Date Filed 04/01/25    Entry Number 115-11    Page 8 of 10
James Joseph Murren                                                August 12, 2024
MST, LLC Vs. North American Land Trust, et al.

Page 99

1  that?
2       A.   Just the conservation easement.
3       Q.   And you also don't dispute that he
4  delivered the amendment, correct?
5       A.   I don't -- I don't recall it, but I
6  don't dispute it.
7       Q.   Okay.  And you also mentioned that you
8  weren't focused on the amendment at the time.  Why
9  was that?
10      A.   It was on property that I did not own.
11 I was just focused on Weehaw, the property I was
12 purchasing.
13      Q.   But you understood that the amendment
14 removed rights to develop five building envelopes
15 on Weehaw when you purchased it, right?
16      A.   I did understand, yes.
17      Q.   And you understood that it removed the
18 hospital property from the conservation easement on
19 Weehaw; is that correct?
20      A.   That's what I understood, yes.
21      Q.   And even knowing those two things you
22 decided to purchase Weehaw?
23      A.   I did.
24      Q.   All right.  Let me hand you what will
25 be Defendant's Exhibit 7.

2:22-cv-00874-DCN    Date Filed 04/01/25    Entry Number 115-11    Page 9 of 10
James Joseph Murren
MST, LLC Vs. North American Land Trust, et al.
August 12, 2024

Page 128

1  recorded on December 30th, 2008 in record book 1122
2  at page 80, and then to all covenants, conditions,
3  restrictions and easements as may be applicable as
4  recorded in the public records of Georgetown
5  County.
6              Now, that was a mouthful, but did I get
7  the material substance of that correct?
8         A.   You did.
9         Q.   Okay. Now, when you purchased 687.2
10 acres of Weehaw from the Youngs, you did so with
11 the understanding that it was subject to the
12 conservation easement and the 2008 amendment,
13 correct?
14        A.   That is correct.
15        Q.   And you made the decision to purchase
16 Weehaw for $3.4 million with the understanding,
17 again, that it was subject to the conservation
18 easement and the 2008 amendment; is that right?
19        A.   That is correct.
20        Q.   All right. Now, how did you arrive at
21 the purchase price of $3.4 million?
22        A.   I believe the property was listed for
23 approximately 4 million on Zillow, and I negotiated
24 it. I asked Hampton Peace what he thought it might
25 be worth. He thought it was only worth around 3

2:22-cv-00874-DCN    Date Filed 04/01/25    Entry Number 115-11    Page 10 of 10
James Joseph Murren                                      August 12, 2024
MST, LLC Vs. North American Land Trust, et al.

Page 311

1    THE WITNESS: I -- I think NALT knows
2  I've invested hundreds of thousands of dollars into
3  this property to bring it back from a very -- a
4  very neglected state, and I've worked hand in glove
5  to make it as one of the best preserved properties
6  in -- in -- in -- in a conservation easement, and
7  at no point in time did I ever intend to harm NALT.
8  BY MS. TILLMAN:
9      Q.  How about by filing suit against NALT
10 and its -- the attorneys' fees that it's had to
11 expend have been massive.  Do you perceive that to
12 be a hardship to NALT?
13     A.  I'm -- I'm sorry for that.
14     Q.  And if NALT agrees that -- that yes,
15 you've done an awesome job with Weehaw and -- and
16 it's gorgeous and it's valuable as a conservation
17 piece, do you understand that part of its value is
18 that it's -- it doesn't have any building rights
19 associated with it?
20     A.  I -- I would say that that would factor
21 into NALT's thinking, yes.
22     Q.  How about your thinking?
23     A.  I've never considered those building
24 lots -- those building sites as part of Weehaw.
25     Q.  Say that again.