*Exhibit 4*



**WALKER GRESSETTE FREEMAN LINTON** LLC

G. TRENHOLM WALKER
Direct: 843.727.2208
Email: Walker@WGFLLAW.com

G. Trenholm Walker
Thomas P. Gressette, Jr.
Ian W. Freeman
John P. Linton, Jr.
Charles P. Summerall, IV
Jennifer S. Ivey

May 7, 2021

**By US Mail and/or Email**

John Thomas
Georgetown County Council
███████████████████

Bob Anderson
Georgetown County Council
███████████████████

Everett Carolina
Georgetown County Council
███████████████████

Lillie Johnson
Georgetown County Council
███████████████████

Raymond L. Newton
Georgetown County Council
███████████████████

Steve Goggans
Georgetown County Council
███████████████████

Louis R. Morant
Georgetown County Council
███████████████████

Theresa Floyd
Clerk of Georgetown County Council
███████████████████

Holly Richardson
Planning Director of Georgetown County
███████████████████

*Exhibit 4*

Daniel W. Stacy, Jr., Esquire
Oxner & Stacy, LLC
90 Wall Street/ Unit B
Pawleys Island, SC 29585

Bruce P. Bailey
President and CEO
Tidelands Health
4070 Highway 17 South
Murrells Inlet, SC 29576

Steven Carter
President, North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

George Asimos, Jr., Esquire
Saul Ewing
Penn National Insurance Plaza
2 North Second Street, 7th Floor
Harrisburg, PA 17101-1619

Re:   Proposed Ordinance No. 21-18, for consideration May 11, 2021
      Proposed Amendment to Georgetown Memorial Hospital Weehaw Campus Planned Development
      TMS No. 02-1009-018-02-03
      WGFL File No. : 8320-001

Dear Sirs/Madams:

I am writing with respect to the proposed amendment to the Georgetown Memorial Hospital Weehaw Campus to add multifamily use to the Planned Development. This law firm has been engaged by landowners whose properties are contiguous to, and in the immediate vicinity of, the Planned Development property also known as the Hospital Parcel. I am writing on their behalf to object to the proposed zoning change, to provide the reasons for the objection, and to invoke provisions of South Carolina law that require a local governmental entity to refrain from proceeding on a zoning application if the proposed activity is in violation of restrictions or covenants on the subject property.

In short, the original Conservation Easement and Declaration of Restrictive Covenants on Wechaw granted in 1995 and recorded at Book 669, Page 300 in the Register of Deeds for Georgetown County encumbered the property encompassed by the Conservation Easement in perpetuity, including most of the Hospital Parcel and the entire portion of that parcel where the multifamily use is proposed. The restrictions and limitations in the 1995 Weehaw Conservation Easement still apply to 56.75 acres of the Hospital Parcel because the Amendment to the Conservation Easement in 2008 recorded at Book 1122, Page 80, purportedly removing 56.75 acres of the property restricted by the Conservation Easement violated the federal law governing conservation easements and was entirely invalid and ineffective. These 56.75 acres of the Hospital Parcel that include the entire proposed multifamily site remain fully restricted and encumbered by the Conservation Easement that does not allow multifamily development.

Please also consider this letter as formal notice under S.C. Code Section 6-29-1145, titled "Determining existence of restrictive covenant; effect," that the proposed zoning change is in direct violation of a restrictive covenant, namely the Conservation Easement. Subsection B of the statute provides as follows:

2:22-cv-00874-MBS    Date Filed 03/16/22    Entry Number 1-4    Page 3 of 6
2:22-cv-00874-DCN    Date Filed 04/01/25    Entry Number 115-13    Page 3 of 6

*Exhibit 4*

Letter to County Council, et al
May 7, 2021
Page 3 of 6

> "(B) If a local planning agency has actual notice of a restrictive covenant on a tract or parcel of land that is contrary to, conflicts with, or prohibits the permitted activity:
> 
> (1) in the application for the permit;
> (2) from materials or information submitted by the person or persons requesting the permit; or
> (3) ***from any other source including, but not limited to, other property holders***, the local planning agency must not issue the permit unless the local planning agency receives confirmation from the applicant that the restrictive covenant has been released for the tract or parcel of land by action of the appropriate authority or property holders or by court order."

As explained below, the purported release of the 56.75 acres from the Weehaw Conservation Easement in the 2008 Amendment was legally ineffective and did not extinguish the Conservation Easement on that land.

By its terms and the applicable law, the 1995 Weehaw Conservation Easement imposed "a perpetual easement" over the 56.75 acres and the other property subject to the Easement. By its terms, the Conservation Easement was granted under, and subject to, the pertinent provisions of the Internal Revenue Code of 1986, as amended, (the "Code") and South Carolina's Conservation Easement Act of 1991, as amended (the "Act"). Article (F)(9) of the Conservation Easement addressing amendments prohibits any modification that is contrary to the Code or reduces the conservation purposes of the Easement:

> Grantor and Grantee recognize that circumstances could arise which this end (sic), Grantee and Grantor shall mutually have the right, in their sole discretion, to agree to amendments to this Declaration ***which are not inconsistent with the basic purpose of the Declaration*** as stated in this document, provided, however, that ***Grantee shall have no right or power to agree to any amendments hereto that would result in this Declaration and Declaration failing to qualify as a valid conservation easement under the Act, as the same may be hereafter amended, or Section 170 (h) of the Code as hereafter amended***.

The applicable section of the Code and the regulations propounded thereunder do not allow an amendment to a qualified conservation easement that releases any portion of the real property from the conservation easement. "For purposes of this subsection, the term 'qualified real property interest' means any of the following interests in real property ... (C) a restriction (granted in perpetuity) on the use which may be made of the real property." 26 U.S.C.A. § 170 (h)(2)(C). Further, Treasury Regulation Section 1.170A-14 requires that the qualified conservation easement be a "perpetual conservation restriction" on specified real property. The regulations mandate that "the Conservation purpose must be protected in perpetuity."

2:22-cv-00874-MBS    Date Filed 03/16/22    Entry Number 1-4    Page 4 of 6
2:22-cv-00874-DCN    Date Filed 04/01/25    Entry Number 115-13    Page 4 of 6

*Exhibit 4*

Letter to County Council, et al
May 7, 2021
Page 4 of 6

The United State Court of Appeals for the Fourth Circuit could not have been more emphatic in its decision in Belk v. Commissioner of Internal Revenue, 774 F.3d 221 (4th Cir. 2014), that the Code does not allow property to be removed from the restrictions of a conservation easement after it is imposed on that property. In Belk, the conservation easement in question specifically allowed the removal of a portion of the real property if real property of equal value was substituted. The Fourth Circuit disallowed the deduction because the Code requires that the restriction be in perpetuity on the exact property identified in the conservation easement. The Fourth Circuit ruled that the Code and regulations prohibit removing any property from the restrictions of a qualified conservation easement once it is imposed on that property:

> The plain language of the Code belies this contention. For the Code expressly provides that a 'qualified property interest' includes 'a restriction (granted in perpetuity) on the use which may be made of the real property.' 26 U.S.C. § 170(h)(2)(C) (emphasis added). The placement of the article 'the' before 'real property' makes clear that a perpetual use restriction must attach to a defined parcel of real property rather than simply some or any (or interchangeable parcels of) real property. …
>
> *Reading § 170(h)(1) and (2) together further makes clear that the defined parcel of land identified by the phrase 'the real property' is the real property to which the donated conservation easement initially attached*….
>
> The Easement at issue here fails to meet this requirement because the real property contributed to the Trust is not subject to a use restriction in perpetuity. The Easement purports to restrict development rights in perpetuity for a defined parcel of land, but upon satisfying the conditions in the substitution provision, the taxpayers may remove land from that defined parcel and substitute other land. Thus, while the restriction may be perpetual, the restriction on "the real property" is not. For this reason, the Easement does not constitute a "qualified conservation contribution" under § 170(h) and the Belks were not entitled to claim a deduction for the contribution.

774 F.3d 225-6.

Both the Fifth Circuit and the Eleventh Circuit have approvingly relied upon the Fourth Circuit's decision in Belk. See, BC Ranch II, L.P. v. Commr. of Internal Revenue, 867 F.3d 547, 553 (5th Cir. 2017) Pine Mountain Preserve, LLLP v. Commissioner of Internal Revenue Service, 978 F.3d 1200, 1208 (11th Cir. 2020).

The 1995 Weehaw Conservation Easement is entirely valid on its face unlike the easement in Belk. The Conservation Easement does not contain a provision allowing the grantee to substitute

2:22-cv-00874-MBS     Date Filed 03/16/22     Entry Number 1-4     Page 5 of 6
2:22-cv-00874-DCN     Date Filed 04/01/25     Entry Number 115-13     Page 5 of 6

*Exhibit 4*

Letter to County Council, et al
May 7, 2021
Page 5 of 6

property, so it satisfied these requirements of the Code for a qualified donation. The question here is not the validity of the tax deduction in 1995, but rather whether the later amendment complied with the requirements of the Code. Article (F)(9) of the Conservation Easement specifically states that "…the Grantee shall have no right or power to agree to any amendments hereto that would result in this Declaration and Declaration failing to qualify as a valid conservation easement under … Section 170 (h) of the Code as hereafter amended." The 2008 Amendment purporting to remove the Hospital Parcel plainly violated the Code and, therefore, was invalid under Article (F)(9) of the Conservation Easement as a matter of law.

As the Fourth Circuit explained in Belk, the circumstances under which land may be removed from a conservation easement are extremely limited and, even then, the removal requires a court order:

> The Treasury Regulations offer a single—and exceedingly narrow—exception to the requirement that a conservation easement impose a perpetual use restriction. The regulations provide that in the event that a
>
>> subsequent unexpected change in the conditions surrounding the property ... make[s] *impossible or impractical* the continued use of the property for conservation purposes, the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished *by judicial proceeding* and all of the donee's proceeds ... from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution.
>
> Treas. Reg. § 1.170A–14(g)(6)(i) (emphasis added). Thus, absent these 'unexpected' and extraordinary circumstances, real property placed under easement must remain there in perpetuity in order for the donor of the easement to claim a charitable deduction.

774 F.3d 225.

There was nothing in 2008 that made "impossible or impractical the continued use of the property for conservation purposes." Instead, the decision was made for convenience to try to remove the acreage from the Conservation Easement because it was suitable for a hospital, not because the land was incapable of conservation. For obvious reasons, the Grantor of the Easement, the North American Land Trust, and Georgetown Memorial Hospital opted not to initiate a legal proceeding to test the validity of Amendment even though a positive legal ruling is what the law required for the Amendment to be valid. There is no doubt with the money involved and the supposed public health interests at stake that these parties would have pursued court approval as the law requires if they believed there was any chance they could meet the standard of Treas. Reg. § 1.170A–14(g)(6)(i).

2:22-cv-00874-MBS   Date Filed 03/16/22   Entry Number 1-4   Page 6 of 6
2:22-cv-00874-DCN   Date Filed 04/01/25   Entry Number 115-13   Page 6 of 6
*Exhibit 4*

Letter to County Council, et al
May 7, 2021
Page 6 of 6

Additionally, even if the 2008 Amendment removing the acreage from the Conservation Easement were legitimate under the Code, which it was not, the stated basis for the purported Amendment was to permit the acreage to be used for the alleged "public and social benefits related to meeting the needs of the hospital." The pending zoning change to add multifamily use as a permitted use on 16 acres is completely contrary to the Amendment that specified the property was being removed from the Conservation Easement because of the public benefit from hospital uses. Needless to say, multifamily housing is not a hospital use.

Because the 2008 Amendment is legally invalid and ineffective, the 56.75 acres, including the proposed multifamily site on Wedgefield Road, remain encumbered by the 1995 Conservation Easement. The pending zoning request is entirely contrary to the restrictions on the property. Under South Carolina law the governmental body considering an application in violation of restrictive covenants shall not proceed. You are so advised and informed. Please make this letter part of the record and proceedings associated with the above proposed ordinance.

My clients will soon be initiating legal proceedings to obtain a judicial declaration of the invalidity of the 2008 Amendment in light of the pending zoning request. With kind regards, I am

Sincerely yours,

WALKER GRESSETTE FREEMAN & LINTON, LLC

*G. Trenholm Walker* (signature)

G. Trenholm Walker